**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES RICE KENDALL and** | **:** | **CASE NO. 3:16-CV-01182** |
| **ANN P. HOCHBERG, as Trustees** | **:** | |
| **for The Thomas E. Proctor Heirs** | **:** | **(JUDGE MALACHY E. MANNION)** |
| **Trust, and BANK OF AMERICA,** | **:** | |
| **N.A., and JOHN J. SLOCUM, JR.** | **:** | |
| **As Trustees for The Margaret O.F.** | **:** | **JURY TRIAL DEMANDED** |
| **Proctor Trust,** | **:** | |
| **Plaintiffs,** | **:** | |
| **vs.** | **:** | |
| | **:** | |
| **ANADARKO E&P ONSHORE** | **:** | |
| **LLC, WALLIS RUN HUNTING** | **:** | |
| **CLUB, INC., WALLIS RUN GAS** | **:** | |
| **AND OIL, INC.** | **:** | |
| **Defendants.** | **:** | |

# DEFENDANTS, WALLIS RUN HUNTING CLUB, INC. AND WALLIS RUN GAS AND OIL, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I. Procedural History

Plaintiff, Charles Rice Kendall, et al. ("Proctor") commenced this action against Defendants, Wallis Run Hunting Club and Wallis Run Gas & Oil, Inc. ("Wallis Run") by complaint filed on June 17, 2016. Proctor's complaint raised

allegations that it had an ownership interest in the surface and subsurface of a portion of the property to which Defendants claim title. Plaintiffs raised an action to quiet title in this property and brought an action in conversion, ejectment, and unjust enrichment. On September 22, 2016, Defendant Wallis filed an answer and counterclaim to Proctor's complaint. Thereafter, requests for extensions of time were granted allowing additional time for codefendants to respond to the complaint and for defendants to complete discovery.

## II. Statement of Facts

The "Subject property" that forms the basis for this dispute was part of a larger parcel of property known as the "John Brown Warrant" which consisted of 407 ¾ acres plus allowances. (**Expert report of Fred Holland Exhibit A-1 page 1**). (A true and correct copy of the expert report of Fred Holland is attached). The entirety of the John Brown Warrant, 407 ¾ acres, was subdivided in 1857 through the execution of three deeds. (**Expert report of Fred Holland Exhibit A-1 page 2**). The result is that the entirety of the John Brown Warrant was subdivided into three parts, the Plaintiff asserting ownership interest in the easterly portion, and the Defendants asserting ownership interest based on the conveyance of the western and center portions. (**Expert report of Fred Holland Exhibit A-1 page 2**). The Subject property was created by the ambiguities in deeds transferring the center

and eastern portions of the John Brown Warrant. The Plaintiffs, who are part of the chain of title to the eastern portion of the John Brown Warrant, assert their ownership interest in the Subject property pursuant to the 1857 conveyance from John McCawley to John Meyer, where the deed describes the land as “containing one hundred acres and allowance of six per cent for roads”, yet the plotting of the meets and bounds results in a total area of 206 acres, thus the deed description creates an ambiguity. (**Expert report of Fred Holland Exhibit A-1 page 2**). Defendants, who are part of the chain of title to the center portion of the John Brown Warrant, assert ownership interest in the Subject property pursuant to the 1857 conveyance from John McCawley to Conrad Whitaker. (**Expert report of Fred Holland Exhibit A-1 page 2**). This deed describes the land as containing 212 acres, however the plotting of the meets and bounds results in a total area of 412.06 acres, thus the deed description creates a second ambiguity. (**Expert report of Fred Holland Exhibit A-1 page 2**).

Defendants Wallace Run entered into an oil and gas lease with Defendant Anadarko which includes a portion of the Subject property. This lease has resulted in the drilling of wells and the production of natural gas running through the Subject property. (**Expert report of William Hoffmeyer Exhibit #2 pages 5-10**). The Proctor Trusts have filed an action to quiet title, conversion, ejectment, and

unjust enrichment concerning the portion of the Subject property in dispute. (**Complaint ¶ 27- 53**).

The Proctor Trust sought the expert opinion of Andrew Grafton, who in his report and analysis focused on the meets and bounds descriptions of three deeds conveying the eastern, middle, and western portions of the John Brown Warrant. (**Expert report of Andrew Grafton pages 1-4, Exhibit B**). Defendants Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil sought the expert opinion of Fred Holland who addressed the ambiguity from a legal perspective. (**Expert report of Fred Holland**). Codefendant Anadarko E&P Onshore LLC sought the expert opinion of William Hoffmeyer who also addressed the ambiguity from a legal perspective. (**Expert opinion of William Hoffmeyer**).

## III. Issue

1. **Whether the Defendant's Motion for Summary Judgment should be granted on the basis that there is overwhelming evidence of the grantor's intentions?**

   *Suggested Answer: In the affirmative*

## IV. Argument

### A. Standard of Review

Pursuant to Federal Rule Procedure 56, summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories and admissions on file,

together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c).** In determining if an issue of material fact exists, a court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." **Glenn v. Horgan Bros., Inc., 2005 WL 1503428 (E.D. Pa. 2005).** (**Citations omitted.**) Also see, **Hamilton v. Emerson Electric Company, 133 F.Supp. 2nd 360 (E.D. Pa. 2001).**

Once a moving party has demonstrated evidence that no issue of material fact exists, the non-moving party has a duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable fact finder could rule in its favor. **Id.** After the movant has carried its initial burden, Rule 56(e) shifts the burden to the non-moving party to demonstrate a genuine issue of fact exists. **Fed. R. Civ. P. 56(e).** "Issues of fact are genuine only if a reasonable jury, considering the evidence presented, could find for the non-moving party." **Hamilton *supra* at 363.** (Citing **Childers v. Joseph, 842 F. 2d 689, 693-94 (3d Cir. 1988)**). When a motion for summary judgment is made and supported as provided in Rule 56, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in

this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment is appropriate, and shall be entered against the adverse." **Fisher v. Walsh Parts and Service Company, 277 F. Supp. 2d 496 (E.D. Pa. 2003).**

Additionally, if the evidence offered by the non-moving party is merely colorable or is not significantly probative, summary judgment is appropriate. See **Bowersfield v. Suzuki Motor Corporation, 111 F. Supp. 2d 612 (W.D. Pa. 2000).** (Citing **Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986))**. Moreover, mere speculation and conclusionary allegations do not satisfy this duty. A non-moving party may not merely deny the assertions made by the movant, but must specifically identify facts in the record that would contradict the facts identified by the movant. **Hamilton, *supra*.** "The opposing party must do more than raise some metaphysical doubt as to the material facts, but must show sufficient evidence to support a jury verdict in its favor." **Shouey v. Duckhead Apparel Company, Inc., 49 F. Supp 2d 413 (M.D. Pa. 1999).**

**B. The motion for summary judgment should be granted because there is overwhelming evidence of the grantor's intentions.**

"[T]he primary function of the trial court resolving a boundary dispute is to ascertain the intent of the grantor at the time of the original subdivision. **Pencil v. Buchart, 380 Pa. Super. 205, 212, 551 A.2d 302, 305-306, (1988).** "In

construing a deed . . . [f]irst, it is the intention of the parties at the time of entering in thereto that governs, and such intention is to be gathered from a reading of the entire contract . . . In addition, contracts must receive a reasonable interpretation . . . ." **New Charter Coal Co. v. McKee**, 411 Pa. 307, 309, 191 A.2d 830, 832, (1963). "Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred. If one construction would make it unreasonable while another would do justice to both parties, the latter will be adopted. Id.

In **Pencil**, the court found the designation of specific number of acres to be controlling where the property boundary line was in dispute. Further, the subsequent transfer of deeds to subsequent property owners of parcel was also important to ascertaining the intention of the parties. **Id.** In **New Charter Coal Co.**, the intention of the parties was ascertained from the language of the instrument as well as the surrounding circumstances including historical background and reasonable interpretations of the widespread use of land at the time of the original subdivision. **Id. at 315.**

In the case sub judice, the intent of McCawley was to subdivide and convey the entire John Brown Warrant in three separate deeds. These three separate deeds subdivided the John Brown Warrant into western, middle, and eastern parcels. (**Expert report of Fred Holland Exhibit F**). The eastern portion was conveyed as a 100 acre parcel plus six-percent allowances to John Meyer and is the source deed for Proctor's interest in title. (**Expert report of Fred Holland Exhibit A-1 page 2**). The center portion was conveyed as a 212 acre parcel to Conrad Whitaker and is the source deed for the Wallis Run interest in title. (**Expert report of Fred Holland Exhibit A-1 page 2**). The Eastern portion was conveyed as a 107 ½ acre parcel and is a second source deed for the Wallis Run interest in title. (**Expert report of Fred Holland Exhibit A-1 page 2**). Thus, the total number of acres conveyed in 1857 by John McCawley was 419.5 aces, which is consistent with the total number of acres in the John Brown Warrant, which was stated to be 407 ¾ acres with allowances and having a survey with a description that computes to 432.45 acres. (**Expert report of Fred Holland Exhibit A-1 page 3**).

The above subdivision of the John Brown Warrant is supported by reasonable interpretations of the deeds at the time of conveyance. First, the center and eastern portions of the John Brown Warrant were conveyed on the same day in 1857 and the stated number of acres is 312 with allowances. (**Expert report of Fred Holland Exhibit A-1 page 3**). This is consistent with the western portion of

the John Brown Warrant being conveyed 7 months later bringing the total number of acres conveyed to 419.5 acres. (**Expert report of Fred Holland Exhibit A-1 page 3**). Following the meets and bounds description precisely in the first two conveyances results in a total number of acres conveyed on the same day as 618.09, a conveyance of land far beyond the perimeter of the John Brown Warrant, and therefore could not possibly have been the intent of the parties at the time of conveyance. (**Expert report of Fred Holland Exhibit A-1 page 3**). Thus, the only logical conclusion is that the stated number of acres in the two deeds was the intent of the original grantor, in spite of the error in the meets and bounds description. As in Pencil, the stated number of acres is important to understand the intent of the parties at the time of conveyance and must be controlling.

There is additional evidence that supports the conclusion that the original grantor intended to subdivide the John Brown Warrant into three parcels and convey a total of 419.5 acres. The western portion of the John Brown Warrant was conveyed seven months after the middle and eastern portions. (**Expert report of Fred Holland Exhibit A-1 page 2**). The western portion conveyed an additional 107 ¾ acres with allowances. The conveyance of the western portion demonstrates that the grantor, and former owner of the entire John Brown Warrant, did not intend to grant a total of 737 acres that far exceeds the total number of acres contained in the John Brown Warrant, but clearly intended to convey the eastern

portion as 100 acres plus allowances, the middle portion as 206.03 acres, and the western portion as 107 ½ acres. The McCawley's could not have intended to convey more than they owned.

Furthermore, the McCawley to Whitaker deed states that it is the "middle portion" of the John Brown Warrant. (**Expert report of Fred Holland Exhibit A-1 page 3**). This language supports the assertion that the McCawleys intended to subdivide and convey an eastern portion, middle portion, and an western portion of the John Brown Warrant. If the McCawley to Whitaker deed was not a middle portion of the John Brown Warrant, it would be inconsistent and nonsensical to have an eastern portion conveyed 7 months later.

Finally, in the Proctor chain of title and the property now owned by Dwight Lewis Lumber Co., Inc., there is number of conveyances of the eastern parcel since 1857 that contain the same description describing the eastern parcel as being one-hundred acres. (**Expert report of Fred Holland Exhibit A-1 page 4**). Therefore historically, the subdivision of the John Brown Warrant into three parcels, the eastern parcel being 100 acres with allowances, the middle parcel being 212 acres, and the western parcel being 107 ½ acres has never been challenged or disputed.

The expert report for Proctor concludes that the meets and bounds description in the deed conveying the eastern parcel appears to be properly done, including plottable descriptions and a survey that closes when plotted. (**Expert**

**report of Andrew Grafton page 4**). Therefore the assumption is that Proctor must have an ownership interest in the subject property. The expert report for Proctor fails to address the conflict in the 1857 deed from John McCawley to John Meyer, which specifically states 100 acres with allowances and then the meets and bounds measurements total 206.03 acres. Further, the Proctor's expert witness report fails to explain how the middle parcel, which was specifically identified as the "middle portion" extends westward far beyond the limitations of the John Brown Warrant. (**Expert report of Andrew Grafton Exhibit B page 3**). The Plaintiff's expert also fails to explain the conveyance of the eastern portion of the John Brown Warrant, which falls within the meets and bounds description of the middle portion. (**Expert report of Andrew Grafton Exhibit B page 5**). In Short, the Plaintiff has failed to address the meets and bounds discrepancy and has failed to ascertain the intent of the grantor at the time of the original subdivision. The rationale of Plaintiff's expert would result in the McCawleys, who owed between 407 and 436 acres, conveying 737 acres in total, an obviously erroneous result. (**Expert report of Fred Holland Exhibit A-1 page 3**).

## V. Conclusion.

The intentions of the original grantor are clear and consistent with the division of the John Brown Warrant into three parcels, an eastern portion, middle

portion, and a western portion. The language in the McCawley to Meyer deed conveying the eastern portion of the John Brown Warrant specifically states that it is 100 acres plus allowances. Furthermore, subsequent deeds conveying the eastern portion have all purported to convey 100 acres plus allowances since the original subdivision. The total number of acres included in the 1857 subdivision was 419.5, which is consistent with the stated number of acres of the John Brown Warrant, being 407 ¾ with allowances and having a survey that computes to 432.45 acres. Suggesting that the McCawley's intended to convey 737 acres would suggest they intend to convey far more than they owned and is inconsistent with the stated number of acres in the deeds. Finally, the subdivision of the John Brown Warrant into three parcels, the eastern parcel being 100 acres with allowances, the middle parcel being 212 acres, and the western parcel being 107 ½ acres has never been challenged or disputed. There is overwhelming evidence that the intention of the grantors was to subdivide the entire John Brown Warrant into three parcels, the eastern parcel being 100 acres plus allowances.

WHEREFORE, the Defendant, Wallis Run. respectfully requests this Honorable Court to enter a judgment granting the Defendant's Motion for Summary Judgment and dismissing all of the claims of the Plaintiff, Charles Rice Kendall et al.

Respectfully submitted,

McNERNEY, PAGE, VANDERLIN & HALL

By: /s/ Thomas C. Marshall, Esquire

Thomas C. Marshall, Esquire
I.D. No. 59326
Attorneys for Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc.

433 Market Street
Williamsport, PA 17701
Telephone: 570-326-6555
Fax: 570-326-3170
Email: tmarshall@mpvhlaw.com

Date: December 20, 2017

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES RICE KENDALL and ANN P. HOCHBERG, as Trustees for The Thomas E. Proctor Heirs Trust, and BANK OF AMERICA, N.A., and JOHN J. SLOCUM, JR. As Trustees for The Margaret O.F. Proctor Trust,** | : | **CASE NO. 3:16-CV-01182** |
| | : | |
| | : | **(JUDGE MALACHY E. MANNION)** |
| | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| **Plaintiffs,** | : | |
| **vs.** | : | |
| | : | |
| **ANADARKO E&P ONSHORE LLC, WALLIS RUN HUNTING CLUB, INC., WALLIS RUN GAS AND OIL, INC.** | : | |
| | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## CERTIFICATE OF SERVICE

I, Thomas C. Marshall, Esquire, hereby certify that on this 20th day of December, 2017, a true and correct copy of Defendants Wallis Run Hunting Club, Inc.'s and Wallis Run Gas and Oil, Inc.'s Brief in Support of Motion for Summary Judgment was served as described below:

**By Electronic Mailing:**

Laura A. Lange, Esquire
Paul K. Stockman, Esquire
McGuire Woods LLP
625 Liberty Avenue, Suite 2300
Pittsburgh, PA 15222
llange@mcguirewoods.com
pstockman@mcguirewoods.com
*Attorneys for Plaintiffs*

John A. Snyder, Esquire
Suzette V. Simms, Esquire
Chena L. Glenn-Hart, Esquire
McQuaide Blasko, Inc.
811 University Drive
State College, PA 16801
jasnyder@mqblaw.com
svsims@mqblaw.com
clglenn-hart@mqblaw.com
*Attorneys for Defendant Anadarko E&P Onshore, LLC*

**McNERNEY, PAGE, VANDERLIN & HALL**

By:__/s/ Thomas C. Marshall, Esquire___________

Thomas C. Marshall, Esquire
I.D. No. 59326
Attorneys for Defendants Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc.

433 Market Street
Williamsport, PA 17701
Telephone: 570-326-6555
Facsimile: 570-326-3170
Email: tmarshall@mpvhlaw.com