**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLES RICE KENDALL and ANN P. HOCHBERG, as Trustees for The Thomas E. Proctor Heirs Trust, and BANK OF AMERICA, N.A., and JOHN J. SLOCUM, JR. as Trustees for The Margaret O.F. Proctor Trust,<br><br>Plaintiffs,<br><br>v.<br><br>ANADARKO E&P ONSHORE LLC, WALLIS RUN HUNTING CLUB, INC., WALLIS RUN GAS AND OIL, INC.<br><br>Defendants. | Civil Action No. 16-1182 |

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Laura A. Lange
Paul K. Stockman (admitted *pro hac vice*)
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 667-6000
Fax: (412) 667-6050
llange@mcguirewoods.com
pstockman@mcguirewoods.com

# Table of Contents

**Page**


Table of Contents ........ i

Table of Authorities ........ ii

Introduction and Summary ........ 1

Undisputed Material Facts and Procedural Background ........ 2

Question Involved ........ 6

Argument: The Court Should Enter a Summary Judgment Holding as a Matter of Law That the Boundaries of the Subject Property Are Delineated Solely by the Deed Description ........ 6

**I.** The Meyer Deed Conveyed 206 Acres to Meyer, the Proctor Trusts' Predecessor in Interest. ........ 6

A. The Legal Description in the Meyer Deed, Not the Acreage, Controls the Interest Conveyed. ........ 7

B. Parol Evidence Cannot Alter the Clear Terms of the Legal Description in the Meyer Deed. ........ 8

**II.** Defendants Cannot Establish the Legal Description Was a Scrivener's Error or Mistake. ........ 9

Conclusion ........ 12

## Table of Authorities

**Page(s)**

**Cases:**

*Bosler v. Sun Oil Co.*, 290 A. 718 (Pa. 1937) .......... 7

*Dawson v. Coulter*, 106 A. 187 (Pa. 1919) .......... 7

*Duncan Trust*, 232 A.2d 717 (Pa. 1966) .......... 9, 10

*Hoover v. Jackson*, 524 A.2d 1367 (Pa. Super. 1987) .......... 7

*In re Property of W.R. Covert*, 186 A.2d 20, 23 (Pa. 1962) .......... 6

*Keech v. Delaware County Trust Co.*, 147 A. 96 (Pa. 1929) .......... 8

*Kimmel v. Svonavec*, 85 A.2d 146 (Pa. 1952) .......... 9

*Miles Land Co. v. Hudson Coal Co.*, 91 A. 1061 (Pa. 1914) .......... 6

*Murphy v. Karnek*, 160 A.3d 850, 860 (Pa. Super. 2017) .......... 6

*Phillips v. Crist*, 33 Pa. Super. 445 (Pa. Super. 1907) .......... 8

*Raida v. Kusner*, No. 390 WDA 2013, 2014 WL 10919601 (Pa. Super. May 13, 2014) .......... 8

*Starling v. Lake Meade Prop. Owners Ass'n*, 162 A.3d 327 (Pa. 2017) .......... 6

*In re Trust of Mihordin*, 162 A.3d 1166 (Pa. Super. 2017) .......... 9

*Wysinski v. Mazzotta,* 472 A.2d 680 (Pa. Super. 1984) .......... 8, 9, 10, 11

## **Introduction and Summary**

This matter, a dispute over the extent of the parties' respective ownership of certain oil, gas, and mineral interests (the "Subsurface Estate") beneath a tract of land in Lycoming County (the "Subject Property"), involves a simple question of deed construction, one which this Court may resolve as a matter of law by applying well-settled principles of Pennsylvania law.

Plaintiffs Thomas E. Proctor Heirs Trust and Margaret O.F. Proctor Trust (collectively, the "Proctor Trusts") trace their title to the Subsurface Estate to a May 30, 1857 deed from John McCawley to John Meyer (the "Meyer Deed"). The Meyer Deed's legal description of the Subject Property – which was incorporated in subsequent deeds – specifically sets out the metes and bounds defining a tract of approximately 206 acres. Under established principles of deed construction, this description controls, even though the Meyer Deed also included a shorthand reference characterizing the Subject Property as "containing one hundred acres." This passing statement forms the basis of the contrary arguments of Defendants Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc. (collectively, "Wallis Run") and Anadarko E&P Onshore LLC ("Anadarko").

Defendants' position is not well-taken: it is well-established under Pennsylvania law that when there is a conflict in a deed between the legal description and a statement as to the area of property being conveyed, the legal description governs the conveyance. Further, where there is a clear legal description, as here, parol evidence may not vary the terms of the conveyance. (And even if parol evidence could be considered, there is nothing to demonstrate

that John McCawley actually intended to convey something other than the tract he carefully described by metes and bounds, since there is no evidence to show that he intended something other than what he wrote in 1857.)

Nor can Defendants overcome the result dictated by Pennsylvania law by claiming a “scrivener’s error.” To establish a scrivener’s error, a plaintiff must offer “clear and convincing evidence” of the error. Here, Defendants have not produced any evidence indicating the parties only intended to convey one hundred acres, rather than the 206 acres specifically described in the Meyer Deed.

Accordingly, the Court should hold that the Meyer Deed conveyed 206 acres, as specifically described therein, and should grant the Proctor Trusts’ Motion for Partial Summary Judgment on their quiet title, ejectment, and declaratory judgment claims, as well as on Defendants’ quiet title and declaratory judgment counterclaims.

**Undisputed Material Facts and Procedural Background**

The Subject Property at issue is part of the so-called John Brown Warrant, located in Cascade Township, Lycoming County. ¶ 1.[1] On March 30, 1857, John McCawley and his wife Elizabeth conveyed the surface and subsurface estate of the Subject Property to John Meyer in a deed recorded on May 15, 1857 in Lycoming County Deed Book 38, page 295. ¶ 2. The Meyer Deed included the following legal description of the property it conveyed, the Subject Property at issue here:

[1] Paragraph number references are to the Statement of Undisputed Material Facts accompanying Plaintiffs’ motion.

> Beginning at a Beech original north East corner of tract in the warrantee name of John Brown then South one hundred and ninety to Beech original South East corner of said tract then west one hundred and seventy three and one half perches to a post then north one hundred and ninety to a post, then east one hundred and seventy three and one half perches to the Beech the place of Beginning.

¶ 3. These metes and bounds define a tract containing 206 acres. ¶ 4.[2]

On March 30, 1857, John McCawley conveyed another portion of the John Brown Warrant to Conrad Whitaker in a deed recorded on May 20, 1857 in Lycoming County Deed Book 38, page 301 (the "Whitaker Deed"). ¶ 6. The Whitaker Deed provides the following legal description of the tract it conveyed:

> Beginning at a post thence West three hundred and forty seven perches to a post; thence North along other land of said John McCawley one hundred and ninety perches to a post; thence East along South line of Warrantee Alexander Wilcox three hundred and forty seven perches to a post; thence South along land of __________ one hundred and ninety perches to a post the place of Beginning containing two hundred and twelve acres Strict Measure the Same being a Middle Portion of tract surveyed in the Warrantee name of John Brown….

¶ 7.

On October 1, 1857, John McCawley conveyed another portion of the John Brown Warrant to F.W. Meier in a deed recorded on January 22, 1858 in Lycoming County Deed Book 38, page 776 (the "F.W. Meier Deed"). ¶ 8. The F.W. Meier Deed provides the following legal description of the tract it conveyed:

---

[2] Wallis Run, through which Anadarko claims its interest, admits as much, noting in its Answer that the Meyer Deed "described, in metes and bounds, the surface as containing two hundred six (206) acres." Answer to Complaint with Affirmative Defenses and Counterclaim ("Wallis Run Answer," ECF No. 17), ¶¶ 12, 73.

> Beginning at a Hemlock original corner of tract John Brown and John Barry; thence North one hundred and eighty six perches to a Linn Stump an original corner of tracts John Brown and Alexander Wilcox; thence East along a line of last named tract ninety seven and a half perches to a post corner of land lately conveyed by said John McCawley and wife to Conrad M. Whitaker; thence South by lands now or late of said Whitaker one hundred and eighty six perches to a post ; thence West ninety seven and a half perches to Hemlock the place of Beginning containing one hundred and seven and a half acres (more or less) and allowance of six percent for roads etc. the said lot hereby conveyed being taken off of the West End of said tract warranted in the name of John Brown and conveyed to the said McCawley and his wife by Edward R. Mayer and his wife.

¶ 9.

On May 13, 1871, John F. Meyer and his wife Mary M. Meyer conveyed the surface and subsurface of the Subject Property to Thomas E. Proctor in a deed recorded in Lycoming County Deed Book 64, page 413 (the "Proctor Deed").

¶ 10. The Proctor Deed contained a legal description of the Subject Property that mirrored that contained in the Meyer Deed:

> Beginning at a Beech original north East corner of tract in the warrantee name of John Brown. Thence south one hundred and ninety perches to Beech original south East corner of said tract. Thence west one hundred and seventy three and one half perches to a post thence north one hundred and ninety perches to post Thence east one hundred and seventy three and one half perches to Beech the place of Beginning containing one hundred acres and allowance of six percent be the same more or less.

¶ 11.

On October 2, 1894, Thomas E. Proctor and his wife Emma H. Proctor subsequently conveyed title to the surface of the Subject Property, among other properties, to Elk Tanning Company in a Warranty Deed recorded at Lycoming County Deed Book 144, Page 398 (the "Elk Tanning Deed"). ¶ 12. Once again, the Elk Tanning Deed contained a legal description of the Subject Property similar to that set out in the Meyer Deed and a legal description nearly identical to that set out in the Proctor Deed:

> Beginning at a Beech original north East corner of tract in the warrantee name of John Brown: thence south one hundred and ninety perches to Beech original south east corner of said tract: thence west one hundred and seventy three and one half perches to a post: thence north one hundred and ninety perches to post: thence east one hundred and seventy three and one half perches to Beech the place of beginning containing one hundred acres and allowance of six percent be the same more or less.

¶ 13. The Elk Tanning Deed excepted and reserved to Thomas E. Proctor, his heirs and assigns "all the natural gas, coal, coal-oil, petroleum, marble and all minerals of every kind and character…" (the "Proctor Subsurface Estate"). ¶ 14. The Proctor Trusts have succeeded to Thomas E. Proctor's interest, as reserved in the Elk Tanning Deed. ¶ 15.

Wallis Run Defendants entered into an oil and gas lease with Anadarko covering the Subject Property. ¶ 16. Anadarko has begun drilling activities and produced natural gas on the Subject Property. ¶ 17.

## Question Involved

When a deed specifically describes a tract of 206 acres, and this description is incorporated in subsequent deeds, does the legal description control, even though the deed elsewhere refers to the tract as "containing one hundred acres"?

Suggested Answer: Yes

## Argument: The Court Should Enter a Summary Judgment Holding as a Matter of Law That the Boundaries of the Subject Property Are Delineated Solely by the Deed Description.

### I. The Meyer Deed Conveyed 206 Acres to Meyer, the Proctor Trusts' Predecessor in Interest.

As a threshold matter, the Court applies Pennsylvania contract law in construing the Meyer Deed. *See Starling v. Lake Meade Prop. Owners Ass'n*, 162 A.3d 327, 341 (Pa. 2017). In so doing, "[t]he nature and quantity of the interest conveyed by a deed 'must be ascertained from the instrument itself.'" *Id.* (quoting *In re Property of W.R. Covert*, 186 A.2d 20, 23 (Pa. 1962)). While courts attempt to effectuate the intent of the parties, the courts "discern the parties' intent by looking to the language of the deed." *Murphy v. Karnek*, 160 A.3d 850, 860 (Pa. Super. 2017). Further, "[t]he meaning of a deed—that is, what it covers is a question of law for the court," and "[w]here the boundary lines of a grant are fixed by the grant itself, the question as to what these lines are is purely one of law." *Starling*, 162 A.3d at 340 (quoting *Miles Land Co. v. Hudson Coal Co.*, 91 A. 1061, 1064 (Pa. 1914)).

### A. The Legal Description in the Meyer Deed, Not the Acreage, Controls the Interest Conveyed.

The Meyer Deed, as a matter of settled Pennsylvania law, is deemed to apply to the tract defined by its metes and bounds, notwithstanding a contrary misstatement as to the number of acres those metes and bounds encircle. For example, in an analogous case, Superior Court considered "the weight to be given to the amount of acreage recited in a deed when it is at variance with the actual acreage enclosed within the specific boundaries defined in the deed description." *Hoover v. Jackson*, 524 A.2d 1367, 1368 (Pa. Super. 1987). In *Hoover*, the plaintiff contended the stated acreage of 125 acres should trump the description of the property set out in the deed, which defined a tract that in fact contained 152.3 acres. *Id.* at 1371. The Superior Court rejected this contention, holding:

> "Evidence of the acreage of land, especially where, as in this case, the number of acres is followed by the words 'more or less' has little weight as against specific boundaries and is in its nature an uncertain method of description and often a mere estimate. Where, however, . . . a doubt exists as to the actual location of the boundary and the writing contains no words to definitely fix the line by either metes and bounds or monuments on the ground, evidence of acreage becomes a material factor in the determination of the intention of the parties . . . ." In the instant case, the courses and distances, as well as the lines of adjoiner, stated in the Findley deed were sufficiently specific so that they could be located on the ground. The trial court did not err when it relied upon the deed description in preference to the amount of acreage recited in the deed.

*Id.* at 1371-1372 (quoting *Dawson v. Coulter*, 106 A. 187, 188 (Pa. 1919)); *see also Bosler v. Sun Oil Co.*, 290 A. 718, 719 (Pa. 1937) ("The description of the property by courses and distances is the controlling factor in cases of this

kind. Quantity is not decisive in determining title."); *Keech v. Delaware County Trust Co.*, 147 A. 96, 98 (Pa. 1929) ("As a general rule (to which this case is no exception), quantity, courses and distances must give way to boundary lines determined by clearly established monuments, natural or artificial, existing in or on the ground."); *Raida v. Kusner*, No. 390 WDA 2013, 2014 WL 10919601, at *2 (Pa. Super. May 13, 2014) (holding that plaintiff's "reliance on the language describing Kusner's parcel as 'containing 10 acres, more or less' is unavailing"); *Phillips v. Crist*, 33 Pa. Super. 445, 450 (Pa. Super. 1907) ("But it is well decided that quantity is not decisive in determining title. Description of land by quantity does not amount to a covenant that the land shall equal the quantity mentioned in the deed. The grantee has a right to all the land within the boundaries…") (internal citation omitted).

Here, the Meyer Deed sufficiently describes the specific boundaries of the land being conveyed, and it is undisputed that these metes and bounds describe a tract containing 206 acres. *See* ¶¶ 4-5. Therefore, under Pennsylvania law, the Meyer Deed conveyed two hundred and six (206) acres, not one hundred acres as contended by Defendants.

### B. Parol Evidence Cannot Alter the Clear Terms of the Legal Description in the Meyer Deed.

Defendants cannot use parol evidence, including their analysis of other conveyances by McCawley, to alter the clear terms of the legal description contained in the Meyer Deed. As the Superior Court held in *Wysinski v. Mazzotta*:

> Appellants' argument that there is a latent ambiguity in the description for lot 456 that becomes apparent when the description is applied to the ground must fail. There can be no latent ambiguity where, as here, there was land owned by the grantor which satisfied the description contained in the deed of conveyance. In such cases, parol evidence cannot vary the terms of the written instrument of conveyance.

472 A.2d 680, 683 (Pa. Super. 1984); *see also Kimmel v. Svonavec*, 85 A.2d 146, 150 (Pa. 1952) ("If a subject matter exists which satisfies the terms of the instrument of conveyance, there is no reason for allowing parol evidence."). Here, there is no contention that McCawley did not own the land described in the Meyer Deed.[3] Thus, Defendants may not use parol evidence to vary the clear legal description in the Deed. *Wysinski*, 472 A.2d at 683. This is particularly true where, as here, the legal description "appeared constantly in deed after deed in the chain of title…." *Id.*

## II. Defendants Cannot Establish the Legal Description Was a Scrivener's Error or Mistake.

Defendants cannot circumvent the clear application of the legal description, as mandated by Pennsylvania law, by claiming the description was a "scrivener's error." *See* Wallis Run Answer, at ¶¶, 87 12; Answer, Affirmative Defenses and Counterclaims of Anadarko (ECF No. 22), ¶ 12. To establish a scrivener's error, Defendants must offer evidence "that is clear, precise, convincing, and of the most satisfactory character." *In re Trust of Mihordin*, 162 A.3d 1166, 1172 (Pa. Super. 2017). In *Duncan Trust*, 232 A.2d 717, 722 (Pa. 1966), the Pennsylvania Supreme Court considered whether a party "clearly, precisely, and convincingly" established

[3] To the contrary, Defendants contend that McCawley conveyed the disputed 106 acres to Conrad Whitaker, Defendants' predecessor in interest.

that a scrivener's error had occurred in the preparation of a second amendment to a deed of trust. The only evidence offered was the testimony of the scrivener of the second amendment, who had not discussed the amendment with the settlor. *Id.* The Supreme Court held:

> It is impossible for us to find that the testimony clearly, precisely, and convincingly establishes the existence of a scrivener's error or mistake and it is impossible for anyone *now* to know what Settlor's intention was. The Settlor is dead, and thus cannot enlighten us. The only testimony concerning the mistake is that of the scrivener, twenty-three years after the event; who, at no relevant time, discussed the provisions of the amendment directly with the Settlor…. It is apparent from an examination of the record that Mr. Whitworth's memory had failed him with respect to many facets of the transaction surrounding the execution of the amendment. Even if his memory had served him well, his testimony would not be convincing, since he, by his own words, had absolutely no first –hand knowledge of the Settlor's intent.

*Id.*. Here, Defendants have not produced ***any*** evidence that the legal description is erroneous, let alone evidence "that is clear, precise, convincing, and of the most satisfactory character." Indeed, it is unlikely that any such evidence currently exists, given the passage of time since the conveyance in 1857. Defendants clearly have no contemporaneous witnesses who can testify regarding the "mistake." Absent such evidence, Defendants cannot "clearly, precisely, and convincingly" establish a scrivener's error. *See Duncan Trust*, 232 A.2d at 722.

Wallis Run's post-hoc analysis of the various conveyances by John McCawley does not alter this conclusion. In *Wysinski,* for example, the Court held where, as here, a deed clearly expressed the property boundaries, a post-

conveyance survey "was wholly inadequate, if not irrelevant, to show mistake in the description contained in the 1888 deed." 472 A.2d at 683. As such, Defendants cannot establish a scrivener's error or mistake in the Meyer Deed on the basis of instruments executed or recorded after the Meyer Deed. Therefore, fact that John McCawley ultimately may have conveyed more than the entire acreage in the John Brown Warrant does not justify rewriting the boundaries of the initial conveyance in the Meyer Deed, from which the Proctor Trusts trace their ownership interest in the Subsurface Estate.[4]

Accordingly, this Court should grant judgment as a matter of law on the Proctor Trusts' quiet title, ejectment, and declaratory judgment claims, as well as on Defendants' quiet title and declaratory judgment counterclaims, and enter an order: (1) holding that the Proctor Trusts are the rightful owners of Subsurface Estate of 206 acres of the Subject Property, as specifically described in the Meyer Deed; and (2) ejecting Anadarko from that 206 acre tract.

[4] Indeed, "the law is clear that where there is a conflict between boundaries described in deeds from the same grantor, the deed first executed has priority, and the grantee named therein has superior title." *Wysinski*, 472 A.2d at 683 (Pa. Super. 1984). Here, John Meyer recorded his deed first, meaning that he took title to the property as legally described in the deed as of May 15, 1857. As such, by the time of the subsequent recordings of the Whitaker deed (May 20, 1857) and F.W. Meier Deed (January 22, 1858), to the extent any overlap did exist in the legal descriptions, John McCawley no longer had title to such property and could not convey it.

## **Conclusion**

For the foregoing reasons, the Proctor Trusts request that this Court enter an Order granting their Motion for Partial Summary Judgment on their quiet title, ejectment, and declaratory judgment claims, as well as on Defendants' quiet title and declaratory judgment counterclaims.

Dated: December 20, 2017

Respectfully submitted,

/s/ *Laura L. Lange*

Laura A. Lange
Pa. ID No. 310733
Paul K. Stockman (admitted *pro hac vice*)
Pa. ID No. 66951
McGuireWoods LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 667-6000
Fax: (412) 667-6050
llange@mcguirewoods.com
pstockman@mcguirewoods.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLES RICE KENDALL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ANADARKO E&P ONSHORE LLC, *et al.*,<br><br>Defendants<br>. | Civil Action No. 16-1182- MEM<br><br>Judge Malachy E. Mannion<br><br>Complaint filed: 06/17/16<br><br>Electronically Filed |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment in the above-captioned matter was served this 20th day of December, 2017, to the attorneys/parties of record via ECF as follows:

Thomas C. Marshall, Esquire
Thomas E. Robins, Esquire
McNerney, Page, Vanderlin & Hall
433 Market Street
P.O. Box 7
Williamsport, PA 17703
(570) 326-6555
tmarshall@mpvhlaw.com
trobins@mpvhlaw.com

*Defs. Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc.*

John A. Snyder, Esquire
Suzette v. Sims, Esquire
McQUAIDE BLASKO, INC.
811 University Drive
State College, PA 16801
Phone: (814) 238-4926
jasnyder@mqblaw.com
svsims@mqblaw.com

*Attorneys for Defendant Anadarko E&P Onshore LLC*

/s/ Laura A. Lange