IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES RICE KENDALL and ANN P. HOCHBERG, as Trustees for The Thomas E. Proctor Heirs Trust, and BANK OF AMERICA, N.A., and JOHN J. SLOCUM, JR., as Trustees for The Margaret O.F. Proctor Trust, | : | Civil Action No. 3:16-cv-01182-MEM |
| | : | Judge Malachy E. Mannion |
| Plaintiffs, | : | |
| vs. | : | Complaint filed: 06/17/16 |
| ANADARKO E&P ONSHORE LLC, WALLIS RUN HUNTING CLUB, INC., and WALLIS RUN GAS and OIL, INC., | : | ***Electronically Filed*** |
| Defendants. | : | |

**DEFENDANT ANADARKO E&P ONSHORE LLC'S**
**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

John A. Snyder, Esquire
I.D. No. 66295
jasnyder@mqblaw.com
Suzette V. Sims, Esquire
I.D. No. 210355
svsims@mqblaw.com
McQUAIDE BLASKO, INC.
811 University Drive
State College, PA 16804
(814) 238-4926

Dated: January 10, 2018

Attorneys for Defendant
Anadarko E&P Onshore LLC

# TABLE OF CONTENTS

## Contents


I. INTRODUCTION ........ 1

II. PROCEDURAL HISTORY OF THE CASE ........ 2

III. STATEMENT OF FACTS ........ 3

IV. STATEMENT OF QUESTIONS INVOLVED ........ 3

V. ARGUMENT ........ 4

A. Standard of Review. ........ 4

B. Plaintiffs' Claim to Defendants' Oil and Gas Interests is Based upon a Misplaced Interpretation of the J.F. Meyer Deed. ........ 5

1. Interpretation of Internally Ambiguous Deed is Governed by Intention of Parties with Consideration of Attending Circumstances at the Time of Execution. ........ 6

2. Most Reasonable Interpretation of J.F. Meyer Deed Results in a Conveyance of 100 Acres Which Does Not Encompass the Subsurface Estate in Present Day Tax Parcel 06-212-101. ........ 7

3. Under the Applicable Recording Statute the J.F. Meyer Deed Had No Priority over the Other 1857 McCauley Conveyances Based Upon the Recording Dates. ........ 9

4. Subsequent Title History Does Not Support Plaintiffs' Purported Interpretation of J.F. Meyer Deed. ........ 10

C. Plaintiffs' Claims Against Defendants are Barred by the Doctrine of Laches. ........ 13

D. Defendants' Property Interests May Be Established by Adverse Possession. ........ 14

VI. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anaconda Co. v. Metric Tool & Die Co., 485 F. Supp. 410 (E.D. Pa. 1980) .......... 13
Armstrong Cty. Bldg. & Loan Ass'n v. Guffey, 200 A. 160 (Pa.Super. 1938) .......... 12, 13
Baker v. Roslyn Swim Club, 213 A.2d 145 (Pa. Super. 1965) .......... 7
Dawson v. Coulter,106 A. 187 (Pa. 1919) .......... 11, 12
Empire Coal Mining & Dev. v. Dep't of Envtl. Res., 678 A.2d 1218 (Pa. Cmwlth. 1996) .......... 6
Fulton v. Fulton, 106 A.3d 127 (Pa. Super. 2014) .......... 13
Maxwell v. Saylor, 58 A.2d 355 (Pa. 1948) .......... 6
Moore v. Duncan, 687 A.2d 822 (Pa. Super. 1996) .......... 15
Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298 (3d Cir. 1995) .......... 5
Smith v. Young, 259 Pa. 367 (1918) .......... 10
United States v. 2001 Honda Accord, 245 F. Supp. 2d 602 (M.D. Pa. 2003) .......... 4

**Other Authorities**

1 Pa. Smith's Laws 422 .......... 10
Act of 1775 § 1 .......... 10

**Rules**

F.R.C.P. 56 .......... 4
F.R.C.P. 56(a) .......... 4
F.R.C.P. 56(c) .......... 4

## I. INTRODUCTION

This case is about Plaintiffs' claim to certain oil and gas rights under present day Tax Parcel 06-212-101 in Lycoming County. Plaintiffs seek to establish their interest by taking advantage an obvious and consistently disregarded error in the metes and bounds description of a 160 year-old deed conveying an interest in an adjacent property.

The surface and subsurface estates in question were once part of a larger tract known as the John Brown Warrant. In 1857, John McCawley, the last person to own the entire warrant, divided the property into three parcels as follows: 1.) the "Western Tract" sold to F.W. Meier (DR 38/776, "F.W. Meier deed") containing 107.5 called acres; 2.) the "Middle Tract" sold to Conrad Whitaker (DR 38/301, "Whitaker deed"), containing 212 called acres (eventually conveyed to Wallis Run Hunting Club) and 3.) the "Eastern Tract" sold to J.F. Meyer (DR 38/295, "J.F. Meyer deed"), containing 100 called acres.

The J.F. Meyer deed, which is the source deed through which Plaintiffs claim their interest, expressly conveyed "one hundred acres" but the metes and bounds description, when plotted, described over 200 acres of land. Thus the deed is internally ambiguous.

The Plaintiffs' theory that the amount of land conveyed by the J.F. Meyer deed should be determined by the flawed metes and bounds description would, if

accepted, force an illogical determination resulting in the grantor having conveyed far more acreage than the warrant contained. When all of the 1857 McCawley conveyances in the John Brown Warrant are considered together, the most reasonable interpretation of the J.F. Meyer deed that would be consistent with the intent of the parties is that the deed conveyed only 100 acres of property as stated in the granting language of the deed.

In the 160 years since McCawley conveyances, none of the grantees or their successors has ever treated the J.F. Meyer deed as conveying the erroneous amount of land described by the metes and bounds language, nor have any of the grantees or their successors laid claim to the oil and gas interests at issue despite prior recorded oil and gas leases going back to at least 1982.

As more fully established hereafter, this Court should enter summary judgment in favor of Anadarko and against the Proctor Trusts.

## II. PROCEDURAL HISTORY OF THE CASE

The Proctor Trusts initiated this case via Complaint filed on June 17, 2016. (ECF No. 1). Wallis Run filed an Answer with Affirmative Defenses and Counterclaim on August 29, 2016. (ECF No. 17). Anadarko filed an Answer, Affirmative Defenses, and Counterclaims on September 22, 2016. (ECF No. 22).

On December 20, 2017, the parties filed dispositive motions and supporting documents as follows: 1.) Proctor Trusts filed a motion for partial summary

judgment, statement of material facts in support of motion for summary judgment, and supporting brief (ECF Nos. 54 through 56, respectively); 2.) Wallis Run filed a motion for summary judgment and supporting brief (ECF Nos. 52 and 53, respectively); and, 3.) Anadarko filed a motion for summary judgment, statement of material facts in support of motion for summary judgment ("SUMF"), and several supporting appendices. (ECF Nos. 40 through 51).

In support of its motion for summary judgment, Anadarko submits this brief, which is timely filed pursuant to the Court's order of December 28, 2017 (ECF No. 58).

## III. STATEMENT OF FACTS

Anadarko incorporates by reference the facts set forth in its SUMF (ECF No. 51) and the supporting documents. (ECF Nos. 41-50).

## IV. STATEMENT OF QUESTIONS INVOLVED

1. Should Plaintiffs' claims to Subsurface Rights be rejected because they are based upon a misplaced interpretation of the J.F. Meyer deed?

    *(Suggested answer: Yes).*

2. Are Plaintiffs' Claims to Subsurface Rights Barred by the doctrine of Laches?

    *(Suggested answer: Yes).*

3. In the Alternative, Are Defendants Entitled to Maintain their Property Interest as a Result of Adverse Possession?

*(Suggested answer: Yes).*

## V. ARGUMENT

### A. Standard of Review.

Summary judgment is appropriate if there is no genuine dispute as to any material fact at issue in the case. F.R.C.P. 56(a). Pursuant to F.R.C.P. 56(c), summary judgment is proper and shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." United States v. 2001 Honda Accord, 245 F. Supp. 2d 602, 605 (M.D. Pa. 2003). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the applicable law. An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict in favor of the non-moving party. Id. at 606.

The purpose of summary judgment proceedings is to pierce the pleadings and assess the proof in order to determine whether there is a genuine need for trial as to the issue. See, e.g., F.R.C.P. 56, Advisory Committee Note to 1963 Amendment. Although the non-moving party's evidence must be accepted as true and all reasonable inferences must be drawn in the non-moving party's favor, "the

mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue." Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1308 (3d Cir. 1995).

### B. Plaintiffs' Claim to Defendants' Oil and Gas Interests is Based upon a Misplaced Interpretation of the J.F. Meyer Deed.

The J. F. Meyer Deed through which Plaintiffs claim their interest is ambiguous on its face. The deed states that it conveys 100 acres of land, but the metes and bounds description in the deed plots to 206 acres. (ECF No. 41, pp. 57-58). (See also, ECF No. 46, p. 37 and ECF No. 47, p.7). The Plaintiffs seek to have the court ignore the stated (or "called") acreage. However, Plaintiffs' approach does not follow Pennsylvania law.

### 1. Interpretation of Internally Ambiguous Deed is Governed by Intention of Parties with Consideration of Attending Circumstances at the Time of Execution.

Pennsylvania law[1] provides that the intention of the parties at the time of the transaction is the "ultimate guide by which all deeds must be interpreted." Maxwell v. Saylor, 58 A.2d 355, 356 (Pa. 1948), citing Hindman v. Farren, 44 A. 2d 241 (Pa. 1945). Where there is ambiguity as to the meaning or terms of a grant, "they should 'receive a reasonable construction, and one that will accord with the intention of the parties." Hindman at 242.

To ascertain the parties' intention "the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement." Hindman at 242, citing Slonaker v. P. G. Publishing Co., 338 Pa. 292, 296, 13 A. 2d 48, 50-51 (Pa 1940). See also, Empire Coal Mining & Dev. v. Dep't of Envtl. Res., 678 A.2d 1218, 1222 (Pa. Cmwlth. 1996)("Construction of a deed must be governed by the intention of the parties at the time of the transaction, as gathered from a reading of the entire deed; if the deed is ambiguous, then all the attending circumstances at

[1] Pennsylvania law applies to this case because the Court's jurisdiction is based upon diversity of citizenship. "[f]ederal courts sitting in diversity cases are required to apply the substantive law of the state whose laws govern the action." Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3d Cir. 1990), citing Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).

the time of execution should be considered to aid in determining the object of the parties.”).

Pennsylvania courts have held that the technical rules of deed interpretation will not be favored when the result is clearly against the parties’ intention, or where the boundary claimed is so manifestly wrong as to lead to an absurd result. Baker v. Roslyn Swim Club, 213 A.2d 145, 150 (Pa. Super. 1965).

### 2. Most Reasonable Interpretation of J.F. Meyer Deed Results in a Conveyance of 100 Acres Which Does Not Encompass the Subsurface Estate in Present Day Tax Parcel 06-212-101.

The obvious internal ambiguity in the J. F. Meyer deed dictates that the deed be evaluated in the context of the circumstances of the transaction to determine the intent of the parties. As previously established, John McCawley divided the John Brown Warrant by three conveyances in the 1857. As explained by title examiner, Bruce Rudoy, J.F. Meyer deed and Whitaker deed, which were both conveyed on March 30, 1857, contain similar errors in the metes and bounds description:

> The source of the inaccuracy in the above [J.F. Meyer deed and Whitaker] deeds can be traced to an identifiable error in the property description. The J. F. Meyer Deed and the Whitaker Deed both have north to south boundaries of 190 perches, which is nearly consistent with the original John Brown Warrant call of 186 perches. Therefore, the north to south boundaries do not appear to be the source of the inaccuracy. However, the east to west boundaries in both deeds appear to be nearly

> twice as long as what would be required to make the stated acreage and plotted acreage consistent. Because this same error appears in both deeds, it is reasonable to conclude that the plotted acreages of both the J. F. Meyer Deed and Whitaker contain a miscalculation by the original surveyor.
>
> For the John F. Meyer tract, reducing the east to west boundary lines by half reduces the total area to 103.0156 acres nearly the stated acreage in the deed. For the Whitaker tract, reducing the east to west boundary lines by half reduces the total area to 206.0313 acres which is nearly equal to the stated acreage of 212 in the deed. When these revised acreage amounts, making up current day Tax Parcel 06-212-101, are combined with the eastern portion of the warrant, i.e. current day Tax Parcel 06-212-100, the total area equals approximately 422 acres. This acreage amount falls in between the stated acreage of the John Brown Warrant as indicated by the J. F. Meyer Deed, Whitaker Deed and F. W. Meier Deed, being 419.5 acres, and the 432.45 acres of the John Brown Warrant as plotted and shown on Exhibit 1.

(ECF No. 47, pp.7-8). (See also, ECF No. 46, pp. 37-38).

The stated or "called" acreages in the three deeds dividing the John Brown Warrant (i.e., Meier, Whitaker, and J.F. Meyer deeds) total 419.5 acres, which is consistent (within range of accuracy of less than 3%) of the 407.5 acres of the John Brown Warrant as it was originally surveyed. (Id.) Conversely, the plotted acres of the three deeds total 731 acres (Meier deed 113 plotted acres, Whitaker deed 412 plotted acres, and J.F. Meyer deed 206 plotted acres), which is far in excess of the total acreage in the John Brown Warrant. (Id.) Under the Proctors' interpretation

of the J.F. Meyer deed, the total property conveyed by McCawley by the three deeds would have extended well beyond the borders of the John Brown Warrant. (Id.) It is simply illogical to suggest that this is what the parties to the conveyances intended.

### 3. Under the Applicable Recording Statute the J.F. Meyer Deed Had No Priority over the Other 1857 McCauley Conveyances Based Upon the Recording Dates.

The Whitaker Deed (covering the Middle tract) and the J. F. Meyer Deed (covering the Eastern tract) were both dated March 30, 1857. The J. F. Meyer Deed was recorded first on May 15, 1857 (DR 38/295, ECF No. 41, pp. 57-58) and the Whitaker Deed was recorded next on May 20, 1857 (DR 38/301, ECF No. 41, pp. 60-61). It is anticipated Plaintiffs may attempt to assert that their claim is superior under Pennsylvania's recording statute. However, at the time of the McCawley conveyances, a six month period was allowed for recording before a grantee's interest became subject to a subsequent purchaser.

The recording statute applicable to the conveyances at issue is the Act of March 18, 1775, which provides, in relevant part, that deeds and conveyances "shall be recorded in the office for recording of deeds, in the county where such lands or hereditaments are lying and being, within six months after the execution of such deeds and conveyances execution," and if not so recorded, "shall be

adjudged fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration" who records their interest prior in time. Act of 1775 § 1, 1 Pa. Smith's Laws 422.

The Act of March 18, 1775 provides no priority of the J.F. Meyer deed over the Whitaker deed, as both deeds were recorded within six months of execution. See Smith v. Young, 259 Pa. 367 (1918). Moreover, J.F. Meyer was not a subsequent purchaser. Rather, the deeds were executed together as part of a series of transactions dividing the John Brown Warrant. Therefore, the deeds should each be interpreted together.

### 4. Subsequent Title History Does Not Support Plaintiffs' Purported Interpretation of J.F. Meyer Deed.

The plotted acreages of the J.F. Meyer deeds and the Whitaker deeds have long been disregarded by subsequent owners. With respect to the J.F. Meyer tract, Mr. Rudoy noted, "the stated acreage was never corrected in subsequent deeds to reflect a 206 acre tract," and there is "no record of an assessment of a 206 acre tract in Proctor's name." (ECF No. 47, p. 8). Moreover, the 100 acres conveyed to John F. Meyer was re-surveyed in 1905 to be 111 acres and the current assessment of the land is only 120 acres. Id. As Mr. Rudoy notes, "Had the J.F. Meyer Deed actually conveyed 206 acres, there would be subsequent county records

documenting such acreage amount." Id. The Proctors have offered no such documentation, nor have they shown J.F. Meyer and his successors ever asserted ownership of a 206 acre property. Id.

Similarly, with respect to the Whitaker deed, there is no evidence of any documentation to reflect that the tract encompassed anything close to 412 plotted acres set forth in the erroneous metes and bounds description. Wallis Run, which eventually acquired both the western (Meier) and middle (Whitaker) tracts that now comprise Tax Parcel 06-212-101, obtained a modern survey of the combined tracts in 2013. (ECF No. 47, p. 8). The survey found 382.89 acres in the combined tracts, which is more in line with the stated or "called" acreages of 319.5 acres in the combined Meier and Whitaker deeds, as opposed to 525 acres in the combined deeds as plotted. (Id.).

This case is not unlike the case of Dawson v. Coulter,106 A. 187 (Pa. 1919), which involved a dispute between oil and gas lessees of adjoining properties over the boundary lines between the respective properties. Finding that parole evidence was properly admitted relating to the division line between the two tracts, the court stated as follows:

> The general rule is that one who claims title to property through another, regardless of the nature of the transfer whether by the act of the parties or the act of law, is bound by earlier acts or declarations of his predecessor and takes the title cum onere. Under this rule all acts and

> declarations of the owner of land made during the continuance of his interest tending to show the character or extent of his possession or interest, or the location of boundaries, are competent evidence not only against himself but also against those who claim through or under him. … [a]ll acts and declarations of the latter tending to fix the location of the line dividing the two tracts are competent evidence.

Id., at 188 (internal citations omitted).

In affirming a judgment entered in favor of the defendant, the Pennsylvania Supreme Court found in Dawson that the court of common pleas properly admitted parole evidence tending to show the location of the division line, and that evidence of the quantity of land called for in the lease was a material factor in the determination of the intention of the parties. Dawson, at 188. In the instant case, the fact that the later descriptions of the McCawley deeds are consistent with the stated or "called" acreages set forth in those deeds combined with the complete lack of evidence of any of the prior owners challenging the boundaries of the tracts in the John Brown Warrant is strong evidence supporting the position that Plaintiffs' purported interpretation of the J.F. Meyer deed is unsupportable in law or fact.

Under Pennsylvania law a court may reform a deed to reflect the intention of the parties. Armstrong Cty. Bldg. & Loan Ass'n v. Guffey, 200 A. 160, 163 (Pa.Super. 1938) "[T] right to reformation of a deed in equity, if mutual mistakes

appear, is unquestionable where the purpose is to correct the inaccurate description given therein, and make it conform to the intention of the parties." Id., citing Krieger et al. v. Rizzo, 161 A. 483 (Pa.Super. 1932). In the instant case, the Court should not use a faulty metes and bounds description to declare the intent of the parties when it is clear that the J.F. Meyer deed and all of the subsequent deeds in that chain of title, as well as the use and assessments of the properties in question, have always accepted the division of the properties based upon the called acreage.

### C. Plaintiffs' Claims Against Defendants are Barred by the Doctrine of Laches.

Plaintiffs' claims in this matter are also barred by laches. Pursuant to Pennsylvania law, laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another. Fulton v. Fulton, 106 A.3d 127, 131 (Pa. Super. 2014), quoting Estate of Scharlach, 809 A.2d 376 (Pa. Super. 2002). See also, Anaconda Co. v. Metric Tool & Die Co., 485 F. Supp. 410, 427 (E.D. Pa. 1980).

More than one hundred twenty (120) years have passed since Plaintiffs' predecessor-in-interest, Thomas Proctor, Sr., severed the surface and subsurface rights of the Eastern Tract, through which the Plaintiffs claim their interest. In all of this time, the Proctor heirs have never asserted title to oil and gas interests at issue, until now. In fact, the Proctor heirs stood idly by as prior oil and gas leases

were recorded as early as 1982. Leases publicly recorded include the following: Lease dated August 10, 1982 in favor of Delta Drilling Company (DR 1019/229); Lease dated May 22, 1987 in favor of Douglas Exploration, Inc. (DR 1208/92); and Lease dated July 29, 2002 in favor of Phillips Production Company (DR 4427/30). (See, citations to Oil and Gas Leases listed in Rudoy's October 26, 2010 title opinion, Section III at ECF No. 46, pp. 47-50). (See also, ECF No. 46 and ECF No. 47). Moreover, the current oil and gas lease, which now benefits Anadarko, was first recorded in 2007.

Such a long delay in asserting rights to the oil and gas of the subject property certainly prejudices Defendants. Wallis Run Hunting Club, Inc. paid lawful and legally sufficient consideration to support the conveyance to them, and this Defendant thereafter leased this rightfully acquired property. Plaintiffs' claims against Defendants now, after so many years, should not be entertained by the Court.

**D. Defendants' Property Interests May Be Established by Adverse Possession.**

Alternatively, and notwithstanding the foregoing arguments, the Defendants' interests in the property rights at issue are supported by the doctrine of adverse possession. Pennsylvania law allows a party to establish title in land by adverse possession when the party can prove "actual, continuous, exclusive, visible,

notorious, distinct and hostile possession of the land for twenty one (21) years." Moore v. Duncan, 687 A.2d 822, 828 (Pa. Super. 1996), citing Baylor v. Soska, 658 A.2d 743 (1995).

Since 1939, Defendant Wallis Run Hunting Club, Inc. has been vested with full title to Tax Parcel 06-212-101. (See, DR 337/186 at ECF No. 49, p. 218 and DR 299/30 at ECF No. 49, pp. 163-164). (Also see, ECF No. 46). As noted in Anadarko's SUMF, the acreage in Tax Parcel 06-212-101 of 331 acres approximately equals the combined stated acreage of the March 30, 1857 Whitaker deed at 212 acres and the October 1, 1857 deed at 100 acres. (See, ECF No. 46 and ECF No. 47). The records show that Wallis Run Hunting Club, Inc. has paid taxes on the property to which the Plaintiffs claim their interest for numerous years. (Id.)

Moreover, as referenced in the preceding section of this brief, even before Wallis Run executed the oil and gas lease through which Anadarko claims its interest, Wallis Run Hunting Club, Inc. executed prior oil and gas leases with respect to Tax Parcel 06-212-101, which would include the subsurface interests to which Plaintiffs now seek title.

Wallis Run's assertion of rights with respect to the property, and, particularly with respect to oil and gas interests at issue, have been evident for far more than twenty-one (21) years and would clearly support a basis for finding title by adverse possession. Given that Anadarko derives its claim to the oil and gas

interests at issue by lease with Wallis Run, which is not contested by Wallis Run, this supports Anadarko's position that its interests are superior to the Plaintiffs.

## VI. CONCLUSION

In conclusion, Defendant Anadarko requests that this Court grant summary judgment in its favor and enter an order dismissing Plaintiffs' Complaint in its entirety.

Respectfully submitted,

McQUAIDE BLASKO, INC.

Date: January 10, 2018

By: s/John A. Snyder

John A. Snyder, Esquire
I.D. No. 66295
jasnyder@mqblaw.com
Suzette V. Sims, Esquire
I.D. No. 210355
svsims@mqblaw.com
811 University Drive
State College, PA 16804

Attorneys for Defendant
Anadarko E&P Onshore LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES RICE KENDALL and ANN P. HOCHBERG, as Trustees for The Thomas E. Proctor Heirs Trust, and BANK OF AMERICA, N.A., and JOHN J. SLOCUM, JR., as Trustees for The Margaret O.F. Proctor Trust, | : | Civil Action No. 3:16-cv-01182-MEM |
| | : | Judge Malachy E. Mannion |
| Plaintiffs, | : | |
| vs. | : | Complaint filed: 06/17/16 |
| ANADARKO E&P ONSHORE LLC, WALLIS RUN HUNTING CLUB, INC., and WALLIS RUN GAS and OIL, INC., | : | ***Electronically Filed*** |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Anadarko E&P Onshore LLC's Brief in Support of Motion for Summary Judgment in the above-captioned matter was served this 10th day of January, 2018, to the attorneys/parties of record via ECF as follows:

Laura A. Lange, Esquire
Paul K. Stockman, Esquire
McGuire Woods LLP
625 Liberty Avenue, 23rd Floor
EQT Plaza
Pittsburgh, PA 15222
(412) 667-7941
llange@mcguirewoods.com
pstockman@mcguirewoods.com
(For Plaintiffs)

Thomas C. Marshall, Esquire
Thomas E. Robins, Esquire
McNerney, Page, Vanderlin & Hall
433 Market Street
P.O. Box 7
Williamsport, PA 17703
(570) 326-6555
tmarshall@mpvhlaw.com
trobins@mpvhlaw.com
(For Defs. Wallis Run Hunting Club, Inc. and
Wallis Run Gas and Oil, Inc.)

McQUAIDE BLASKO, INC.

By: s/Suzette V. Sims

John A. Snyder, Esquire
I.D. No. 66295
jasnyder@mqblaw.com
Suzette v. Sims, Esquire
I.D. No. 210355
svsims@mqblaw.com
811 University Drive
State College, PA 16801
Phone: (814) 238-4926
Fax: (814) 234-5620

Attorneys for Defendant
Anadarko E&P Onshore LLC