IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES RICE KENDALL and ANN P. HOCHBERG, as Trustees for The Thomas E. Proctor Heirs Trust, and BANK OF AMERICA, N.A., and JOHN J. SLOCUM, JR., as Trustees for The Margaret O.F. Proctor Trust, | : : : : : : : | Civil Action No. 3:16-cv-01182-MEM |
| Plaintiffs, | : : | Judge Malachy E. Mannion |
| vs. | : : | Complaint filed:  06/17/16 |
| ANADARKO E&P ONSHORE LLC, WALLIS RUN HUNTING CLUB, INC., and WALLIS RUN GAS and OIL, INC., | : : : : : | *Electronically Filed* |
| Defendants. | : : | |

## PRETRIAL MEMORANDUM OF
## DEFENDANT ANADARKO E&P ONSHORE LLC

**A.    Brief Statement re Federal Court Jurisdiction**

Jurisdiction in this matter is based upon diversity of citizenship pursuant to

28 U.S.C. § 1332 based upon diversity of citizenship between all Plaintiffs and

Defendants.

**B.    Summary Statement of Facts and Contentions as to Liability**

This case presents a dispute as to the ownership of subsurface oil and gas

rights under acreage formerly comprising the John Brown Warrant located in

Cascade Township, Lycoming County, Pennsylvania.  In 1857, the John Brown

1

Warrant was subdivided by three deeds issuing from John McCawley. The John Brown Warrant was surveyed in 1792 and found to contain 407 acres. Thereafter, the John Brown Warrant was subdivided by three deeds from John McCawley in 1857 and 1858. The eastern most deed, from McCawley to John Meyer ("Meyer Deed"), dated March 30, 1857, and recorded May 15, 1857, is one of two internally ambiguous deed which gives rise to the instant dispute. The Meyer Deed contains a stated numerical acreage of 100 acres, but also contains a metes and bounds description that, when plotted, contains approximately 206 acres. The "middle" deed, from McCawley to Conrad Whitaker ("Whitaker Deed"), also executed March 30, 1857 and recorded May 20, 1857, contains a numerical acreage of 212 acres and a metes and bounds description that when plotted contains 412 acres. The western most deed, from McCawley to F. W. Meier ("Meier Deed"), executed October 1, 1857 and recorded January 22, 1858, contains a numerical stated acreage of 107.5 acres, and a metes and bounds description that, when plotted, contains 113 acres.

Given that the 1792 survey of the John Brown Warrant established the Warrant as containing 407 acres prior to these three conveyances, there is a marked disparity between the acreage conveyed by the numerical acreage calls in the three deeds versus the acreage purported to be conveyed using the metes and bounds descriptions within the three deeds. Applying the numerically stated acreage, the

Meyer, Whitaker and Meier Deeds conveyed a total acreage (419.5 acres) that is reasonably consistent with the total acreage in the John Brown Warrant (numerically stated as 407 acres but describing a tract by metes and bounds that, when plotted contains 432 acres).  Contrastingly, relying upon the metes and bounds descriptions in the Meyer, Whitaker and Meier Deeds yields a total conveyed acreage of 719 acres from the approximately 400 acre John Brown Warrant.  To the best of Defendant's knowledge, for well over 100 years, no successors to the Meyer or Whitaker Deeds attempted to enforce the erroneous metes and bounds description.

The current tax parcels defining those properties, (Tax Parcel 6-212-101 for the Wallis Run interests deriving from the Whitaker and Meier Deeds and Tax Parcel 6-212-100 for the Proctors/Dwight Lewis Lumber[1] interests deriving from the Meyer Deed), utilize the stated acreage, not the plotted acreage.

Wallis Run succeeded to the acreage conveyed by the Whitaker and Meier Deeds and entered into oil and gas leases for that property.  Defendant Anadarko initiated exploration and production on this property and Alta Marcellus Development LLC acquired Anadarko's interests effective June 1, 2016.  Near the time of production, the Proctors first raised their contention that they held an

---

[1] Dwight Lewis Lumber is the successor to the surface interests the Proctors formerly held in the Meyer Deed property.

ownership interest in the oil and gas being produced pursuant to the Wallis Run lease.

The effect of the Proctor's reliance on the metes and bounds description is to expand the western boundary of the Meyer tract in a westward direction so as to encroach into, and overlap with the Defendants' property.

Defendants contend, under well-established principles of deed interpretation, and given the deed ambiguities and the attendant circumstances, the most appropriate approach is to disregard the erroneous metes and bounds description and to accredit the more accurate numerically-called acreage amounts. Defendants submit that the Proctors' purported interpretation would lead to an absurd result. Specifically, per the Proctors' interpretation, the parties' common predecessor, McCawley, would purportedly have conveyed more than 700 acres from a warrant that undisputedly contained just over 400 acres. Defendants contend that appropriate principles of deed interpretation as well as common sense, mandate that such an absurd result be rejected in favor of the more reasonable and sensible interpretation attained by accrediting the numerical acreage calls and disregarding the erroneous metes and bounds description.

## C.   Comprehensive Statement of Undisputed Facts

Please refer to Section I, below.

D.      **Brief Description of Damages**

Plaintiffs aver that a legal trespass has occurred because they contend that Defendants' Marcellus Shale operations are taking place on the Disputed Property that they own.  They have also contended Defendants are liable under the doctrine of conversion, presumably relating to the production and sale of the natural gas. Alta, through counsel, has disclosed the total amount of royalties from the A-2H well line[2] beginning with the first flow and continuing to the present.  Defendant Alta has also identified the amount of the royalty payments that have been escrowed and not paid to Wallis Run due to the Plaintiffs' claims in this case.  It is important to note that this royalty figure pertains to royalties derived from the entire length of the A-2H well line and is <u>not</u> limited to the portion of the well line that passes through the Disputed Property.  The Royalties from the CA-2H well from first flow to present, as communicated by Defendant Alta, are:  $358,908.07 (paid) and $205,726.43 (escrowed).  Because this figure pertains to the entire length, and not just the portion passing through the disputed property, it significantly overstates the amounts which would be due and owing to the Proctors if they were successful on their conversion claims.

---

[2] The A-2H well line is one of several well lines emanating from the Wallis Run Hunting Club North Pad A.  A portion of the A-2H well line appears to run through the "Disputed Property." The Disputed Property is a rectangular area to the west of the eastern boundary of Tax Parcel 6-212-101.

With respect to Counterclaim Plaintiffs Anadarko and Alta Marcellus Development, LLC's counterclaims as against the Proctor Heirs, Counterclaim Plaintiffs seek to Quiet Title in their favor and to obtain a judicially enforceable declaration that they hold the legal right, title and interest to *inter alia,* the oil and gas rights contained in and under the Disputed Property, and that Plaintiffs do <u>not</u> have legally or equitably enforceable rights to the oil and gas rights in and under the Disputed Property.  Counterclaim Plaintiffs request that the deeds be reformed as necessary, and that they be afforded all other legal or equitable relief necessary to enforce their property rights.

**E.     Names and Addresses of Witnesses, along with specialties/qualifications of experts**

    1)    Representative of Anadarko Land Department (TBD)
            1201 Lake Robbins Drive
            The Woodlands, TX  77380

    2)    Representative of Alta Marcellus Development, LLC (TBD)
            500 Dallas Street, Suite 2700
            Houston, TX  77002

    3)    Records custodian (TBD, if necessary)[3]
            Petro-Land Group, Inc.
            2160 Sheridan Street
            Williamsport, PA  17701

---

[3] Defendants understand, based on discussions with Plaintiffs' counsel, that there are no concerns about the authenticity of the instruments comprising Defendants' chain of title.  Therefore, it should not be necessary to have a Petro-Land representative authenticate these instruments. Defendants have requested that Plaintiffs advise them if their understanding is not correct, and so far Plaintiffs have not indicated a dispute over the authenticity of the instruments.

4)    Bruce F. Rudoy, Esquire
      Babst Calland
      Two Gateway Center, 6th Floor
      Pittsburgh, PA  15222

5)    William F. Hoffmeyer, Esquire
      Hoffmeyer & Semmelman, LLP
      30 North George Street
      York, PA  17401

**F.     Summary of Testimony of Each Expert Witness**

Bruce F. Rudoy will testify as an expert witness.  His expertise relates to proper and customary practices relating to drafting and interpretation of oil and gas instruments and assessment of competing ownership rights, particularly relative to subsurface rights in the Commonwealth of Pennsylvania.  Mr. Rudoy's curriculum vitae and expert report have previously been produced by Defendants in this case.

William F. Hoffmeyer is expected to testify consistently with Bruce Rudoy. However, unlike Mr. Rudoy, Mr. Hoffmeyer was not a participant in the original title opinions that supported the drilling and exploration operations by Anadarko. Mr. Hoffmeyer was retained solely as an expert witness for purposes of litigation after the Proctors' commenced this lawsuit.

**G.     Special Comment about Pleadings and Discovery, including depositions**

After this litigation was filed, Defendant Anadarko E&P Onshore LLC consummated a transaction that resulted in the oil and gas assets at issue in this case being transferred from Anadarko to Alta Marcellus Development, LLC.

Although the transaction was concluded in late 2017, the effective date of the transaction was June 1, 2016, pre-dating this litigation.  The undersigned counsel has suggested, and all counsel have agreed, to move to join Alta Marcellus Development, LLC as a successor to the interests of Defendant Anadarko E&P Onshore LLC as a Defendant and Counterclaim Plaintiff.

**H.     Summary of Legal Issues Involved and Legal Authorities Relied Upon**

The legal issues involved in this case principally involve the most appropriate method of interpreting the Meyer and Whitaker Deeds emanating from the John Brown Warrant, which correspondingly affect the ownership of the Disputed Property.  These principles were addressed in the expert reports of Messrs. Hoffmeyer and Rudoy, attached hereto.

**I.     Stipulations Desired**

Defendants seeks stipulations as to what Defendants contend are the undisputed facts as follows:

I. **Chain of Title of John Brown Warrant**

1.     The property at issue in this case (the "Disputed Property") is subsurface property which was part of the John Brown Warrant, located in Cascade Township, Lycoming County, and is part of present day Tax Parcel No. 06-212-101.

2.     Plaintiffs contend that the Disputed Property contains 206 acres, and Defendants contend that the Disputed Property contains 100 acres.

3.     The original patent for the John Brown Warrant described the warrant as containing 407 3/4 called acres, which is the same amount of called acreage as each of the other warrants contiguous to the John Brown Warrant.

4.     In a 1792 survey, the John Brown Warrant is depicted as a rectangle whose eastern and western boundaries run north and south for a distance of 186 perches each, and whose northern and southern boundaries run east and west for a distance of 372 perches each.

5.     The metes and bounds description of the John Brown Warrant, when plotted describe a tract containing 432.45 acres.

6.     By deed dated December 20, 1855, John McCawley acquired the entire John Brown Warrant, which is described by adjoinders with a stated acreage of 407 acres and 20 perches (DR 37/437).

7.     In 1857, the John Brown Warrant was subdivided through the execution of three separate deeds.

8.     The result was that the entirety of the John Brown Warrant was subdivided into three parts:  an eastern portion, middle portion and western portion.

8.    The Plaintiff asserts ownership interest in the eastern portion, and Defendant Wallis Run asserts ownership interest based on the conveyance of the middle and western portions.

9.    Defendant Anadarko asserts an interest in the middle and western portions pursuant to the oil and gas lease agreement between Wallis Run and Anadarko.

10.    On March 30, 1857, John McCawley and his wife Elizabeth conveyed the surface and subsurface estate of the Disputed Property to John Meyer in a deed recorded on May 15, 1857 in Lycoming County Deed Book 38, page 295 (the "Meyer Deed").

11.    The Meyer Deed (or eastern portion of the John Brown Warrant) included the following description of the property it conveyed, the Disputed Property at issue here:

> *All that certain tract or messuage of land containing one hundred acres and allowance of six per cent for roads &c Situate in Cascade Township Lycoming County Penna bounded and described as follows Beginning at a Beech original north East corner of tract in the warrantee name of John Brown then South one hundred and ninety to Beech original South East corner of said tract then west one hundred and seventy three and one half perches to a post then north one hundred and ninety to a post, then east one hundred and seventy three and one half perches to the Beech the place of Beginning.*

12.     The Meyer Deed contained a numerical acreage call of 100 acres. The metes and bounds description in the Meyer Deed describes a tract containing 206 acres when plotted.

13.     On March 30, 1857, John McCawley conveyed a part of the John Brown Warrant to Conrad Whitaker in a deed recorded on May 20, 1857 in Lycoming County Deed Book 38, page 301 (the "Whitaker Deed").

14.     The Whitaker Deed (or middle portion of the John Brown Warrant) provides the following description of the tract it conveyed:

> *All that certain messuage tenement or tract of unseated land Situate in Cascade Township Lycoming County Pennsylvania and bounded and described as follows. Beginning at a post thence West three hundred and forty seven perches to a post; thence North along other land of said John McCawley one hundred and ninety perches to a post; thence East along South line of Warrantee Alexander Wilcox three hundred and forty seven perches to a post; thence South along land of _____ one hundred and ninety perches to a post the place of Beginning containing two hundred and twelve acres Strict Measure the Same being a Middle Portion of tract surveyed in the Warrantee name of John Brown….*

17.     The Whitaker Deed contains a numerical acreage call of 212 acres. The metes and bounds description within the Whitaker Deed, when plotted, describes a tract containing 412 acres.

18.     On October 1, 1857, John McCawley conveyed a part of the John Brown Warrant to F.W. Meier in a deed recorded on January 22, 1858 in Lycoming County Deed Book 38, page 776 (the "Meier Deed").

19.     The Meier Deed (or western portion of the John Brown Warrant) provides the following legal description of the tract it conveyed:

> *All that certain messuage or tract of unseated land Situate in the Township of Cascade in the County of Lycoming and State of Penna aforesaid bounded and described as follows: Beginning at a Hemlock original corner of tract John Brown and John Barry; thence North one hundred and eighty six perches to a Linn Stump an original corner of tracts John Brown and Alexander Wilcox; thence East along a line of last named tract ninety seven and a half perches to a post corner of land lately conveyed by said John McCawley and wife to Conrad M. Whitaker; thence South by lands now or late of said Whitaker one hundred and eighty six perches to a post ; thence West ninety seven and a half perches to Hemlock the place of Beginning containing one hundred and seven and a half acres (more or less) and allowance of six percent for roads &c the said lot hereby conveyed being taken off of the West End of said tract warranted in the name of John Brown and conveyed to the said McCawley and his wife by Edward R. Mayer and his wife.*

20.     The Meier Deed contains a numerical acreage call of 107.5 acres.  The metes and bounds description within the Meier deed, when plotted, describes a tract containing 113 acres.

21.     Collectively, the metes and bounds descriptions from the Meyer, Whitaker and Meier Deeds, when plotted, purport to convey a total of 731 acres. However, the John Brown Warrant was surveyed in 1792 and found to contain 407 acres, and the John Brown Warrant description, when plotted, describes a tract containing 432 acres.

22.     The total numerical stated acreage in the Meyer, Whitaker, and Meier Deed, added together, is 419.5 acres (eastern portion = 100 acres, the middle portion = 212 acres, and the western portion = 107 $^1/_2$ acres).

23.     None of the parties in this case contend that that the John Brown Warrant contained more than 407 to 432 acres.

24.     The Meyer and Whitaker deeds are internally ambiguous because their stated acreage calls are significantly less than the acreage yielded by the plotting of their metes and bounds descriptions.

## II. Subsequent Chain for J. F. Meyer Deed (the "Meyer Deed Property")

25.     On May 13, 1871, John F. Meyer and his wife Mary M. Meyer conveyed the surface and subsurface of the Meyer Deed Property to Thomas E. Proctor in a deed recorded in Lycoming County Deed Book 64, page 413 (the "Proctor Deed").

26.     The Proctor Deed provides the following description of the tract it conveyed:

> [A]ll that certain piece parcel or tract of land situate lying and being in the Township of Cascade in the County of Lycoming and state of Pennsylvania bounded and described as follows, to wit, Beginning at a Beech original north East corner of tract in the warrantee name of John Brown. Thence south one hundred and ninety perches to Beech original south East corner of said tract.  Thence west one hundred and seventy three and one half perches to a post thence north one hundred and ninety perches to post Thence east one hundred and seventy three and one half perches to Beech the place of

*Beginning containing one hundred acres and allowance of six percent be the same more or less.*

27.     On October 2, 1894, Thomas E. Proctor subsequently conveyed title to the surface of the Meyer Deed Property, among other properties, to Elk Tanning Company in a Warranty Deed recorded at Lycoming County Deed Book 144, Page 398 (the "Elk Tanning Deed").

28.     The Elk Tanning Deed provides, as material here, the following description of one of the tracts it conveyed:

*All that certain piece, parcel or tract of land situate, lying and being in the Township of Cascade in the County of Lycoming and State of Pennsylvania bound and described as follows, to wit: Beginning at a Beech original north East corner of tract in the warrantee name of John Brown: thence south one hundred and ninety perches to Beech original south east corner of said tract:  thence west one hundred and seventy three and one half perches to a post: thence north one hundred and ninety perches to post: thence east one hundred and seventy three and one half perches to Beech the place of beginning containing one hundred acres and allowance of six percent be the same more or less.*

29.     The Elk Tanning Deed excepted and reserved to Thomas E. Proctor, his heirs and assigns "all the natural gas, coal, coal-oil, petroleum, marble and all minerals of every kind and character...."

30.     On May 25, 1903, Elk Tanning Company subsequently conveyed title to the Meyer Deed Property, among other properties, to Central Pennsylvania Lumber Company ("CPLC") in a Warranty Deed recorded at Lycoming County Deed Book 183, Page 328 (the "CPLC Deed").

31.     The CPLC Deed provides, as material here, the following legal description of one of the tracts it conveyed:  "John Brown 100 acres."

32.     By deed dated December 14, 1904, CPLC conveyed 112.25 acres, described by an updated property description of the Meyer Deed Property, to M. T. Milnor (DR 227/399).

33.     By several deeds, dated between March 25, 1920 through April 7, 1987, 111 acres constituting the Meyer Deed Property of the John Brown Warrant ultimately was acquired by the Dwight Lewis Lumber Company.

III.   **Subsequent Chain for Whitaker Deed**

34.     By Deed dated October 9, 1857, Conrad M. Whitaker and Emma S. Whitaker, husband and wife, conveyed 212 acres (the "Whitaker Deed Property") to Thomas Martin (DR 38/653).

35.     By Deed dated September 21, 1869, Thomas Martin conveyed the Whitaker Deed Property, described as 212 acres, to Michael Kelly (DR 59/590).

36.     By a series of deeds dated from April 26, 1877 to September 15, 1894, the Whitaker Deed Property, described as a 231 acres, was acquired by the Thomas Foundation.

37.     By Deed dated April 12, 1921, Frank P. Cummings, Guardian of the Estate of the Thomas Foundation, conveyed the Whitaker Deed Property,

described as 231 acres, to Edgar H. Morley, reserving all minerals, but not oil and gas (DR 242/111).

38.     By Deed dated December 9, 1921, Edward H. Morley and Margueretta May Morley, husband and wife, conveyed the Whitaker Deed Property, described as 231 acres to Louisa R. Morley (DR 244/334).

39.     By Deed dated November 9, 1936, Louise Morley Evans conveyed the Whitaker Deed Property, described as 231 acres to Wallis Run Hunting Club, Inc. (DR 299/30).

IV.   **Current Ownership & Leases**

40.     The Thomas E. Proctor Heirs Trust and the Margaret O.F. Proctor Trust have succeeded to Thomas E. Proctor's interest, as reserved in the Elk Tanning Deed.

41.     The Wallis Run Defendants have acquired the property described in the Whitaker Deed and F.W. Meier Deed.

42.     The Wallis Run Hunting Club, Inc. executed the following oil and gas leases: Lease dated August 10, 1982 in favor of Delta Drilling Company (DR 1019/229), Lease dated May 22, 1987 in favor of Douglas Exploration, Inc. (DR 1208/92), and Lease dated July 29, 2002 in favor of Phillips Production Company (DR 4427/30).

43.     Anadarko and its successor, Alta Marcellus Development, LLC, have succeeded to the oil and gas rights in the property conveyed by the Whitaker and Meier deeds, and have an interest in the Disputed Property, which is the eastern portion of the John Brown Warrant, pursuant to the aforesaid oil and gas leases with Wallis Run.

44.     Anadarko has begun drilling activities and produced natural gas on the Disputed Property.

45.     Since the time of conveyance of the 1857 deeds dividing the entirety of the John Brown Warrant, all successors in title have treated the Disputed Property as being a 100 acre parcel more or less.

46.     Since since the time of conveyance of the 1857 deeds dividing the John Brown Warrant, all successors in title have treated the middle portion as being a 212 acre parcel more or less.

47.     Since the time of conveyance of the 1857 deeds dividing the John Brown Warrant, all successors in title have treated the western portion as being a 107 acre parcel more or less.

**J.     Estimated Number of Trial Days**

Two days (absent authenticity challenges).

**K.      Any Other Matter Pertinent to the Case to be Tried**

Defendants Anadarko and Alta Marcellus Development, LLC believe there

may be merit in bifurcating the issues of ownership/liability and damages.

Additionally, Defendants Anadarko and Alta Marcellus Development, LLC

would support an effort to mediate this case prior to trial if there is agreement by

the other parties to do so.

**L.      Exhibit Listing**

See attached Exhibit List.

**M.      Any Special Verdict Questions**

1.  Do you find that McCawley, in 1857, intended to convey, via the Meyer
    Deed,

    a)  the numerical stated acreage of 100 acres, or

    b)  the described property that, when plotted, describes a tract containing
        206 acres?

    Answer: _____

**N.      Defense Counsel's Statement re Person or Committee with Settlement
         Authority has been Notified of the Requirements of and Possible
         Sanctions under Local Rule 16.2**

Counsel for Anadarko and Alta Marcellus Development, LLC hereby

certifies that the individual(s) with settlement authority have been notified of the

requirements and possible sanctions under Local Rule 16.2 and are prepared to

participate meaningfully in any settlement negotiations that may occur.

**O.     Certificate that counsel has met and reviewed depositions and videotapes in an effort to eliminate irrelevancies, side comments, resolved objections, and other matters not necessary for consideration of the trier of fact**

Not applicable.

**P.     Non Jury Trials – request for findings of both fact and law**

## FINDINGS OF FACT

### I.   Chain of Title of John Brown Warrant

1.     The property at issue in this case (the "Disputed Property") is subsurface property which was part of the John Brown Warrant, located in Cascade Township, Lycoming County, and is part of present day Tax Parcel No. 06-212-101.

2.     Plaintiffs contend that the Disputed Property contains 206 acres, and Defendants contend that the Disputed Property contains 100 acres.

3.     The original patent for the John Brown Warrant described the warrant as containing 407 3/4 called acres, which is the same amount of called acreage as each of the other warrants contiguous to the John Brown Warrant.

4.     In a 1792 survey, the John Brown Warrant is depicted as a rectangle whose eastern and western boundaries run north and south for a distance of 186 perches each, and whose northern and southern boundaries run east and west for a distance of 372 perches each.

5.     The metes and bounds description of the John Brown Warrant, when plotted describe a tract containing 432.45 acres.

6.     By deed dated December 20, 1855, John McCawley acquired the entire John Brown Warrant, which is described by adjoinders with a stated acreage of 407 acres and 20 perches (DR 37/437).

7.     In 1857, the John Brown Warrant was subdivided through the execution of three separate deeds.

8.     The result was that the entirety of the John Brown Warrant was subdivided into three parts:  an eastern portion, middle portion and western portion.

10.     The Plaintiff asserts ownership interest in the eastern portion, and Defendant Wallis Run asserts ownership interest based on the conveyance of the middle and western portions.

11.     Defendant Anadarko asserts an interest in the middle and western portions pursuant to the oil and gas lease agreement between Wallis Run and Anadarko.

12.     On March 30, 1857, John McCawley and his wife Elizabeth conveyed the surface and subsurface estate of the Disputed Property to John Meyer in a deed recorded on May 15, 1857 in Lycoming County Deed Book 38, page 295 (the "Meyer Deed").

13.     The Meyer Deed (or eastern portion of the John Brown Warrant)

included the following description of the property it conveyed, the Disputed

Property at issue here:

> *All that certain tract or messuage of land containing one hundred acres and allowance of six per cent for roads &c Situate in Cascade Township Lycoming County Penna bounded and described as follows Beginning at a Beech original north East corner of tract in the warrantee name of John Brown then South one hundred and ninety to Beech original South East corner of said tract then west one hundred and seventy three and one half perches to a post then north one hundred and ninety to a post, then east one hundred and seventy three and one half perches to the Beech the place of Beginning.*

15.     The Meyer Deed contained a numerical acreage call of 100 acres.

The metes and bounds description in the Meyer Deed describes a tract containing

206 acres when plotted.

16.     On March 30, 1857, John McCawley conveyed a part of the John

Brown Warrant to Conrad Whitaker in a deed recorded on May 20, 1857 in

Lycoming County Deed Book 38, page 301 (the "Whitaker Deed").

17.     The Whitaker Deed (or middle portion of the John Brown Warrant)

provides the following description of the tract it conveyed:

> *All that certain messuage tenement or tract of unseated land Situate in Cascade Township Lycoming County Pennsylvania and bounded and described as follows. Beginning at a post thence West three hundred and forty seven perches to a post; thence North along other land of said John McCawley one hundred and ninety perches to a post; thence East along South line of Warrantee Alexander Wilcox three hundred and forty seven*

*perches to a post; thence South along land of _____ one hundred and ninety perches to a post the place of Beginning containing two hundred and twelve acres Strict Measure the Same being a Middle Portion of tract surveyed in the Warrantee name of John Brown….*

48.     The Whitaker Deed contains a numerical acreage call of 212 acres.

The metes and bounds description within the Whitaker Deed, when plotted,

describes a tract containing 412 acres.

49.     On October 1, 1857, John McCawley conveyed a part of the John

Brown Warrant to F.W. Meier in a deed recorded on January 22, 1858 in

Lycoming County Deed Book 38, page 776 (the "Meier Deed").

50.     The Meier Deed (or western portion of the John Brown Warrant)

provides the following legal description of the tract it conveyed:

*All that certain messuage or tract of unseated land Situate in the Township of Cascade in the County of Lycoming and State of Penna aforesaid bounded and described as follows: Beginning at a Hemlock original corner of tract John Brown and John Barry; thence North one hundred and eighty six perches to a Linn Stump an original corner of tracts John Brown and Alexander Wilcox; thence East along a line of last named tract ninety seven and a half perches to a post corner of land lately conveyed by said John McCawley and wife to Conrad M. Whitaker; thence South by lands now or late of said Whitaker one hundred and eighty six perches to a post ; thence West ninety seven and a half perches to Hemlock the place of Beginning containing one hundred and seven and a half acres (more or less) and allowance of six percent for roads &c the said lot hereby conveyed being taken off of the West End of said tract warranted in the name of John Brown and conveyed to the said McCawley and his wife by Edward R. Mayer and his wife.*

51.     The Meier Deed contains a numerical acreage call of 107.5 acres.  The metes and bounds description within the Meier deed, when plotted, describes a tract containing 113 acres.

52.     Collectively, the metes and bounds descriptions from the Meyer, Whitaker and Meier Deeds, when plotted, purport to convey a total of 731 acres. However, the John Brown Warrant was surveyed in 1792 and found to contain 407 acres, and the John Brown Warrant description, when plotted, describes a tract containing 432 acres.

53.     The total numerical stated acreage in the Meyer, Whitaker, and Meier Deed, added together, is 419.5 acres (eastern portion = 100 acres, the middle portion = 212 acres, and the western portion = 107 $^1\!/_2$ acres).

54.     None of the parties in this case contend that that the John Brown Warrant contained more than 407 to 432 acres.

55.     The Meyer and Whitaker deeds are internally ambiguous because their stated acreage calls are significantly less than the acreage yielded by the plotting of their metes and bounds descriptions.

## II. Subsequent Chain for J. F. Meyer Deed (the "Meyer Deed Property")

56.     On May 13, 1871, John F. Meyer and his wife Mary M. Meyer conveyed the surface and subsurface of the Meyer Deed Property to Thomas E.

Proctor in a deed recorded in Lycoming County Deed Book 64, page 413 (the "Proctor Deed").

57.     The Proctor Deed provides the following description of the tract it conveyed:

> [A]ll that certain piece parcel or tract of land situate lying and being in the Township of Cascade in the County of Lycoming and state of Pennsylvania bounded and described as follows, to wit, Beginning at a Beech original north East corner of tract in the warrantee name of John Brown. Thence south one hundred and ninety perches to Beech original south East corner of said tract.  Thence west one hundred and seventy three and one half perches to a post thence north one hundred and ninety perches to post Thence east one hundred and seventy three and one half perches to Beech the place of Beginning containing one hundred acres and allowance of six percent be the same more or less.

58.     On October 2, 1894, Thomas E. Proctor subsequently conveyed title to the surface of the Meyer Deed Property, among other properties, to Elk Tanning Company in a Warranty Deed recorded at Lycoming County Deed Book 144, Page 398 (the "Elk Tanning Deed").

59.     The Elk Tanning Deed provides, as material here, the following description of one of the tracts it conveyed:

> All that certain piece, parcel or tract of land situate, lying and being in the Township of Cascade in the County of Lycoming and State of Pennsylvania bound and described as follows, to wit: Beginning at a Beech original north East corner of tract in the warrantee name of John Brown: thence south one hundred and ninety perches to Beech original south east corner of said tract:  thence west one hundred and seventy three and one half perches to a post: thence north one hundred and ninety perches to post: thence east one

24

*hundred and seventy three and one half perches to Beech the place of beginning containing one hundred acres and allowance of six percent be the same more or less.*

60.    The Elk Tanning Deed excepted and reserved to Thomas E. Proctor, his heirs and assigns "all the natural gas, coal, coal-oil, petroleum, marble and all minerals of every kind and character...."

61.    On May 25, 1903, Elk Tanning Company subsequently conveyed title to the Meyer Deed Property, among other properties, to Central Pennsylvania Lumber Company ("CPLC") in a Warranty Deed recorded at Lycoming County Deed Book 183, Page 328 (the "CPLC Deed").

62.    The CPLC Deed provides, as material here, the following legal description of one of the tracts it conveyed:  "John Brown 100 acres."

63.    By deed dated December 14, 1904, CPLC conveyed 112.25 acres, described by an updated property description of the Meyer Deed Property, to M. T. Milnor (DR 227/399).

64.    By several deeds, dated between March 25, 1920 through April 7, 1987, 111 acres constituting the Meyer Deed Property of the John Brown Warrant ultimately was acquired by the Dwight Lewis Lumber Company.

### III.   Subsequent Chain for Whitaker Deed

65.   By Deed dated October 9, 1857, Conrad M. Whitaker and Emma S. Whitaker, husband and wife, conveyed 212 acres (the "Whitaker Deed Property") to Thomas Martin (DR 38/653).

66.   By Deed dated September 21, 1869, Thomas Martin conveyed the Whitaker Deed Property, described as 212 acres, to Michael Kelly (DR 59/590).

67.   By a series of deeds dated from April 26, 1877 to September 15, 1894, the Whitaker Deed Property, described as a 231 acres, was acquired by the Thomas Foundation.

68.   By Deed dated April 12, 1921, Frank P. Cummings, Guardian of the Estate of the Thomas Foundation, conveyed the Whitaker Deed Property, described as 231 acres, to Edgar H. Morley, reserving all minerals, but not oil and gas (DR 242/111).

69.   By Deed dated December 9, 1921, Edward H. Morley and Margueretta May Morley, husband and wife, conveyed the Whitaker Deed Property, described as 231 acres to Louisa R. Morley (DR 244/334).

70.   By Deed dated November 9, 1936, Louise Morley Evans conveyed the Whitaker Deed Property, described as 231 acres to Wallis Run Hunting Club, Inc. (DR 299/30).

## IV.    **Current Ownership & Leases**

71.     The Thomas E. Proctor Heirs Trust and the Margaret O.F. Proctor Trust have succeeded to Thomas E. Proctor's interest, as reserved in the Elk Tanning Deed.

72.     The Wallis Run Defendants have acquired the property described in the Whitaker Deed and F.W. Meier Deed.

73.     The Wallis Run Hunting Club, Inc. executed the following oil and gas leases: Lease dated August 10, 1982 in favor of Delta Drilling Company (DR 1019/229), Lease dated May 22, 1987 in favor of Douglas Exploration, Inc. (DR 1208/92), and Lease dated July 29, 2002 in favor of Phillips Production Company (DR 4427/30).

74.     Anadarko and its successor, Alta Marcellus Development, LLC, have succeeded to the oil and gas rights in the property conveyed by the Whitaker and Meier deeds, and have an interest in the Disputed Property, which is the eastern portion of the John Brown Warrant, pursuant to the aforesaid oil and gas leases with Wallis Run.

75.     Anadarko has begun drilling activities and produced natural gas on the Disputed Property.

76.     The Court finds that since the time of conveyance of the 1857 deeds dividing the entirety of the John Brown Warrant, all successors in title have treated the Disputed Property as being a 100 acre parcel more or less.

77.     The Court finds that since the time of conveyance of the 1857 deeds dividing the John Brown Warrant, all successors in title have treated the middle portion as being a 212 acre parcel more or less.

78.     The Court finds that since the time of conveyance of the 1857 deeds dividing the John Brown Warrant, all successors in title have treated the western portion as being a 107 acre parcel more or less.

## CONCLUSIONS OF LAW

1.     The Court concludes that the John F. Meyer Deed is internally ambiguous because the deed states that it conveys 100 acres of land, but the deed contains a metes and bounds description that plots to 206 acres.

2.     The Court concludes that since the internally ambiguous John F. Meyer Deed was one of three deeds through which John McCawley conveyed the entire John Brown Warrant in the 1857, the John F. Meyer Deed must be evaluated in the context of the Whitaker Deed and F. W. Meier Deed in order to evaluate the parties' intent based on the circumstances in which the instrument was drafted.

3.      The Court concludes that there was a mistake in the metes and bounds description of the John F. Meyer Deed and that the parties to the John F. Meyer Deed intended for the instrument to convey a tract of land consisting of 100 acres.

4.      The Court concludes that Plaintiffs' predecessors in title did not own 206 acres in the John Brown Warrant and the Plaintiffs' ownership of oil and gas does not cross into Tax Parcel No. 06-212-101.

5.      The Court concludes that Plaintiffs do <u>not</u> have legally or equitably enforceable rights to the oil and gas rights in and under the Disputed Property.

6.      The Court concludes that the oil and gas interest that the Plaintiffs may own is confined to Tax Parcel 06-212-100, which is shown adjacent to the property at issue on the modern Lycoming County Tax Map at <u>Exhibit A</u>.

Respectfully submitted,

McQUAIDE BLASKO, INC.

Date: May 1, 2019                   By:  <u>s/John A. Snyder</u>
                                         John A. Snyder, Esquire
                                         I.D. No. 66295
                                         <u>jasnyder@mqblaw.com</u>
                                         Suzette V. Sims, Esquire
                                         I.D. No. 210355
                                         <u>svsims@mqblaw.com</u>
                                         811 University Drive
                                         State College, PA 16804

                                         Attorneys for Defendant
                                         Anadarko E&P Onshore LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES RICE KENDALL and          :
ANN P. HOCHBERG, as Trustees for   :
The Thomas E. Proctor Heirs Trust,  :     Civil Action No. 3:16-cv-01182-MEM
and BANK OF AMERICA, N.A., and     :
JOHN J. SLOCUM, JR., as Trustees    :
for The Margaret O.F. Proctor Trust, :
                                    :     Judge Malachy E. Mannion
          Plaintiffs,               :
                                    :
     vs.                            :     Complaint filed:  06/17/16
                                    :
ANADARKO E&P ONSHORE LLC,           :
WALLIS RUN HUNTING CLUB,            :
INC., and WALLIS RUN GAS and        :     *Electronically Filed*
OIL, INC.,                          :
                                    :
          Defendants.               :

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Anadarko E&P Onshore LLC's Pretrial Memorandum in the above-captioned matter was served this 1st day of May, 2019, to the attorneys/parties of record via ECF as follows:

Laura A. Lange, Esquire
Paul K. Stockman, Esquire
McGuire Woods LLP
625 Liberty Avenue, 23rd Floor
EQT Plaza
Pittsburgh, PA  15222
(412) 667-7941
llange@mcguirewoods.com
pstockman@mcguirewoods.com
(For Plaintiffs)

Thomas C. Marshall, Esquire
Thomas E. Robins, Esquire
Daryl A. Yount, Esquire
McNerney, Page, Vanderlin & Hall
433 Market Street
P.O. Box 7
Williamsport, PA  17703
(570) 326-6555
tmarshall@mpvhlaw.com
trobins@mpvhlaw.com
dyount@mpvhlaw.com
(For Defs. Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc.)

McQUAIDE BLASKO, INC.


By:  s/John A. Snyder
     John A. Snyder, Esquire
     I.D. No. 66295
     jasnyder@mqblaw.com
     Suzette v. Sims, Esquire
     I.D. No. 210355
     svsims@mqblaw.com
     811 University Drive
     State College, PA 16801
     Phone:  (814) 238-4926
     Fax: (814) 234-5620

     Attorneys for Defendant
     Anadarko E&P Onshore LLC