TUCKER ARENSBERG
Attorneys

October 26, 2010

Anadarko Petroleum Corporation
Attn: Deborah Hubbs
1201 Lake Robbins Drive
The Woodlands, TX 77380

**Re: UNIT:** **WALLIS RUN HC WELL**

**TAX PARCEL NUMBERS:** **06-212-101 (331.0 acres)**

**CURRENT RECORD OWNER(S):** **WALLIS RUN HUNTING CLUB**

**SUBJECT LAND:** 331.0 acres, more or less, lying in the Township of Cascade, Lycoming County, Pennsylvania, and being the same land conveyed: (i) 100 acres of land by deed dated June 27, 1939, from Thomas Augustus Updegraff, widower, Valeria U. Luce, a widow, Margaret Shorkley, a single woman, LeRoy Byam and Rhea Melhuish Byam, husband and wife, and Harry M. Shorkley and Belle K. Shorkley, husband and wife, and recorded on November 28, 1945 in Deed Book 337, Page 186 in the Office of the Register and Recorder of Deeds of Lycoming County, Pennsylvania, and (ii) 231 acres of land by deed dated November 9, 1936, from Louise Morley Evans, and recorded on February 19, 1937 in Deed Book 299, Page 30 in the Office of the Register and Recorder of Deeds of Lycoming County, Pennsylvania. **NOTE:** Wallis Run Hunting Club, Inc. conveyed the 100 acre portion of the Subject Land, being the same land conveyed by (i) above, to itself by the deed dated February 13, 1999 (DR 3232/229).

## ORIGINAL TITLE OPINION

Dear Ms. Hubbs:

Pursuant to your request, title has been examined to the above referenced land, hereinafter referred to as the "Subject Land." The following is our "Opinion" as to title to the Subject Land, organized as follows:

I. Materials Examined

II. Ownership

1. *Surface Estate*

2. *Oil & Gas Estate*
3. *Leasehold Royalty*
4. *Non-participating Royalty*
5. *Overriding Royalty*
6. *Oil and Gas Leasehold/Net Revenue Interest*
7. *Un-leased Interest*

III. Encumbrances on Title

1. *Unreleased Liens and Mortgages*
2. *Easements and Rights-of-Way and Restrictions*
3. *Unreleased Prior Oil and Gas Leases*
4. *Taxes*
5. *Other Encumbrances*
6. *Operating Agreements and/or Unitization Agreements*
7. *Natural Gas Purchase Agreements*
8. *Farmout Agreements*

IV. Analysis of Current Oil and Gas Leases, Assignments and Related Instruments

V. History of Title

VI. Comments and Requirements

VI. Limitations

Recording references to volume and page numbers in this Opinion are to various indices in the public records of Lycoming County, Pennsylvania, and unless otherwise indicated, to the Deed Records (DR), Civil Court Records (CV) or Will Records (WR) of said county. Where file numbers and film code numbers are used without designation, the references are to the Deed Records of said county.

******************

## I. MATERIALS EXAMINED

Our examination was limited to the following:

1. Copies of instruments provided in an abstract prepared by Petro-Land Group, Inc., covering Subject Land from July 1, 1796 to June 22, 2010.

2. As noted above, the materials furnished to us contain only instruments of record pertaining to the Subject Land from July 1, 1796 to June 22, 2010. This opinion does not purport to characterize the validity or effect of any document of record prior to July 1, 1796 or after June 22, 2010.

3. Copies of instruments related to the Subject Land provided by Anadarko Petroleum Corporation.

4. All of the above are collectively referred to herein as the "Materials Examined".

*******************

## II.
## OWNERSHIP

Our review of the Materials Examined reflects that as of the Closing Date, record title to the Subject Land, subject to the Comments and Requirements set forth herein, is vested as follows:

1. **SURFACE ESTATE:**

| | |
|---|---|
| Wallis Run Hunting Club<br>c/o David M. Fox<br>22 Stanley Lane<br>Williamsport, PA 17702 | 100.000% |
| Tax Parcel I.D. 06-212-101 | Assessed as 331.0 acres |

See Comments and Requirements Nos. 1, 2, 3, 4, 5 and 6.

2. **OIL & GAS ESTATE**

**Executive (Leasing) Rights, Bonuses, Delay Rentals and Royalties:**

| | |
|---|---|
| Wallis Run Hunting Club | 100.000% |

3. **LEASEHOLD ROYALTY**

| | |
|---|---|
| Wallis Run Hunting Club, Inc. | 12.500% |

4. **NON-PARTICIPATING ROYALTY**

None of record.

5. **OVERRIDING ROYALTIES**

None of record.

6. **OIL AND GAS LEASEHOLD/NET REVENUE INTEREST**

| | |
|---|---|
| Chesapeake Appalachia, L.L.C. | 29.53125% |
| Statoilhydro USA Onshore Properties, Inc. | 28.43750% |
| Anadarko E&P Company LP | 29.53125% |

See Comment and Requirement No. 7.

7. **UN-LEASED INTEREST**

None of record.

*******************

## III.
## ENCUMBRANCES ON TITLE

Our review of the Materials Examined revealed the following encumbrances:

1. **UNRELEASED LIENS AND MORTGAGES**

None of record.

2. **EASEMENTS AND RIGHTS-OF-WAY AND RESTRICTIONS**

None of record.

See Comment and Requirement No. 8.

**3. UNRELEASED PRIOR OIL AND GAS LEASES**

The Materials Examined reveals the existence of several unreleased prior oil and gas leases listed below.

A.

| | |
|---|---|
| Instrument: | **Oil and Gas Lease** |
| Date: | August 10, 1982 |
| Filed: | September 16, 1982 |
| Recorded: | Deed Book 1019, Page 229 |
| Lessor: | Wallis Run Hunting Club, Inc. |
| Lessee: | Delta Drilling Company |
| Covering: | 440 acres (Subject Land and other lands) |
| Primary Term: | 5 years |

See Comment and Requirement No. 9.

B.

| | |
|---|---|
| Instrument: | **Oil and Gas Lease** |
| Date: | May 22, 1987 |
| Filed: | September 24, 1987 |
| Recorded: | Deed Book 1208, Page 92 |
| Lessor: | Wallis Run Hunting Club, Inc. |
| Lessee: | Douglas Exploration, Inc. |
| Covering: | 441 acres (Subject Land and other lands) |
| Primary Term: | 10 years |
| Assignment: | Assignment of Oil and Gas Leases from Douglas Exploration, Inc. to Phillips Production Company, dated October 19, 1987, and recorded December 15, 1988 in Deed Book 1359, Page 14, assigns all of Assignor's right, title and interest in, to and under the above lease. |

See Comment and Requirement No. 9.

C.

| | |
|---|---|
| Instrument: | **Oil and Gas Lease** |
| Date: | July 29, 2002 |
| Filed: | January 7, 2003 |
| Recorded: | Deed Book 4427, Page 30 |
| Lessor: | Wallis Run Hunting Club |
| Lessee: | Phillips Production Company |
| Covering: | 456 acres (Subject Land and other lands) |
| Primary Term: | 5 years |
| Assignment: | Assignment of Oil and Gas Leases from Phillips Production Company to East Resources, Inc., dated March 23, 2006, and recorded May 5, 2006 in Deed Book 5649, Page 68, assigns of all of Assignor's right, title and interest in, to and under the above lease. |
| Memorandum of Agreement: | Memorandum of Agreement dated June 2, 2006, and recorded August 13, 2007 in Deed Book 6102, Page 253, states that Ultra Resources, Inc. and East Resources, Inc. entered into an unrecorded Exploration and Area of Mutual Interest Agreement, embracing the 127.0 acres of the above oil and gas lease, being Tax Parcel 06-192-102. **NOTE:** Although the above lease is included in the Agreement, the Subject Land, being Tax Parcel 06-212-101, is not included. |
| Stipulation and Cross-Assignment: | Stipulation and Cross-Assignment of Oil and Gas Leases between Ultra Resources, Inc. and East Resources, Inc., dated June 2, 2006, and recorded November 5, 2007 in Deed Book 6180, Page 134, assigns and stipulates that each party thereto conveys and retains an undivided 50% working interest in and to 127.0 acres of the above lease, being Tax Parcel 06-192-102. |

**NOTE:** Although the above lease is included in the Agreement, the Subject Land, being Tax Parcel 06-212-101, is not included.

See Comment and Requirement No. 10.

**4. TAXES**

The Materials Examined includes a Tax Statement on the Subject Land dated June 25, 2010 for 2009 and prior years from the Lycoming County Tax Claim Bureau. This Tax Statement shows $0.00 taxes owed to Lycoming County. The Tax Statement provides tax information related to delinquent taxes only and not current permitted assessed taxes such as Local Tax, County Tax and School District Tax, nor other permitted water, sewer or municipal liens. You should submit for review certificates showing payment of all real estate taxes and all water and sewer and municipal liens assessed against the Subject Land.

See Comment and Requirement No. 11.

**5. OTHER ENCUMBRANCES**

| | | |
|---|---|---|
| A. | Instrument: | **Deed** |
| | Date: | July 18, 1907 |
| | Filed: | July 19, 1907 |
| | Recorded: | Deed Book 200, Page 587 |
| | Grantor: | John King |
| | Grantee: | George B. King |
| | Purpose: | States that conveyance therein is subject to the express assumption of payment by the said George B. King of a certain judgment No. 257 march Term 1907, held by Margaret R. Baker against John King, to secure the payment of $220, with interest thereon from July 13, 1907, and record costs. |

See Comment and Requirement No. 12.

| | | |
|---|---|---|
| B. | Instrument: | **Tax Map (District No. 06, 48, Tax Map No. 212)** |
| | Purpose: | Depicts the Subject Land and Chapman Road/T-882 and Wallis Run East Branch (stream) traversing the Subject Land. |

See Comments and Requirements Nos. 13 and 14.

**6. <u>OPERATING AGREEMENTS AND/OR UNITIZATION AGREEMENTS</u>**

None of record.

**7. NATURAL GAS PURCHASE AGREEMENTS**

None of record.

**8. FARMOUT AGREEMENTS**

None of record.

*******************

## IV.
## ANALYSIS OF CURRENT OIL AND GAS LEASES, ASSIGNMENTS AND RELATED INSTRUMENTS

**1. CURRENT OIL AND GAS LEASE**

| | | |
|---|---|---|
| A. | Instrument: | **Paid-Up Oil and Gas Lease** |
| | Dated: | August 7, 2007 |
| | Filed: | September 10, 2007 |
| | Recorded: | Deed Book 6128, Page 336 |
| | Lessor: | Wallis Run Hunting Club, Inc. |
| | Lessee: | Chesapeake Appalachia, L.L.C. |

| | |
|---|---|
| Description: | Tract 1 - 331.0 acres; Parcel 06-212-101 (Subject Land) Tract 2 - 129.32 acres; Parcel 06-192-102 |
| Interest Covered: | Oil and gas interest |
| Primary Term: | 5 years |
| Royalty: | 12.5% |
| Delay Rentals: | $5.00 per net acre per year (Paid-Up) |
| Shut-In Royalty: | $5.00 per net acre per year |
| Pooling: | Yes, no maximum acreage given. |

See Comment and Requirement No. 15.

**2. ASSIGNMENTS AND RELATED INSTRUMENTS**

| | | |
|---|---|---|
| A. | Instrument: | **Assignment and Conveyance** |
| | Date: | Not dated, but acknowledged November 17, 2008 and November 22, 2008, effective November 24, 2008 |
| | Filed: | January 15, 2009 |
| | Recorded: | Deed Book 6541, Page 278 |
| | Assignor: | Chesapeake Appalachia, L.L.C. |
| | Assignee: | Statoilhydro USA Onshore Properties Inc. |
| | Interest Assigned: | Undivided 32.5% interest of all of Assignor's right, title and interest in and to the current Oil and Gas Lease. |
| | Comment: | States that assignment is subject to an unrecorded Asset Purchase Agreement dated November 10, 2008. We were not provided a copy of the Asset Purchase Agreement as it is not of record. |
| B. | Instrument: | **Memorandum of Development Agreement** |
| | Date: | Not dated, but acknowledged November 20, 2008 and November 24, 2008, effective November 24, 2008 |

| | | |
|---|---|---|
| | Filed: | January 15, 2009 |
| | Recorded: | Deed Book 6541, Page 208 |
| | Party: | Chesapeake Appalachia, L.L.C. |
| | Party: | Statoilhydro USA Onshore Properties Inc. |
| | Purpose: | States that the parties entered into a Development Agreement dated November 24, 2008 that provides for the exploration, development and production of oil, gas and other hydrocarbons from the Joint Interests as described therein, including the current Oil and Gas Lease. |
| | Comment: | We were not provided a copy of the Development Agreement dated November 24, 2008 as it is not of record. |
| C. | Instrument: | **Partial Assignment of Oil and Gas Leases** |
| | Date: | December 16, 2008 |
| | Filed: | January 13, 2009 |
| | Recorded: | Deed Book 6539, Page 214 |
| | Assignor: | Chesapeake Appalachia, L.L.C. |
| | Assignee: | Anadarko E&P Company LP |
| | Interest Assigned: | Undivided 50% of Assignor's right, title and interest in and to the current Oil and Gas Lease. |
| | Comment: | States that assignment is subject to a Joint Exploration Agreement dated September 1, 2006 between Assignor and Assignee. We were not provided a copy of the Joint Exploration Agreement as it is not of record. |

See Comment and Requirement No. 7.

******************

## V.
## HISTORY OF TITLE

***Chain 1 - The 100 acres Tract***

1. By Deed dated July 31, 1854, John H. Rothrock, Treasurer, conveyed 407 acres and 120 perches to George W. Lentz (DR 37/257).

2. By Deed dated June 2, 1855, Ann M. Peters, Executrix of the Estate of the late Ralph Peters, Jr. and heir of Ralph Peters, deceased, and of Sarah R. Peters, deceased, conveyed all her right, title and interest in and to a tract of land known as the Peters Farm to Edward R. Mayer (DR 37/236).

   See Comment and Requirement No. 2.

3. By Deed dated June 23, 1855, Edward Peters, Sarah H. Dana and W. G. Peters, heirs of Ralph Peters, deceased, and of Sarah R. Peters, deceased, conveyed several tracts of land in Lycoming County to Edward R. Mayer (DR 37/232).

   See Comment and Requirement No. 2.

4. By Deed dated July 10, 1855, Richard Peters, heir of Ralph Peters, deceased, and of Sarah R. Peters, deceased, and Mary I. Peters, husband and wife, conveyed several tracts of land in Lycoming County to Edward R. Mayer (DR 37/233).

   See Comment and Requirement No. 2.

5. By Deed dated December 20, 1855, Edward R. Mayer and Ellen M. Mayer, husband and wife, conveyed 407 acres and 120 perches to John McCawley (DR 37/437).

6. By Deed dated October 1, 1857, John McCawley and Elizabeth McCawley, husband and wife, conveyed 107 and one-half (½) acres to F. W. Meier (DR 38/776).

7. By Deed dated December 20, 1858, Francis Peters, trustee and guardian of M.B. Peters, and Francis Peters and M. L. M. Peters, husband and wife, conveyed all their right, title and interest in and to several tracts of land to Edward R. Mayer (DR 41/102).

8. By Deed dated June 12, 1871, Frederick W. Meier and Charlotte Meier, husband and wife, conveyed 107 and one-half (½) acres to John F. Meyer (DR 64/498).

9. John F. Meyer died testate on an unspecified date (WR 4/267), devising 105 acres, more or less, to Mary Margaret Meyer, his wife.

    **NOTE:** The preceding deed in the chain of title, recorded at DR 64/498 and described at Item 8, above, states that John F. Meyer was conveyed 107 and one-half (½) acres, but he devised 105 acres to Mary Margaret Meyer. There is nothing in the Materials Examined to account for the discrepancy in acreage.

10. By Deed dated August 22, 1879, Mary Margaret Meyer conveyed 107 and one-half (1/2) acres to Peter O'Connor (DR 87/67).

11. By Deed dated September 1, 1888, Peter O'Connor and Mary O'Connor, husband and wife, conveyed 113 acres and 55 perches to James Cox (DR 141/73).

    **NOTE:** The above deed states that 113 acres and 55 perches were conveyed therein, but the preceding deed in the chain of title, described at Item 10, above, states that 107 and one-half (1/2) acres were conveyed therein. There is nothing in the Materials Examined to account for the discrepancy in acreage.

12. By Deed dated April 30, 1894, James Cox conveyed 113 acres and 55 perches to John King (DR 140/476).

13. By Deed dated July 18, 1907, John King conveyed 113 acres and 55 perches to George B. King (DR 200/587).

14. By Deed dated June 11, 1928, Mrs. Mary J. Hill, Treasurer, conveyed 100 acres, purporting to be owned by and assessed in the name of George King, to C. L. Peaslee (*sic*) (DR 281/43).

15. By Deed dated December 8, 1930, Clarence L. Peaslee and Helen Elizabeth Wilson Peaslee, husband and wife, quit-claimed 100 acres to Laura R. Updegraff, single (DR 281/44).

16. Laura Rebecca Updegraff died testate (WR 24/389), devising all the rest, residue and remainder of her real and personal property, of which her interest in the Subject Land was a part, to her siblings Thomas Augustus Updegraff, Mary E. Melhuish, Valeria Luse, Susan Shorkley and Almira Coney.

    **NOTE**: The deed set forth in Item 19 below states that Laura Rebecca Updegraff died on April 21, 1936, and that Almira Coney (a/k/a Ella Updegraff Coney) died December 5, 1934, thereby predeceasing Laura. Item 19 further states that Almira/Ella Coney Updegraff died without issue. By operation of law, her residuary interest in her sister, Laura's, estate would have lapsed to the other surviving siblings.

17. Susan U. Shorkley died intestate on March 28, 1937 (WR --/364), leaving to survive her, Harry M. Shorkley and Margaret Shorkley, her children.

18. Mary E. Melhuish appears to have died intestate on an unspecified date.

    See Comment and Requirement No. 3.

19. By Deed dated June 27, 1939, Thomas Agustus Updegraaf, widower, Valeria U. Luse, widow, Largaret (Margaret) Shorkley, single, LeRoy Byham and Rhea Melhuish Byham, husband and wife, and Harry M. Shorkley and Belle K. Shorkley, husband and wife, conveyed 100 acres to Wallis Run Hunting Club (DR 337/186).

    **NOTE:** Valeria Luse, a grantor in the above deed, is listed as Valeria "Luce" in the Last Will and Testament of Laura Rebecca Updegraaf, filed at WR 24/389, Item 16, above. Also, it appears that "Largaret" Shorkley, a grantor in the above deed should be Margaret Shorkley, the daughter of Susan U. Shorkley.

20. By Deed dated February 13, 1999, Wallis Run Hunting Club, Inc., conveyed 100 acres to Wallis Run Hunting Club, Inc. (DR 3232/229).

    See Comment and Requirement No. 4.

***Chain 2 - The 231 acres Tract***

**NOTE:** See Items 1 through 5 and Item 7, above, for the beginning of the chain of title for this portion of the Subject Land.

21. By Deed dated October 9, 1857, John McCawley and Elizabeth C. McCawley, husband and wife, conveyed 212 acres to Conrad Whitaker (DR 38/652).

22. By Deed dated October 9, 1857, Conrad M. Whitaker and Emma S. Whitaker, husband and wife, conveyed 212 acres to Thomas Martin (DR 38/653).

23. By Deed dated September 21, 1869, Thomas Martin conveyed 212 acres to Michael Kelly (DR 59/590).

24. By Deed dated April 26, 1877, Michael Kelly and Rose W. Kelly, husband and wife, conveyed 231 acres to Timothy Curtin (DR 79/209).

    **NOTE:** The above deed states that 231 acres were conveyed therein, but the preceding deed in the chain of title, described at Item 24, above, states that 212 acres were conveyed therein. There is nothing in the Materials Examined to account for the discrepancy in acreage.

25. By Deed dated January 23, 1878, Timothy Curtin, Assignee of Michael Kelly and Rose Kelly, husband and wife, in trust for the benefit of creditors, conveyed 231 acres to Patrick Ignatius Kelly (DR 80/652).

    **NOTE:** The above deed states that the deed was made pursuant to the proceedings at No. 871 May Term 1877. The said proceedings were not included in the Materials Examined.

26. By Deed dated August 23, 1883, Samuel Wilson, Sheriff, conveyed 231 acres, being the lands and tenements of Patrick Ignatius Kelly, to Timothy Curtin and Edward Fitzpatrick (DR 98/493).

27. By Deed dated July 1, 1889, Timothy Curtin and Catharine Curtin, husband and wife, conveyed their undivided one-half (1/2) interest in and to 231 acres to Edward Fitzpatrick (DR 121/310).

28. By Deed dated September 15, 1894, Edward Fitzpatrick and Mary Fitzpatrick, husband and wife, conveyed 231 acres to Thomas Foundation (DR 153/577).

29. By Deed dated March 3, 1921, Louisa R. Morley, Hattie M. Morley, Alvin O. Mullen and Eva B. Mullen, husband and wife, and Adelia Morley, heirs at law of Milton M. Morley, deceased, quitclaimed 231 acres to Edward H. Morley, "reserving thereout

all minerals, with the right to the grantor in the deed to Milton M. Morley, reserved to Thomas Foundation, his heirs and assigns, to enter upon the land for the purposes of removing the minerals" (DR 242/112).

See Comment and Requirement No. 5.

30. By Deed dated April 12, 1921, Frank P. Cummings, guardian of the Estate of Thomas Foundation, conveyed 231 acres to Edgar H. Morley, reserving all minerals (DR 242/111).

See Comment and Requirement No. 5.

31. By Deed dated December 9, 1921, Edward H. Morley and Margueretta May Morley, husband and wife, conveyed 231 acres to Louisa R. Morley, "reserving all minerals with the right to Thomas Foundation, his heirs and assigns, to enter into, through and upon the land, for the purpose of removing the minerals" (DR 244/334).

See Comment and Requirement No. 6.

32. By Deed dated November 9, 1936, Louise Morley Evans conveyed 231 acres to Wallis Run Hunting Club, reserving all minerals with the right to Thomas Foundation, his heirs and assigns, to enter into, through and upon the land, for the purpose of removing the minerals (DR 299/30).

See Comment and Requirement No. 6.

*******************

## VI.
## COMMENTS AND REQUIREMENTS

**COMMENT NO. 1: Disclaimer**. We have not been furnished any information regarding the current use and possession of the Subject Land and ownership as credited herein is subject to the rights of parties actually in possession. In addition, the Materials Examined reveal the existence of certain defects and irregularities in the early record title to the Subject Land, as noted in Section III of this Opinion, which would be difficult, if not impossible, to cure at the present time. You are advised, however, that establishment of title by adverse

possession depends upon matters of fact which must be proven when and if the necessity arises.

**REQUIREMENT NO. 1**: None. Advisory only.

**COMMENT NO. 2: Estate of Richard Peters/Heirs of Richard Peters**. Richard Peters, a predecessor in title, died testate and purportedly devised the Subject Land to his children, being Ralph Peters, Richard Peters, Jr., and Sarah R. Peters, by his will which is recorded in Philadelphia County per a description contained in the deed dated June 23, 1855 (DR 37/232). It appears that Sarah R. Peters was the wife of Richard Peters. It also appears that the heirs of Richard Peters and Sarah R. Peters conveyed their interests in the Subject Land by the following deeds: (i) dated June 23, 1855 (DR 37/122), from Edward Peters, Sarah R. Dana, and W. G. Peters, heirs of Sarah R. Peters, deceased, to Edward R. Mayer; (ii) dated June 2, 1855 (DR 37/236), from Anne M. Peters, Executrix of the estate of the late Ralph Peters, Jr., and heir of Ralph Peters, deceased, and of Sarah R. Peters, deceased, to Edward R. Mayer; (iii) dated July 10, 1855 (DR 37/233), from Richard Peters and Mary I. Peters, his wife, to Edward R. Mayer; and (iv) dated December 20, 1858 (DR 41/402), from Francis Peters, acting for himself and as Trustee and Guardian of his daughter, M. B. Peters, and M. L. M. Peters, his wife, to Edward R. Mayer.

The Materials Examined does not include a probate file for the Estate of Richard Peters or Sarah R. Peters. Therefore, there is nothing to substantiate how all of the heirs of Richard Peters and/or Sarah R. Peters received and then conveyed their interests in and to the Subject Land. Due to the passage of time, it would be difficult, if not impossible, to confirm the dates of death and heirship for the above-referenced predecessors in title. It does not appear that any third party has ever asserted a claim to the Subject Land arising out of the conveyances by the executors and heirs of Richard Peters. Therefore, we assess the risk of enforcement by any potential successors in interest as low.

**REQUIREMENT NO. 2**: None. Advisory Only.

**COMMENT NO. 3: Missing Estate of Mary E. Melhuish**. Mary E. Melhuish acquired a one-fifth (1/5) interest in the 100 acre portion of the Subject Land by the Last Will and Testament of Laura Rebecca Updegraff (WR 24/390). The next deed in the chain of title for the interest of Mary E. Melhuish, being the current vesting deed dated June 27, 1939 (DR 337/186), states that Mary Melhuish died in 1929, leaving as her only heir at law Rhea Melhuish Byam, who conveyed her interest in the Subject Land with her husband, LeRoy Byam, by the deed recorded at DR 337/186. The Materials Examined does not contain a probate file for Mary E. Melhuish and, therefore, we cannot definitively confirm that Rhea

Melhuish Byam was her only heir. Due to the passage of time since the likely date of death of Mary E. Melhuish, it would be difficult, if not impossible, to confirm the date of death of Mary E. Melhuish and it is unlikely that there are any living persons who were personally and well acquainted with the decedent and knowledgeable of the circumstances of her death sufficient to execute an affidavit of heirship. Therefore, the low risk posed by the foregoing does not warrant curative action.

**REQUIREMENT NO. 3**: None. Advisory only.

**COMMENT NO. 4: Erroneous Description Contained in Deed**. The Subject Land is comprised of 100 acres that were conveyed by Thomas Augustus Updegraff, widower, Valeria U. Luce, a widow, Margaret Shorkley, a single woman, Rhea Melhuish Byam and LeRoy Byam, her husband, Harry M. Shorkley and Belle K. Shorkley his wife, to Wallis Run Hunting Club by the deed dated June 27, 1939 (DR 337/186) (the "Updegraff Deed"), and 231 acres that were conveyed by Louise Morley Evans to Wallis Run Hunting Club by the deed dated November 9, 1936 (DR 299/30) (the "Evans Deed"). Wallis Run Hunting Club, Inc. subsequently conveyed the 100 acres tract of the Subject Land to itself by the deed dated February 13, 1999 (DR 3232/229) (the "Wallis Run Deed"). The Wallis Run Deed also conveys the property that was conveyed to Wallis Run Fish and Game Club by the deed from Margaret Logue, dated October 4, 1923 (DR 249/575) (the "Logue Deed"). Although the Wallis Run Deed states that its purpose is to combine the parcels described therein for tax and subdivision purposes, purportedly being Parcel 06-192-0102 and Parcel 06-192-0103, it appears that such parcels are not contiguous and, therefore, cannot be combined as one tax parcel. The inclusion of the Updegraff Deed parcel in the Wallis Run Deed appears to be an error. In order to achieve its stated intention of combining contiguous properties into one tax parcel, the Wallis Run Deed should have instead combined the parcel described in the Logue Deed with another parcel that was contiguous. The property conveyed by the Logue Deed appears to be a portion of Tax Parcel 06-192-102, and is not covered by this Opinion but may also be part of the intended combination of parcels.

**REQUIREMENT NO. 4**: You should obtain a corrective deed from Wallis Run Hunting Club, Inc. to Wallis Run Hunting Club, Inc., correcting the description of the parcels conveyed and combined by the deed recorded at DR 3232/229, and record the same in Lycoming County. See also Comment and Requirement No. 15 regarding the deed descriptions contained in the current Oil and Gas Lease.

**COMMENT NO. 5: Severance of Mineral Rights**. Frank P. Cummings, guardian legally appointed by the Court of Common Pleas of the County of Lycoming of the Estate of Thomas Foundation, conveyed the 231 acre portion of the Subject Land to Edgar H. Morley

by deed dated April 12, 1921 (DR 242/111), reserving all minerals. The reservation does not specifically mention oil or gas.

Under Pennsylvania law, the failure to specifically mention natural gas or oil in a reservation and/or exception of "minerals" or "mineral rights" in connection with a conveyance of land, gives rise to a rebuttable presumption that the word "minerals" was not intended by the parties to include natural gas or oil. Dunham & Shortt v. Kirkpatrick, 101 Pa. 36 (1882); Silver v. Bush, 213 Pa. 195 (1906); Highland v. Commonwealth, 400 Pa. 261 (1960). To rebut the presumption that natural gas or oil is not included within the word "minerals" there must be clear and convincing evidence that the parties to the conveyance intended to include natural gas or oil within such word. Highland v. Commonwealth, *supra*. It is the intention of the parties at the time of the conveyance that will be the determining factor as to whether the exception and/or reservation of "mineral rights" includes natural gas and oil.

Our review of the Materials Examined indicates no evidence to contradict the rebuttable presumption that the Estate of Thomas Foundation's mineral rights reservation did not include oil and gas. Moreover, Wallis Run Hunting Club is the only party to have leased the oil and gas underlying the Subject Land. Therefore, there is little risk of any adverse claims to the subject Oil and Gas Estate arising out of the Estate of Thomas Foundation's mineral rights reservation.

**REQUIREMENT NO. 5**: None. Advisory only.

**COMMENT NO. 6: Identity of Predecessor in Title**. The current vesting deed for the 231 acre portion of the Subject Land, dated November 9, 1936 (DR 299/30), is from "Louise Morley Evans" to Wallis Run Hunting Club. However, the immediately preceding deed in the chain of title, dated December 9, 1921 (DR 224/335) is to "Louisa R. Morley". Subsequent instruments of record indicated that Louisa R. Morely married Robert Kelton Evans. Therefore, "Louise Morely Evans" and "Louisa R. Morely" are likely the same person. Due to the passage of time since the date of the deed recorded at DR 299/30, it is unlikely that there are any living persons who were personally and well acquainted with Louisa R. Morley and/or Louise Morley Evans sufficient to execute an affidavit of identity stating that they were one and the same. Due to the low risk posed by the foregoing, no curative action is required.

**REQUIREMENT NO. 7**: None. Advisory only.

**COMMENT NO. 7: Royalty and Other Interests**. Chesapeake Appalachia, L.L.C. ("Chesapeake") assigned and conveyed an undivided 32.5% interest in and to all of the right, title and interest in and to the current Oil and Gas Lease to Statoilhydro USA Onshore Properties, Inc. ("Statoilhydro") by the Assignment and Conveyance executed November 17, 2008, but effective November 24, 2008 (DR 6541/278). Chesapeake assigned an undivided 50% interest in and to all the right, title and interest in and to the current Oil and Gas Lease to Anadarko E&P Company LP ("Anadarko") by the Partial Assignment of Oil and Gas Leases dated December 16, 2008 (DR 6539/214). Although the assignment from Chesapeake to Statoilhydro predates the assignment from Chesapeake to Anadarko, the assignment to Anadarko was recorded before the assignment from Chesapeake to Statoilhydro. Because of the dates of the assignments, it appears that it may have been the intention of the parties that the assignment to Statoilhydro was to occur before the assignment to Anadarko. We have provided the NRI in Section II(6) as if the parties intended that the division of the oil and gas leasehold is in accordance with the date order of the documents (not the recorded order). However, we cannot definitively determine this from the Materials Examined. We have accounted for both scenarios when calculating oil and gas leasehold/net revenue interests as set forth in Section II(6). Also, the respective percentages of leasehold royalty and oil and gas leasehold/net revenue interests set forth in Section II(6) of this Opinion are based on those instruments identified and described in Section IV, Analysis of Current Oil and Gas Leases, Assignments and Related Instruments. Such instruments internally reference agreements that exist between the parties thereto which are not included in the public records of Lycoming County, Pennsylvania.

> **REQUIREMENT NO. 7**: You should obtain a Stipulation of Interests and Cross-Assignment of the current Oil and Gas Lease between Chesapeake Appalachia, L.L.C., Statoilhydro USA Onshore Properties, Inc. and Anadarko E&P Company, LP, that clearly and unequivocally sets forth the respective interests of each party in and to the current Oil and Gas Lease, and record the same in Lycoming County. You should also request all related agreements and satisfy yourselves that the terms and conditions of such agreements do not alter or affect the respective interests of the oil and gas leasehold or net revenue interests of the above-named parties. You may provide such documentation and information to us for review in a supplemental opinion as discussed below.

**COMMENT NO. 8: Easements and Right-of-Way**. The Materials Examined does not reveal the existence of any separately recorded Easements or Rights-of-Way that apply to the Subject Land.

> **REQUIREMENT NO. 8**: Although the Materials Examined do not reveal the existence of any separately recorded Easements or Rights-of-Way that apply to the

Subject Land, you should determine the location and any restrictions of the any other apparent easements and rights-of-way operating as burdens revealed only by visual inspection, or other easements and rights-of-way that may have occurred by dedication, prescription, implication or estoppel, and respect the use and enjoyment of same in connection with your operations on the Subject Land. In the alternative, an ALTA survey could be obtained for the Subject Land which would indicate all easements and rights-of-way on and under the Subject Land. You may provide such survey to us for review in a supplemental opinion as discussed below.

**COMMENT NO. 9: Unreleased Prior Oil and Gas Leases**. As more particularly set forth in Section III(3)(A) and (B) of this Opinion, the Materials Examined reveals unreleased prior oil and gas leases. The Materials Examined does not contain any release, surrender, affidavit of non-production or other document indicating that the leases are no longer in effect. We point out that the leases could be maintained by production from lands other than the Subject Land (including land comprising pooled units). Therefore, we recommend that you take the curative steps set forth below.

**REQUIREMENT NO. 9**: You should satisfy yourselves that all prior unreleased oil and gas leases covering any portion of the Subject Land have expired by their own terms, or in lieu thereof, you should secure releases of same and file such releases in the county records. Alternatively, you should obtain and furnish for examination Affidavits of Non-Production, Nonpayment of Rentals or Royalties, or Non-Development substantiating that each lease has expired, or otherwise assure yourselves, to the extent that you deem advisable, that each lease has terminated and is no longer in force and effect. We point out that the leases could be maintained by production from lands other than the Subject Land (including land comprising pooled units).

**COMMENT NO. 10: Unreleased Prior Oil and Gas Lease to Phillips Production Company**. Under the terms of the Oil and Gas Lease identified in Section III(3)(C) of this Opinion, the primary term of the lease has lapsed. However, the primary term of the lease could have been extended by production or storage. We further point out that the lease could be maintained by production from lands other than the Subject Land (including land comprising pooled units). East Resources, Inc. and Ultra Resources, Inc., assignees of the oil and gas lease described in Section III(3)(C) hereinabove, may regard their interest in the Subject Land as superior to any subsequent oil and gas leases of record

**REQUIREMENT NO. 10**: Due to the uncertainty of whether the lease may currently be held by production and whether East Resources, Inc. and Ultra Resources, Inc. may consider their interest in the lease as valid, we recommend that

you should satisfy yourselves that the lease has expired by its terms, or in lieu thereof, you should secure a release of the lease and file such release in the county records. Alternatively, you should obtain and furnish for examination Affidavits of Non-Production, Nonpayment of Rentals or Royalties, or Non-Development substantiating that the lease has expired, or otherwise assure yourselves, to the extent that you deem advisable, that such Lease has terminated and is no longer in force and effect..

**COMMENT NO. 11: Clean and Green**. The Subject Land is designated as "Clean and Green" pursuant to the Pennsylvania Farmland and Forest Land Assessment Act (Act 319 amended by Act 156 of 1998 and Act 235 of 2004), indicating that the Subject Land is devoted to agricultural or forest land use to be assessed at a use value rather than fair market value. An oil or gas lease may affect the property's eligibility for participation in the "Clean and Green" tax deferment program, and could trigger a "roll-back" penalty to the landowner. The current Oil and Gas Lease states that, "Lessee, its successors and assigns accepts responsibility for and agrees to pay any and all roll-back real estate taxes and/pr any and all assessments related to Clean & Green." You should be aware that under such provision the Subject Landowner might seek reimbursement of a tax rebate rollback or other assessment resulting from oil and gas development.

**REQUIREMENT NO. 11**: None. Advisory only.

**COMMENT NO. 12: Judgment Referenced in Deed in the Chain of Title**. The deed in the chain of title from John King to George B. King, dated July 18, 1907 (DR 200/587), states that the conveyance therein is subject to the express assumption of payment by the said George B. King of a certain judgment No. 257 march Term 1907, held by Margaret R. Baker against John King, to secure the payment of $220, with interest thereon from July 13, 1907, and record costs. The said judgment was not included in the Materials Examined, nor was a satisfaction and/or revival of the said judgment included in the Materials Examined. However, as the judgment is more than 102 years old, we assess the risk from the said judgment as low.

**REQUIREMENT NO. 12**: None. Advisory only.

**COMMENT NO. 13: Public Roadways and Highways**. As set forth in Section III(5)(B) of this Opinion, Tax Map No. 212 depicts a roadway or highway traversing the Subject Land.

**REQUIREMENT NO. 13**: You should locate all roadways and highways near the Subject Land and avoid all of your oil and gas operations on and/or under the

roadways or highways adjacent to the Subject Land. In the alternative, an ALTA survey could be obtained for the Subject Land which would indicate all public roadways and highways on and adjacent to the Subject Land. You may provide such survey to us for review in a supplemental opinion as discussed below.

**COMMENT NO. 14: Navigable Streams and Waterways**. Pennsylvania law provides by statute that the Commonwealth of Pennsylvania owns the oil, gas and other minerals under the navigable streams and waterways in the Commonwealth. 71 P.S. §510-8(3).

**REQUIREMENT NO. 14**: You should take such steps as you deem necessary to confirm that there are no navigable streams or waterways on the Subject Land or, if so, to make such other arrangements as you deem necessary with the Commonwealth of Pennsylvania to recognize its ownership. In the alternative, an ALTA survey could be obtained for the Subject Land which would indicate all navigable streams and waterways on the Subject Land. You may provide such survey to us for review in a supplemental opinion as discussed below. Please note that navigable streams and waterways generally have been described as being used for commerce and the transportation in quantity of goods and people.

**COMMENT NO. 15: Description Contained in the Current Oil and Gas Lease**. The current Oil and Gas Lease states that it covers 331.0 acres, being Tax Parcel 06-212-101 (Subject Land), and 129.32 acres, being Tax Parcel 06-192-102, and that Wallis Run Hunting Club, Inc. was conveyed the lands covered therein by the following deeds: 1) from Margaret Logue, dated October 4, 1923, and recorded at DR 249/575; 2) from Louise Morley Evans, dated November 9, 1936 and recorded at DR 229/30; and 3) from Thomas Updegraff et al. by the deed dated June 27, 1939, and recorded at DR 3232/229. The deed from Thomas Updegraff et al. dated June 27, 1939, however, is recorded at DR 337/186, and the deed recorded at DR 3232/229 is from Wallis Run Hunting Club Inc., to Wallis Run Hunting Club, Inc.

**REQUIREMENT NO. 15**: After you have satisfied Requirement No. 7 above, you should then obtain an Amendment and Ratification to the current Oil and Gas Lease that correctly references each vesting deed for each parcel covered by the lease and an Affirmation from Chesapeake Appalachia, L.L.C. and Statoilhydro USA Onshore Properties, Inc., and record the same in Lycoming County.

*******************

## VII.
## LIMITATIONS

In preparation of this Opinion, we have not conducted an actual examination of the records of Lycoming County, Pennsylvania. Our examination of title and this Opinion is based upon the materials furnished to us as indicated in the Materials Examined section of this Opinion. We accept no liability for the accurateness or completeness of the Materials Examined. This Opinion does not purport to characterize the validity or effect of any document which was not provided for examination.

Except where noted, the Closing Date of the Materials Examined is June 22, 2010 (the "Closing Date"), as to the Subject Land. Prior to your commencement of operations, we advise you to check the records of Lycoming County, Pennsylvania, to ensure that nothing has been placed of record since this date which could adversely affect your operations on the Subject Land. In the event any such instruments have been filed of record, you should submit these instruments and any related items in a supplemental abstract for review and possible discussion in a supplemental opinion whereby the Ownership section and Encumbrance section may need to be revised. Or in the alternative, you should verify to your satisfaction that there have been no documents filed of record which would encumber your leasehold or oil and gas interests, from the closing date of this Opinion through the file date of said instruments.

We have not been furnished with a current survey of the Subject Land, nor does it appear, based upon our review of the Materials Examined, that the Subject Land has been surveyed recently. We have therefore necessarily assumed, for purposes of this Opinion, that the acreage amount of the Subject Land is as referred to on Page 1 of this Opinion. We have also assumed, for purposes of this Opinion, that you will survey so much of the Subject Land as is necessary in connection with your ongoing activities or your application for drilling permits or prior to commencement of other activities on or under the Subject Land. Further, we assume that no portion of the Subject Land falls within a navigable stream or waterway which would be deemed publicly owned under the laws of the Commonwealth of Pennsylvania. Due to the foregoing, matters which are discoverable by an accurate survey are hereby excluded from this Opinion.

This Opinion does not cover (i) ownership of minerals other than oil and gas; (ii) the location of the Subject Land on the ground, questions of boundary, conflicts with adjacent surveys or matters of area such as are determinable only by an actual ground survey, which we assume you will undertake prior to commencement of oil and gas operations; (iii) the genuineness, authenticity or enforceability of any instruments relied upon; (iv) matters not

discoverable with ordinary professional care including fraud, forgery, duress, undue influence, capacity-competency of parties, wrongfully indexed instruments, delivery and alteration after delivery, bankruptcy, homestead rights, unrecorded instruments, and inchoate liens; (v) technical defects of title that may not reasonably be expected to materially affect the value or use of the Subject Land for oil and gas development purposes in accordance with the laws of Pennsylvania; and (vi) any other matter not strictly pertaining to title and ownership such as environmental matters or compliance with governmental laws, rules, ordinances or regulations.

This Opinion is rendered solely for the benefit of the addressee and may not be relied on by any other person or entity for any purpose.

Respectfully submitted,

**TUCKER ARENSBERG, P.C.**

By:____________________
Bruce F. Rudoy