**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHARLES RICE KENDALL AND ANN P. HOCHBERG, AS TRUSTEES FOR THE THOMAS E. PROCTOR HEIRS TRUST; AND BANK OF AMERICA, N.A. AND JOHN L. SLOCUM, JR., AS TRUSTEES FOR THE MARGARET O.F. PROCTOR TRUST;

Plaintiffs,

v.

ANADARKO E&P ONSHORE LLC, WALLIS RUN HUNTING CLUB, INC. AND WALLIS RUN GAS AND OIL, INC.;

Defendants.

Case No. 3:16-cv-01182-MEM

# SUPPLEMENTAL EXPERT REPORT OF BRUCE F. RUDOY, ESQ. DATED NOVEMBER 16, 2017

## I. SCOPE OF EXPERT ENGAGEMENT

My name is Bruce F. Rudoy and I am an attorney licensed to practice law in the Commonwealth of Pennsylvania since 1992. As part of my practice I have been involved in various oil and gas matters including oil, gas and mineral title matters, mergers and acquisitions, real estate title and transactions, and estate matters during all times while I have been licensed to practice law. My qualifications as an expert in this matter are more specifically discussed below in Section II. The scope of engagement as an expert in this case is to interpret several ambiguous deeds in Lycoming County, Pennsylvania and determine the effect of such conveyances, if any, on the current oil and gas ownership of Tax Parcel 06-212-101. The materials relied upon that have been supplied to me for review are as follows:

A. Title Opinion dated October 26, 2010 of Tucker Arensberg, P.C., at which time I was a Shareholder, covering Tax Parcel 06-212-101 in Lycoming County, Pennsylvania;

B. Title abstract prepared by Petro-Land Group covering Tax Parcel 06-212-101 for a period from May 6, 1797 through December 4, 2015;

C. Title Opinion dated May 27, 2014 of Babst, Calland, Clements and Zomnir, P.C., at which I am currently a Shareholder, covering Tax Parcel 06-212-100 in Lycoming County, Pennsylvania;

D. Title abstract prepared by Petro-Land Group covering Tax Parcel 06-212-100 for a period from October 29, 1839 through March 12, 2014;

E. Memorandum prepared by Babst, Calland, Clements and Zomnir, P.C. dated January 25, 2016 addressed to Magnus Rayos regarding conveyances in the John Brown Warrant of Lycoming County, Pennsylvania;

F. Letter dated December 8, 2015, from Paul K. Stockman of McGuire Woods LLP on behalf of Plaintiffs to Michael Barron of Anadarko E&P Onshore LLC;

G. Letter dated June 28, 2016, from Paul K. Stockman of McGuire Woods LLP on behalf of Plaintiffs to Kenneth C. Moursund, Jr. of Anadarko E&P Onshore LLC;

I. Plaintiffs' Complaint in this action;

J. Defendant's Answer and Counterclaim in this action;

K. Expert Report of William F. Hoffmeyer dated September 19, 2017, on behalf of Defendants;

L. Expert Report of Andrew J. Grafton dated September 18, 2017, on behalf of Plaintiffs; and

M. Expert Witness Report of Fred A. Hoffman dated October 16, 2017, on behalf of Defendants.

## II. EXPERT QUALIFICATIONS

I earned a Bachelor of Science degree in Finance from Pennsylvania State University in 1987. I also attended London Polytechnic College in London, England in 1986, where I studied law and economics. I earned a Juris Doctor degree from Cleveland State University, Cleveland Marshall College of Law in 1992. I was admitted to the Pennsylvania State Bar in 1992, to the bars of the states of Ohio and North Dakota in 2012, to the bars of the states of West Virginia and Kentucky in 2016, and to the bar of the state of Alaska in 2017. Since 1992 I have been practicing law in Pittsburgh, Pennsylvania. My practice has focused on oil and gas title and transactions, mergers and acquisitions, general corporate law, real estate title and transactions, and estate matters. I have represented various parties in the above, including with respect to oil and gas title and transactions, exploration and production companies, oil and gas capital investors, oil and gas pipeline companies and oil and gas non-operating companies.

Currently, I am Co-Chair of the Energy and Natural Resources Department of Babst Calland, and the Chair of the Oil and Gas Title Department of Babst Calland and serve on the Board of

Directors of Babst Calland. I am a past Chair of the American Bar Association Section of Environment, Energy and Resources, Oil and Gas Committee.

In addition to oil and gas transactions, mergers and acquisitions and general oil and gas contract matters, I have issued over 15,000 oil and gas title drilling or acquisition opinions. A majority of these opinions have involved properties located in Pennsylvania and of those, I have issued numerous opinions that address various title issues in Lycoming County and other counties with similar land characteristics and title history. I am familiar with the former system of warrants in Pennsylvania and have significant experience interpreting deeds drafted in the nineteenth and early twentieth centuries. Further, I have led many oil & gas acquisitions and sales for exploration & production companies, as well as served as special counsel for the due diligence related to such transactions. Therefore, I have served as counsel in various capacities over the course of my career for many oil & gas transactions and sales. I have also presented numerous seminars on oil and gas matters and title issues to the Pennsylvania Bar Institute, Energy and Mineral Law Foundation, American Association of Professional Landman, Northern Appalachian Landman's Association, International Right-of-Way Association and various oil and gas exploration and production companies.

I am a member of the American Bar Association, Pennsylvania Bar Association, Allegheny County Bar Association, Bar Associations of Ohio, West Virginia, Kentucky, North Dakota and Alaska, Pennsylvania Independent Oil and Gas Association, Ohio Oil and Gas Association, Energy and Mineral Law Foundation, American Association of Professional Landmen, Independent Petroleum Association of America, Northern Appalachian Landman's Association, and Rocky Mountain Mineral Law Foundation. I have been named in Best Lawyers in America and Pennsylvania Super Lawyers for mergers and acquisitions and oil and gas law since 2011. In addition, in my role as Chair of the Title Department of Babst Calland, I have served as an editor and a contributing writer of the *Babst Calland Report*, an oil and gas industry legal white paper.

## III. BACKGROUND OF PLAINTIFFS' ALLEGATIONS

### A. Plaintiffs' Claims to Oil and Gas Ownership

The Plaintiffs claim their predecessor in title acquired land that when surveyed includes a portion of present day Tax Parcel No. 06-212-101. The Plaintiffs' Complaint seeks to quiet title to certain oil and gas rights also claimed by Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc. and leased to Anadarko E&P Onshore LLC, which lie underneath such parcel. Trespass and several related claims are also being asserted by the Plaintiffs for which they are seeking damages. As discussed in detail below, the Plaintiffs' claims are not supported by the evidence in this case and rely substantially on an ancient and erroneous property description that has since been disregarded. Nearly all subsequent descriptions and tax assessments of property in the John Brown Warrant, from which the property at issue originated, confirm that the Defendants own all oil and gas rights in Tax Parcel No. 06-212-101.

## B. Chain of Title of John Brown Warrant

The matter at issue arises from the following title history in the John Brown Warrant of Lycoming County, Pennsylvania:

1. The original stated acreage of the John Brown Warrant is 407.75 acres as are each of the other contiguous warrants. A survey in 1792 depicts the property as a rectangle, having eastern and western boundary lines of 186 perches each; and northern and southern boundary lines of 372 perches each. A plot of these distances results in an area of 432.45 acres (Exhibit 1).

2. By deed dated December 20, 1855, John McCawley acquired the John Brown Warrant, which is described by adjoinders with a stated acreage of 407 acres and 20 perches (DR 37/437).

3. By deed dated March 30, 1857, and recorded on May 15, 1857, John McCawley conveyed 100 acres located in the eastern portion of the John Brown Warrant to John F. Meyer (DR 38/295, the "J. F. Meyer Deed", Exhibit 2). Although the stated acreage in the granting language of the deed is 100 acres, the metes and bounds description plots to approximately 206 acres (Exhibit 3).

4. By deed dated March 30, 1857 (same date as the J. F. Meyer Deed), and recorded on May 20, 1857, John McCawley and Elizabeth McCawley, husband and wife, conveyed 212 acres in the John Brown Warrant to Conrad M. Whitaker (DR 38/301, the "Whitaker Deed", Exhibit 4). A deed plot of the land conveyed as described in the metes and bounds calculates the area to 412 acres, more or less, although the stated acreage in the granting language is 212 acres (Exhibit 5).

5. By deed dated October 1, 1857, John McCawley conveyed 107.5 acres in the western portion of the John Brown Warrant to F. W. Meier (DR 38/776, "F. W. Meier Deed", Exhibit 6). A deed plot of this tract calculates the area at 113.3438 acres (Exhibit 7). Through a series of conveyances dated between June 12, 1871 and June 27, 1939, this same tract ultimately vested in the Wallis Run Hunting Club, Inc. The stated acreage of the deed descriptions throughout this chain range from 100 acres to approximately 113 acres.

*Subsequent Chain for J. F. Meyer Deed*

6. By deed dated May 30, 1871, John F. Meyer and Mary M. Meyer, husband and wife, conveyed 100 acres of the John Brown Warrant to Thomas E. Proctor (DR 64/413).

7. By deed dated October 2, 1894, Thomas E. Proctor conveyed several tracts of land, including 100 acres of the John Brown Warrant, to the Elk Tanning Company excepting and reserving all of the natural gas, coal, coal oil, petroleum, marble and all minerals of every kind and character (DR 144/398).

8. Thomas E. Proctor died testate December 7, 1894, and his Will appointed his wife, Emma H. Proctor as the Executrix of his Estate, with full power and authority to sell any of the real estate of which he died seized (WR 8/253). The Plaintiffs to this matter are claiming title as heirs of Thomas E. Proctor.

9. By deed dated May 5, 1903, the Elk Tanning Company conveyed several tracts of land, including 100 acres of the John Brown Warrant, to the Central Pennsylvania Lumber Company (DR 183/328).

10. By deed dated December 14, 1904, the Central Pennsylvania Lumber Company conveyed 112.25 acres, described by an updated property description, to M. T. Milnor (DR 227/399).

11. By several deeds dated between March 25, 1920 through April 7, 1987, 111 acres of the John Brown Warrant ultimately was acquired by the Dwight Lewis Lumber Company (specific citations omitted).

*Subsequent Chain for Whitaker Deed*

12. By Deed dated October 9, 1857, Conrad M. Whitaker and Emma S. Whitaker, husband and wife, conveyed 212 acres to Thomas Martin (DR 38/653).

13. By Deed dated September 21, 1869, Thomas Martin conveyed 212 acres to Michael Kelly (DR 59/590).

14. By a series of deeds dated from April 26, 1877 to September 15, 1894, the same land described as a 231 acres was acquired by the Thomas Foundation (specific citations omitted).

15. By Deed dated April 12, 1921, Frank P. Cummings, Guardian of the Estate of the Thomas Foundation, conveyed 231 acres to Edgar H. Morley, reserving all minerals, but not oil and gas (DR 242/111).

16. By Deed dated December 9, 1921, Edward H. Morley and Margueretta May Morley, husband and wife, conveyed 231 acres to Louisa R. Morley (DR 244/334).

17. By Deed dated November 9, 1936, Louise Morley Evans conveyed 231 acres to Wallis Run Hunting Club, Inc. (DR 299/30).

18. The Wallis Run Hunting Club, Inc. executed the following oil and gas leases: Lease dated August 10, 1982 in favor of Delta Drilling Company (DR 1019/229), Lease dated May 22, 1987 in favor of Douglas Exploration, Inc. (DR 1208/92), and Lease dated July 29, 2002 in favor of Phillips Production Company (DR 4427/30).

## IV. OWNERSHIP OF OIL AND GAS IN THE JOHN BROWN WARRANT

The Plaintiffs' claims in this matter are based on a misplaced interpretation of the J. F. Meyer Deed in which a 100 acre conveyance would be interpreted to convey 206 acres, more or less. Under the Plaintiffs' theory, the amount of land conveyed to their predecessor should be determined solely by a flawed metes and bounds description and that the stated 100 acres in the granting language of the deed should be ignored. However, as will be shown, when all conveyances in the John Brown Warrant are considered together, it becomes clear that the most reasonable interpretation of the J. F. Meyer Deed results in a conveyance of only 100 acres as stated in its granting language, showing the intent of the parties. Two early conveyances in the John Brown Warrant, including the J. F. Meyer Deed, contain a common survey defect or scrivener's error, and therefore, the most reliable indicator of the parties' intent in such deeds is the stated acreage. Further, subsequent title history confirms that the defective surveys and metes and bounds descriptions included in these deeds have been disregarded as mistakes.

### A. Interpretation of Ambiguous Conveyances in the John Brown Warrant

Under Pennsylvania law, the intention of the parties at the time of the transaction is "the ultimate guide by which all deeds must be interpreted." Maxwell v. Saylor, 359 Pa. 94 (1948). When a deed is ambiguous, "then all intending circumstances at the time of execution should be considered in determining the intent of the parties." Coal Mining and Development, Inc. v. Department of Environmental Resources, 678 A.2d 1218 (Pa. Commw. 1996). Additionally, when interpreting deeds, "the true construction is ascertainable by the totality of their combined effect and not wholly and exclusively by any one term when it is irreconcilable with the other terms of the description." Murrer v. American Oil Company, 241 Pa. Super. 120 (1976).

There is no question that the J. F. Meyer Deed is ambiguous. Such deed states that it conveys 100 acres of land and contains a metes and bounds description that plots to 206 acres. The Plaintiffs argue that simply ignoring the stated acreage is appropriate. However, this approach does not follow Pennsylvania case law. The correct method of interpreting an ambiguous deed is to evaluate the parties' intent based on the circumstances in which the instrument was drafted. In this case, John McCawley granted three tracts of land in the John Brown Warrant in the 1857. Therefore, the J. F. Meyer Deed must be evaluated in the context of the remaining deeds conveyed from the John Brown Warrant. When the stated acreages of these three deeds are combined, the total acreage is 419.5 acres, which is nearly the 407.5 acres of the John Brown Warrant as it was originally surveyed within an acceptable range of accuracy, i.e. less than 3%. Under the Plaintiffs' purported interpretation of the deeds, the land conveyed would extend well beyond the borders of the John Brown Warrant, which could not have been the intent of the conveyances.

The source of the inaccuracy in the above deeds can be traced to an identifiable error in the property description. The J. F. Meyer Deed and the Whitaker Deed both have north to south boundaries of 190 perches, which is nearly consistent with the original John Brown Warrant call of 186 perches. Therefore, the north to south boundaries do not appear to be the source of the inaccuracy. However, the east to west boundaries in both deeds appear to be nearly twice as long as what would be required to make the stated acreage and plotted acreage consistent.

Because this same error appears in both deeds, it is reasonable to conclude that the plotted acreages of both the J. F. Meyer Deed and Whitaker contain a miscalculation by the original surveyor or a scrivener's error.

For the John F. Meyer tract, reducing the east to west boundary lines by half reduces the total area to 103.0156 acres (Exhibit 8), nearly the stated acreage in the deed. For the Whitaker tract, reducing the east to west boundary lines by half reduces the total area to 206.0313 acres (Exhibit 9), which is nearly equal to the stated acreage of 212 in the deed. When these revised acreage amounts, making up current day Tax Parcel 06-212-101, are combined with the eastern portion of the warrant, i.e. current day Tax Parcel 06-212-100, the total area equals approximately 422 acres. This acreage amount falls in between the stated acreage of the John Brown Warrant as indicated by the J. F. Meyer Deed, Whitaker Deed and F. W. Meier Deed, being 419.5 acres, and the 432.45 acres of the John Brown Warrant as plotted and shown on Exhibit 1.

Additionally, the 100 acres conveyed to John F. Meyer was re-surveyed in 1905 to be 111 acres and the Conrad Whitaker tract was later conveyed as 231 acres. These later descriptions are close to stated acreages of the J. F. Meyer Deed and Whitaker Deed. This is strong evidence that the plotted acreages of the above deeds have been disregarded by subsequent owners. Therefore, the interpretation arguments brought by the Plaintiffs are not supported when all conveyances in the John Brown Warrant are evaluated. In 2013, both Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc. obtained a modern survey of the entire land comprising Tax Parcel 06-212-101 (DR 8155/343 and DR 8155/337). The modern survey found the land to contain 382.89 acres. Although this acreage is more than the stated acreages in 1857, which would be approximately 319 acres, it is significantly less than the 519 acres that the Plaintiffs allege was conveyed by its interpretation of the 1857 deeds. Based on the foregoing facts, it is clear that the Plaintiffs' predecessors in title did not own 206 acres in the John Brown Warrant and the Plaintiffs' ownership of oil and gas does not cross into Tax Parcel No. 06-212-101. The oil and gas interest that the Plaintiffs may own is confined to Tax Parcel 06-212-100, which is shown adjacent to the property at issue on the modern Lycoming County Tax Map at Exhibit 10.

### B. Subsequent Title History of Whitaker Land and Proctor Heirs

Overall, the absence of evidence that J. F. Meyer and his successors ever asserted ownership of a 206 acre property is a significant weakness to their case. There is no record of an assessment of a 206 acre tract in Proctor's name. Also, the stated acreage is never corrected to reflect a 206 acre tract in subsequent deeds. Instead, the opposite occurred. The current assessment of the J. F. Meyer land is only 120 acres. The most recent deed for this land conveys only 111 acres. Had the J. F. Meyer Deed actually conveyed 206 acres, there likely would be subsequent county records documenting such acreage amount.

Additionally, the Defendants and their predecessors have asserted ownership of subsurface rights. As shown at Item 15 in the chain of title above, by deed dated April 12, 1921, a prior owner of the 231 acre tract reserved their mineral rights, but not the oil and gas. Defendant Wallis Run Hunting Club, Inc., has also leased rights in the oil and gas several times prior to the current Anadarko E&P Onshore LLC Lease, beginning in 1982 (see Item 18, above). In contrast, the Plaintiffs did not assert a specific right to a portion of Tax Parcel 06-212-101 until

shortly before this lawsuit. Though they have leased lands in Lycoming County beginning in 1980, the leases of the Proctor heirs cite to deeds containing multiple properties and do not reference Parcel 06-212-101 expressly. When all of the above facts are considered, it is clear that the Plaintiffs have not shown material evidence that they acted to possess or control the oil and gas under Tax Parcel 06-212-101 following the severance by Thomas Proctor. Therefore, their oil and gas rights, if any, are limited to the adjacent Tax Parcel 06-212-100.

Notwithstanding that the foregoing clearly establishes Defendants' right to the oil and gas underlying Tax Parcel 06-212-101, the legal theory of adverse possession further supports this fact and estops Plaintiffs from making a claim of ownership. Under Pennsylvania law, a party can establish adverse possession if it is shown that the they possessed the land in a manner that is continuous, exclusive, visible, notorious, distinct and hostile for a period of over 21 years. Moore v. Duncan, 455 Pa. Super. 124 (1996). Because the Defendant Wallis Run Hunting Club, Inc. has been vested with full title of Tax Parcel 06-212-101 since 1939 and the records shows it has paid taxes on the property for numerous years, it has a strong claim of adverse possession of the property. Additionally, Pennsylvania law allows an affirmative defense of laches, which may be raised when a plaintiff demonstrates an inexcusable delay in instituting suit and there is prejudice resulting to the defendant from such delay. Anaconda Company v. Metric Tool & Die Company, 485 F. Supp. 410 (1980). In this case, a period of over 125 years passed between the severance by Thomas Proctor and the present lawsuit. Accordingly, the long delay in asserting ownership of oil and gas rights provides the Defendants with a credible affirmative defense based on laches in addition to the above-mentioned deed interpretation analysis.

### C. Findings of Other Expert Witnesses in Case

This Report supplements the September 19, 2017 Expert Report of William F. Hoffmeyer. In his Report, Mr. Hoffmeyer reviewed much of the same information as discussed above and arrived at the same conclusions. Mr. Hoffman states, "when there, in fact, is an obvious discrepancy or ambiguity between the amount of acreage and the description, and considering the number of years which have transpired since these deeds were executed and the property was sold by McCawley in 1857, it is my opinion, to a reasonable degree of professional certainty, that a court would take the position that the acreage controls". Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc. have also submitted an Expert Report rendered by Fred A. Holland dated October 16, 2017. Mr. Holland concluded that the J. F. Meyer Deed "conveyed only 100 acres of the eastern most portion of the John Brown Warrant." Mr. Holland further found that Defendants Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc. hold superior title to the Plaintiffs in the oil and gas at issue. These reports provide further explanation as to why the Plaintiffs' assertions are baseless.

## V. REBUTTAL TO PLAINTIFFS' CLAIMS

### A. Legal Theories Claimed by Plaintiffs

In the June 28, 2016 Letter of Paul K. Stockman, several arguments are expressed which the Plaintiffs assert as additional support for their claims. The first argument Plaintiffs offer is they have a superior claim under Pennsylvania's recording statutes. However, the applicable

recording statute is the Act of May 18, 1775, which provided that deeds "should be recorded in the office for the recording of deeds, in the county where such lands or hereditaments are lying and being, within six months of execution", and if not so recorded, shall "be adjudged fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration" that records their interest prior in time. See Smith v. Young, 259 Pa. 367 (1918). An important difference between the prior recording statute and the present version is that a six month period was allowed for recording before a grantee's interest became subject to a subsequent purchaser. In this case, both the Whitaker Deed and the J. F. Meyer Deed were executed on the same day and recorded within six months of execution. Therefore, the Act of March 18, 1775 provides no priority to the J. F. Meyer Deed based on its recording date. There is also no other information which can definitively establish that the J. F. Meyer Deed was executed prior in time to the Whitaker Deed. As discussed above, the two deeds are part of the same series of transactions and should each be interpreted together.

A second argument raised by Mr. Stockman is that a metes and bounds description is generally favored over the stated acreage in a deed. This principle was followed in the case of Hoover v. Jackson, 362 Pa. Super. 532 (1987), in which one of the issues was whether a parcel was 125 acres as stated or 153.2 acres as surveyed. While this case shows that a court may prefer a survey description with all facts being equal, it does not indicate that this rule of construction will override the parties' intent. Further, the acreage discrepancy was not nearly as large in the Hoover case as it is in this matter. In the present case, the plotted acreage is over twice the size as the stated acreage in the two deeds. Therefore, it is unlikely that a court would rely solely on the Hoover case to interpret the J. F. Meyer Deed and would instead evaluate all facts in the matter.

Pennsylvania courts are clear that technical rules of interpretation will not be favored when the result is clearly against the parties' intentions. In Baker v. Roslyn Swim Club, 206 Pa. Super. 192 (1965), the Superior Court of Pennsylvania declined to follow an interpretation rule that gave preference to artificial landmarks and natural landmarks over other parts of a description when such were shown to be inaccurate. The Court stated that "monuments on the ground are of the highest value on the questions of boundary," but such "rule cannot prevail where the monument claimed is so manifestly wrong as to lead to an absurd result". Citing to Davis v. Rainsford, 17 Mass. 207 (1821). The Court further held that the purpose of a rule of construction is "to ascertain, or aid in determining the intent of the parties" and that "strict adherence" to a call for a monument is not permissible where it would "lead to a construction plainly inconsistent with such intention." Accordingly, the Plaintiffs' reliance on a single rule of deed construction against the weight of evidence is not persuasive. Additionally, in the case of Duncan v. Madara, 106 Pa. 562 (1884), the Supreme Court of Pennsylvania held that a metes and bounds description that failed to properly close was not favored over evidence that a grantor conveyed all his remaining land by a deed. Under these cases, it is highly questionable to use a faulty survey to determine the intent of the parties.

Pennsylvania law also permits a court to reform deeds to reflect the intention of the parties. "The right to reformation of a deed in equity, if mutual mistake appears, is unquestionable where the purpose is to correct the inaccurate description therein, and make it conform to the intention of the parties". Armstrong Building & Loan Association v. Guffey, 132 Pa. Super. 19 (1938).

Because the inaccurate descriptions in the present case were not corrected for several decades, it is likely that a mutual mistake occurred by the grantor and grantees of the J. F. Meyer Deed and the Whitaker Deed. Accordingly, a court would likely find that the two deeds should be reformed to be consistent with the intent of the parties due to a mutual mistake. Further, the parties involved were not likely experts nor knowledgeable in surveys, and it is more likely than not that they would therefore place importance on the stated acreages in the granting clauses of the J. F. Meyer Deed and the Whitaker Deed.

### B. Plaintiffs' Expert Witness

The Plaintiffs have furnished the September 18, 2017 Expert Report of Andrew J. Grafton, a GIS Mapping Manager of Jim Bourbeau Land Services, to support their claims. The conclusions of Mr. Grafton primarily establish that the metes and bounds of the J. F. Meyer Deed and Whitaker Deed are 206.0313 acres and 412.0625 acres, respectively when plotted. Mr. Grafton also provides several overlays of these deed plots against the modern tax map and John Brown Warrant. However, as a GIS Mapping Manager, he is not qualified to comment on or analyze the legal basis of Plaintiffs' interpretation of the above deeds. Additionally, Mr. Grafton offers no new information other than illustrations of the plotted descriptions of each deed. Mr. Grafton does not provide any current survey of the properties but asserts the 1857 deed descriptions are accurate descriptions of the lands in dispute.

Similar to the above analysis, the GIS information provided by Mr. Grafton shows that the Whitaker Deed and J. F. Meyer Deed, when plotted, significantly exceed the original description of the John Brown Warrant. As shown on Mr. Grafton's own exhibits, relying on the metes and bounds of the above deeds leads to a completely inaccurate result. Mr. Grafton further fails to adequately reconcile the current property descriptions with the significantly larger surveys in the 1857 deeds.

Mr. Grafton makes a general claim that the 1857 deeds are more accurate than other conveyances in Lycoming County granted around the same era. This reasoning ignores the fact the properties in question have been re-surveyed since 1857 and the new surveys are consistent with the stated acreages of those deeds to an acceptable degree. Considering the above, the opinions of Mr. Grafton do not present any persuasive arguments regarding the Plaintiffs' claims and should be completely disregarded.

## VI. <u>COMPENSATION</u>

In connection with this engagement, I will be compensated at an hourly rate of $475 for expert analysis on this case and for time spent testifying in deposition or at trial. These rates are consistent with the customary hourly rates that I charge for similar services.

## VII. <u>CONCLUSION</u>

Based on my experience with oil and gas acquisitions, my experience issuing Pennsylvania title opinions, my familiarity with deed records in Lycoming County, Pennsylvania and my knowledge of Pennsylvania case law, and for the reasons stated above, the Plaintiffs have not

proven that they are the rightful owners of any portion of oil and gas in Tax Parcel 06-212-101 of Lycoming County.

Respectfully Submitted,

Dated: NOVEMBER 16, 2017

Bruce F. Rudoy (PA I.D. No. 66056)

# Exhibit # 1


Alexander Wilcox
n90e
372p
Doc. B. Rush
n0e
186p
John Brown Warrant No. 488 as originall surveyed.
Called 407 3/4 acres and 6% allowance.
Plots as 432.45 acres.
186p
s0w
William
Williams
?. ?. Wallis
& Co.
372p
s90w
John Barry

# Exhibit # 2

his heirs and assigns forever And the said John G Emery his heirs Executors and Administrators do by these presents covenant grant and agree to and with the said Henry Emery sen his heirs and assigns that he the said John G Emery and his heirs all and singular the hereditaments and premises therein above described and granted or mentioned and intended so to be with the appurtenances unto the said Henry Emery Sen his heirs and assigns against him the said John G. Emery his heirs and against all and every other person or persons whomsoever lawfully claiming or to claim the same or any part thereof Shall and will Warrant and forever defend In Witness Whereof the said parties to these presents have hereunto interchangeably set their hands and seals Dated the day and Year first above written John G. Emery (Seal) Lucinda Emery (Seal)
Sealed and delivered in the presence of us John M Welch, J. S. Marshall
Received the day of the date of the above indenture of the above named Henry Emery Sen Six hundred and twenty five dollars the consideration Money in full for the above named Lot John G Emery
On the First day of November Anno Domini 1856 before me a Justice of the Peace personally appeared the above named John G Emery and Lucinda his wife and in due form of Law acknowledged the above indenture to be their act and deed and desired the same might be recorded as such and the said Lucinda being of full age and separate and apart from her said husband by me thereon privately examined and the full contents of the above Deed being by me first made known unto her did thereupon declare and say that she did voluntarily and of her own free will and accord sign seal and as her act and deed deliver the above written Indenture Deed or Conveyance without any coercion or compulsion of her said husband Witness my hand and seal the day and year aforesaid A. B. Marshall (Seal)
Recorded May 15th A.D. 1857 Geo A Crane
Recorder

D E E D
John McCawley
wife To
John F Meyer

This Indenture made the Thirtieth day of March in the year of our Lord one thousand Eight hundred and fifty seven Between John McCawley of the City of Philadelphia Penna and Elizabeth his wife of the one part and John F Meyer of Williamsport Borough Lycoming County Penna of the Other part Witnesseth that the said John McCawley and Elizabeth his wife for and in consideration of the Sum of two hundred Dollars lawful Money of the United States of America unto them well and truly paid by the said at and before the sealing and delivery of these presents the receipt whereof is hereby acknowledged they have granted bargained sold aliened enfeoffed released and confirmed and by these presents they do grant bargain sell alien enfeoff release and confirm unto the said John F Meyer and his heirs and assigns All that certain tract or messuage of land containing one hundred acres and allowance of six per cent for roads &c Situate in Cascade Township Lycoming County Penna bounded and described as follows Beginning at a Beech original north East corner of tract in the warrantee name of John Brown then South one hundred and ninety to Beech original South East corner of said Tract then west one hundred and Seventy three and one half perches to a post then north one hundred and ninety to a post, then east one hundred and Seventy three and one half perches to Beech the place of Beginning The said described lot being taken from the said tract in the Warrantee name of John Brown, which was conveyed by Indenture bearing date the twentieth day of December in the One thousand Eight hundred and fifty five by Dr Edward R Mayer and wife to the Present grantor John McCawley and recorded in Deed Book "N N" page 437 as by reference thereto will more fully and at large appear Together with all and Singular the timber Minerals ways Waters Water courses Rights liberties Privileges hereditaments and appurtenances whatsoever thereunto belong-

Requested By: djl 02/24/2014



-ing or in anywise appertaining and the reversions and Remainders Rents Issues and profits thereof and all the Estate Right title interest prop-erty claim and demand whatsoever of them the said John McCawl-ey and wife in law equity or otherwise howsoever of in and to the same and every part thereof To Have and to Hold the said described tract of land its timber Minerals hereditaments and premises hereby granted or mentioned and intended so to be with the appurtenances unto the said John F Meyer and his heirs and assigns to and for the only proper use and behoof of the said John F Meyer and his heirs and assigns forever And the said John McCawley and wife and their heirs executors and Administrators do by these presents covenant grant and agree to and with the said John F Meyer and his heirs and assigns that they the said John McCawley and wife and their heirs all and singular the heredita-ments and premises herein above described and granted or mentioned and intended so to be with the appurtenances unto the said John F Meyer and his heirs and assigns against them the said John McCawley and wife and their heirs and against all and every other Person or Persons whomsoever lawfully claiming or to claim the same or any part thereof from by or under him them or any of them shall and will Warrant and forever Defend In Witness whereof the said Parties to these presents have hereunto interchangeably set their hands and seals Dated the day and year first above written John McCawley (Seal) Elizabeth C McCawley (Seal)

Sealed and delivered in the presence of us The word one being Interlined in Eighth line from the Top over an Erasure of the word Two first before Signing

Alexr Martin Edward Blackwell

Received the day of the date of the above Indenture of the above named Jno F Meyer the Consideration Money above named in full

Witness Alexr Martin Edward Blackwell John McCawley

On the Thirtieth day of March anno Domini 1857 before me an Alderman in and for the City of Philadelphia personally appeared the above named John McCawley and Elizabeth C his wife and in due form of law acknowledged the above Indenture to be their act and deed and desired the same might be recorded as such and the said Elizabeth C being of full age and separate and apart from her said husband by me thereon privately examined and the full contents of the above Deed being by me first made known unto to her did thereupon declare and say that she did voluntarily and of her own free will and accord sign seal and as her act and deed deliver the above written Indenture Deed or conveyance without any coercion or compulsion of her said husband Witness my hand and seal the day and year aforesaid Alexr Martin (Seal)
Alde

Recorded May 15th A.D. 1857

Geo A Cramer

Recorder

# Exhibit # 3




| DB 38/295; 64/413 Subj. tract, Brown Warrant to Proctor | 5/13/1871 |
|---|---|
| Scale: 1 inch= 1000 feet | File: |

Tract 1: 206.0313 Acres, Closure: n00.0000e 0.00 ft. (1/999999), Perimeter=11996 ft.

01 s0e 190p
02 s90w 173.5p
03 n0w 190p
04 n90e 173.5p

# Exhibit # 4

Requested By: djl 02/24/2014



wife their heirs and against all and every other Person or Persons whomsoever Lawfully claiming or to claim the same or any part thereof Shall and will Warrant and forever Defend In Witness whereof the said Parties to these presents have hereunto interchangeably Set their hands and Seals dated the day and Year first above written B. F. Pawling (Seal) Margaret Pawling (Seal) Sealed and delivered in the presence of us the word West Between the 14th & 15 lines interlined before signing Wm. C. Dentler. Christianna P. Dentler $6557 25/100 Received the day of the date of the above Indenture of the above named Samuel McCarty Six thousand five hundred and Eighty seven dollars twenty five cents the consideration Money Mentioned in full. Witness at Signing Wm. C. Dentler B. F. Pawling Lycoming County ss On the First day of April Anno Domini 1857 before me the Subscriber a Justice of the Peace in and for said County personally appeared the above named Benjamin F Pawling and Margaret his wife and in due form of law acknowledged the above Indenture to be their act and deed and desired the same Might be recorded as such and the said Margaret being of full age and separate and apart from her said husband by me thereon privately examined and the full contents of the above deed being by me first made known unto her did thereupon declare and say that she did voluntarily and of her own free will and accord sign seal and as her act and deed deliver the above written Deed or conveyance without any coercion or compulsion of her said husband Witness my hand and seal the day and year above said William C Dentler J.P. (Seal)
Recorded May 19th A.D. 1857 Geo. Heramer Recorder

## Deed

John McCawley & wife To Conrad M. Whitaker

This Indenture Made the Thirtieth day of March in the Year of Our Lord One Thousand Eight hundred and Fifty Seven Between John McCawley of the City of Philadelphia his wife of the one part and Conrad M. Whitacre of of the other Part Witnesseth that the said John McCawley and his wife for and in consideration of the Sum of Eight hundred dollars Lawful Money of the United States of America unto them well and truly paid by the said Conrad M. Whitaker at and before the Sealing and Delivery of these presents the receipt whereof is hereby acknowledged have granted bargained sold aliened enfeoffed released and confirmed and by these presents do grant bargain sell alien enfeoff release and confirm unto the said Conrad M Whitaker and his heirs and assigns All that certain Messuage tenement or tract of Unseated land Situate in Cascade township Lycoming County Pennsylvania and bounded and described as follows. Beginning at a post thence West three hundred and forty seven perches to a post: thence North along other lands of said John McCawley one hundred and ninety perches to a post, thence east along South line of Warrantee Alexander Wilcox three hundred and forty seven perches to a post Thence South along land of one hundred and ninety perches to a post the Place of Beginning containing two hundred and twelve acres Strict Measure the same being a Middle portion of tract Surveyed in the Warrantee name of John Brown and conveyed to said John McCawley by Dr Edward R Mayer and wife on the twentieth day of December Anno Domini One thousand eight hundred and fifty five by Indenture Recorded in Lycoming County in Deed Book N. N. page 437 Together with all and Singular the timber Woods Minerals ways Waters Water courses Rights liberties privileges hereditaments and appurtenances whatsoever thereunto belonging or in anywise appertaining and the reversions and remainders Rents issues and profits thereof and all the Estate right title interest property claim and demand whatsoever of them the said John McCawley and wife in law equity or otherwise of in and to the same and every part thereof To Have and to hold the

Requested By: djl 02/24/2014



said described tract or parcel of Unseated Land its hereditaments and premises hereby granted or mentioned and intended so to be with the appurtenances unto the said Conrad M. Whitaker and his heirs and assigns to and for the only proper use and behoof of the said Conrad M. Whitaker and his heirs and assigns forever And the said John McCawley and wife and their heirs Executors and Administrators do by these presents covenant grant and agree to and with the said Conrad M. Whitaker and his heirs and assigns that they the said John McCawley and wife and their heirs all and Singular the hereditaments and premises herein above described and granted or mentioned and intended so to be with the appurtenances unto the said Conrad M Whitaker and his heirs and assigns against them the said John McCawley and wife and their heirs and against all and every other Person or Persons whomsoever lawfully claiming or to claim the same or any part thereof Shall and will Warrant and forever Defend In Witness whereof the said parties to these presents have hereunto interchangeably set their hands and seals Dated the day and Year first above written John McCawley (Seal) Elizabeth McCawley (Seal) Sealed and delivered in the presence of us Alexr Martin. Edward Blackwell Received the day of the date of the above Indenture of the above named Conrad M. Whitaker the consideration Money above named in full John McCawley Witness Alexr Martin Edward Blackwell

On the Thirtieth day of March Anno Domini 18   before me an Alderman in and for the City of Philadelphia personally appeared the above named   and   his wife and in due form of law acknowledged the above Indenture to be their act and deed and desired the same might be recorded as such and the said   being of full age and separate and apart from her said husband by me thereon privately examined and the full contents of the above deed being by me first made known unto her did thereupon declare and say that she did voluntarily and of her own free will and accord sign seal and as her act and deed deliver the above written Indenture Deed or Conveyance without any coercion or Compulsion of her said Husband Witness my hand and seal the day and Year aforesaid Alexr Martin ald (Seal)

Recorded May 20th A.D. 1857 Geo Abrams
Recorder

Charter
Incorporation of "The Muncy Cemetery"

Charter of Incorporation of "The Muncy Cemetery"
The Subscribers. Daniel Clapp. Peter D Beeber David Lloyd Isaac Bruner. Jacob Cooke. Wm P. I. Painter. Baker Langcake. F. S. Peterman. Benjamin Johnson. Joshua Bowman William M. Rankin Thomas Clapp. Simon Schuyler George Gowers and others Citizens of the Borough of Muncy Lycoming County and State of Pennsylvania and vicinity having associated themselves for the purposes set in the following Articles are desirous of acquiring and enjoying the powers rights and immunities of a corporation or body politic in law for the furtherance of such purposes Under the Name Articles and Conditions Specified in the following articles Article 1 This Corporation shall be known by the name Style and title of the "Muncy Cemetery" and by that name Style & title shall have perpetual Succession and full power and authority to Make have and use a Common Seal with Such devise and inscription as they May deem proper and the same to break alter and renew at their pleasure. and be able to sue and be sued. plead and be impleaded in any court of law or equity before any Judge. Justice or Justices thereof in all manner of Suits. pleas complaints. causes. Matters and demands whatsoever and all and every Matter and thing therein to do in as full and effectual a Manner as any other person or persons bodies politic and corporate within this Commonwealth May or can do and the said Corporation shall further have full power and authority to Make rules bylaws and ordinances and to do everything needful for the conduct. good government Support and advancement of the purposes and

# Exhibit # 5


SBL Alexander Wilcox
post
post
n90e
347p
John
McCawley
n0e
190p
Deed Book 38/301
03/30/1857
05/20/1857
Called 212 acres
Plots as 412.0625 acres
John McCawley
to
Conrad M. Whitaker
190p
s0w
347p
s90w
post
post

# Exhibit # 6

Requested By: djl 02/24/2014

**Deed Book 38/776**
**10/01/1857**
**1/22/1858**





Lloyd for himself his heirs executors and administrators doth Covenant promise and agree to and with the said party of the second part her heirs and assigns that he the said Clinton Lloyd and his heirs all and singular the hereditaments and premises hereby granted or mentioned and intended so to be with the appurtenances unto the said party of the second part her heirs and assigns against them the said Clinton Lloyd & wife and their heirs and against all and every person or persons whomsoever lawfully claiming or to claim the same or any part thereof Shall and will Warrant and forever defend In Witness Whereof the Said Parties have hereunto set their hands and seals the day and year first above written Clinton Lloyd Seal Charlotte B Lloyd Seal
Sealed and delivered in the presence of us D. G. Anthony
Received the date of the above Indenture of the abovenamed Emily Johnston Twenty five hundred dollars in full of the Consideration Money above Mentioned $ 2500.00
On the Sixth day of January A D 1858 before me the Subscriber a Justice of the Peace in and for the County of Lycoming personally appeared the above named Clinton Lloyd & Charlotte B his wife and acknowledged the above Indenture to be their act and deed and desired the same might be recorded as such And the said Charlotte B. being of full age and by me first Separate and apart from her said husbands private ly examined and the Contents of the above Indenture being by me first fully made known to her did declare that she did voluntarily Sign Seal and as her act and deed deliver the same without any compulsion by her said husband Witness My hand and seal the day and Year aforesaid D. G. Anthony J. P. Seal

Recorded January 21. 1858 M. Sechler Recorder
pr. Geo Hoamer

## DEED

John McCawley & wife
To
F. W. Meier

This Indenture made the First day of October in the Year of our Lord one thousand Eight hundred and fifty Seven Between John McCawley of the City of Philadelphia and State of Pennsylvania and Elizabeth his wife of the one part and F. W. Meier of the Same City and State of the other part Witnesseth That the Said John McCawley and Elizabeth his wife for and in consideration of the Sum of Four hundred and twenty five dollars lawful Money of the United States of America unto them well and truly paid by the Said F. W. Meier at and before the Sealing and delivery of these presents the receipt whereof is hereby acknowledged they have granted bargained sold aliened enfeoffed released and confirmed and by these presents they do grant bargain sell alien enfeoff release and confirm unto the Said F. W. Meier his heirs and assigns All that certain Messuage or tract of Unseated land Situate in the Township of Cascade in the County of Lycoming and State of Penn^a aforesaid bounded and described as follows: Beginning at a Hemlock Original Corner of tract John Brown and John Barry; Thence North One hundred and Eighty Six (186) perches to a Gum Stump an original corner of tracts John Brown and Alexander Wilcox; Thence East along a line of last named tracts ninety Seven and a half perches (97½) to a post corner of land lately conveyed by Said John McCawley and wife to Conrad M. Whitaker; Thence South by lands now or late of Said Whitaker One hundred and Eighty Six perches to a post; Thence West ninety Seven and a half (97½) perches to Hemlock the place of Beginning. Containing one hundred and Seven and a half acres (More or less) and allowance of Six per cent for roads &c The said lot hereby conveyed; being taken off of the West end of said tract Warranted in the name of John Brown and conveyed to Said McCawley and wife by Edward H Mayer and wife by Indenture bearing date the twentieth day of December Anno Domini one thousand Eight hundred and fifty five Together with all and Singular the Timbers Minerals Ways Waters Water courses rights Liberties Privileges hereditaments and appurtenances whatsoever thereunto belonging or in any wise appertaining and the Reversions and Remainders Rents issues and profits thereof; and all the Estate right title interest property claim and demand whatsoever of them the Said John McCawley and wife in law equity or otherwise [redacted]
and to the Same and every part thereof To Have and to Hold the said [redacted]
Messuage or tract of unseated land hereditaments and premises hereby grante[redacted]

Requested By: djl 02/24/2014



and intended so to be with the appurtenances all and Singular unto the said F. W. Meier and his heirs and assigns to and for the only proper use and behoof of the said F. W. Meier and his heirs and assigns forever. And the said John McCawley and his heirs Executors and administrators do by these presents covenant grant and agree to and with the said F. W. Meier and his heirs and assigns that they the said John McCawley and Wife and their heirs all and Singular the hereditaments and Premises herein above described and granted or mentioned and intended so to be with the appurtenances unto the said F. W. Meier and his heirs and assigns against them the said John McCawley and Wife and their heirs and against all and every other Person or Persons whomsoever lawfully claiming or to claim the same or any part thereof Shall and Will by these presents Warrant and for ever defend. In Witness Whereof the said parties to these presents have hereunto interchangeably set their hands and Seals dated the day and Year first above written John McCawley (Seal) Elizabeth C McCawley (Seal) Sealed and delivered in the presence of us Fr. W. Binder Martin Lutz

Received the day of the date of the above indenture of the above named F. W. Meier the consideration Money within named in full four hundred and twenty five dollars
Witness Present Fr. W. Binder, Martin Lutz　　　John McCawley

On the Ninth day of October Anno Domini 1857 before me an Alderman in and for the City of Philadelphia Personally appeared the above named John McCawley and Elizabeth his wife and in due form of Law acknowledged the above Indenture to be their act and deed and desired the same might be recorded as such and the said Elizabeth being of full age and separate and apart from her said husband by me thereon privately examined and the full contents of the above Deed being by me first made known unto her did thereupon declare and say that she did voluntarily and of her own free will and accord sign, seal and as her act and deed deliver the above written Indenture Deed or conveyance without any coercion or compulsion of her said husband. Witness my hand and Seal the day and Year aforesaid　Fr. W. Binder (Seal) Alderman

Recorded January 12. 1858 M Sechler Recorder per Geo Kramer

Assignment
Rebecca T. Ecke
To
William C. Ecke

Know all men by these presents that Rebecca T. Ecke the Grantor within named for and in consideration of the Sum of one thousand dollars to me in hand paid by Wm. C. Ecke of the Township of Hepburn in the County of Lycoming at and before the sealing and delivery of these presents the receipt whereof is hereby acknowledged have granted bargained sold assigned and set over and by these presents do grant bargain sell assign and set over unto the said William C. Ecke his heirs or assigns all that the within described tract of Land containing Ninety three acres and one hundred and ten perches and allowance that is herein assigned to by assignment of Caleb Carpenter and Hester his wife bearing date the Eighteenth day of May A.D. 1854 Together with all and Singular the rights and appurtenances whatsoever thereunto belonging or in anywise appertaining and the reversions and remainders rents issues and profits thereof to have and to hold the said tract of land with the appurtenances unto the said Wm. C. Ecke his heirs and assigns to the only proper use and behoof of the said Wm. C. Ecke his heirs and assigns forever And the said Rebecca T Ecke and her heirs the said hereby granted and assigned premises with the appurtenances unto the said Wm. C. Ecke his heirs and assigns against her the said Rebecca T Ecke her heirs and against all and every other person or Persons whomsoever claiming or to claim the same or any part thereof Shall and Will Warrant and forever defend by these presents In Witness whereof the said Rebecca T Ecke hereunto set her hand and seal this 23 day of April A.D. 1857　　Rebecca T Ecke (Seal)
Witness present J. P. Hoffman, J. W. Milnor

Lycoming County SS. Before me the Subscriber one of the Justices of the Peace in and for said County Personally Came the above named Rebecca T. Ecke and in due form of Law acknowledged the above assignment to be her act and Deed and desired the same might be recorded as such Witness My hand and Seal the day and Year above written　J. W. Milnor J.P. (Seal)

Recorded January 13th A.D. 1858 M Sechler Recorder per Geo Kramer dep

See Deed Book T. L. page 65

AEPO000067

# Exhibit # 7


NWC
John
Brown
n90e
97.5p
post
n0e
186p
Deed Book 38/776
10/01/1857
01/22/1858
Called 107 3/4 acres and 6% allowance
Plots as 113.3438 acres
John McCawley and wife
to
F. W. Meier
186p
s0w
Conrad
Whitaker
SEC
John
Brown
97.5p
s90w
post

# Exhibit # 8




| Revised Deed Plot from Original Deed | 7/10/2014 |
| --- | --- |
| Scale: 1 inch= 375 feet | File: DR 38-295.ndp |

Tract 1: 103.0156 Acres, Closure: n00.0000e 0.00 ft. (1/999999), Perimeter=9133 ft.

01 s0w 190p
02 s90w 86.75p
03 n0e 190p
04 n90e 86.75p

# Exhibit # 9




| Revised Deed Plot from Original Deed | 7/10/2014 |
|---|---|
| Scale: 1 inch= 1116 feet | File: DR 38-301.ndp |

Tract 1: 206.0313 Acres, Closure: n00.0000e 0.00 ft. (1/999999), Perimeter=11996 ft.

01 s90w 173.5p
02 n0e 190p
03 n90e 173.5p
04 s0w 190p

# Exhibit # 10



101
100
102
04
105
103
114
119
118
118-A
115
115.01
115.02
115.03
115.04
116
113
112
111
109-D
107
109
110
106
122
121
124
125-A
125
126
CHAPMAN RD.
(DISTRICT 06)
(DISTRICT 48)
TOWNSHIP
CASCADE TOWNSHIP
PLUNKETT'S CREEK
PENNSYLVANIA STATE GAME LAND
ASSESSED AS PART OF 48-500-001
DATE
REVISIONS
BY
KEY MAP
192
211 212 213
232
660 0 660 1320
LYCOMING COUNT
Pennsylvania
CASCADE TWP.
PLUNKETTS CREEK
TOWNSHIP
DISTRICT NO.
06 , 48
TAX MAP NO.
212
DATE PLOTTED:05-12-2005