# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES RICE KENDALL and ANN P. HOCHBERG, as Trustees for The Thomas E. Proctor Heirs Trust, and BANK OF AMERICA, N.A., and JOHN J. SLOCUM, JR. as Trustees for The Margaret O.F. Proctor Trust,<br><br>Plaintiffs,<br><br>v.<br><br>ANADARKO E&P ONSHORE LLC, WALLIS RUN HUNTING CLUB, INC., WALLIS RUN GAS AND OIL, INC.<br><br>Defendants. | Civil Action No. 16-1182 |

## PLAINTIFFS' PRETRIAL MEMORANDUM

Pursuant to Local Civil Rule 16.6 and Appendix B, and following a conference of all counsel on April 24, 2019, Plaintiffs Trustees of the Thomas E. Proctor Heirs Trust and Trustees of the Margaret O.F. Proctor Trust (collectively "the Trusts") submit the following Pretrial Memorandum:

**Date Conference Was Held by Counsel:**

A conference was held on April 24, 2019, at which Attorneys Stockman, Lange, Marshall, Yount, Snyder and Sims participated. The parties have subsequently had further discussions concerning the matters required to be addressed prior to trial pursuant to the Court's local rules.

## A. Statement of Federal Court Jurisdiction:

Plaintiffs are residents of Maine, Massachusetts, North Carolina, and Rhode Island.[1]

Defendant Anadarko E&P Onshore LLC ("Anadarko") is a Delaware limited liability corporation with its principal place of business in Texas. Defendant Alta Marcellus Development, LLC ("Alta"), who acquired Anadarko's upstream assets (including the interests at issue in this action) as of June 1, 2016, is also a Delaware limited liability corporation with its principal place of business in Texas. There is no reason to believe that any of Anadarko's and Alta's members are citizens of Maine, Massachusetts, North Carolina or Rhode Island.

Defendants Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc. (collectively "Wallis Run") are both Pennsylvania corporations with their principal place of business in Pennsylvania.

Jurisdiction is therefore proper pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000 (exclusive of costs and interest), and there is complete diversity of citizenship between all Plaintiffs and all Defendants.

---

[1] The citizenship of the trustees is utilized for diversity purposes where, as here, the action is brought in the names of the trustees and the trustees have the right to sue and be sued on behalf of the trust. *See, e.g., Navarro Savings Association v. Lee*, 446 U.S. 458, 464-66 (1980); *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 201-02 (3d Cir. 2007).

## B. Summary Statement of Facts and Contentions as to Liability:

### Summary of Facts:

This matter involves a dispute over the parties' respective ownership of certain oil, gas, and mineral interests (the "Subsurface Estate") in Cascade Township, Lycoming County, Pennsylvania (the "Subject Property") that were originally part of the John Brown Warrant as initially surveyed and patented in 1792. Prior to March 30, 1857, the John Brown Warrant was owned by John McCawley.

On March 30, 1857, John McCawley and his wife Elizabeth conveyed the surface and subsurface estate of the Subject Property to John Meyer in a deed recorded on May 15, 1857 in Lycoming County Deed Book 38, page 295. The Meyer Deed included the following legal description of the property it conveyed:

> Beginning at a Beech original north East corner of tract in the warrantee name of John Brown then South one hundred and ninety to Beech original South East corner of said tract then west one hundred and seventy three and one half perches to a post then north one hundred and ninety to a post, then east one hundred and seventy three and one half perches to the Beech the place of Beginning containing one hundred acres and allowance of six percent be the same more or less

These metes and bounds define a tract containing 206 acres.

On March 30, 1857, John McCawley conveyed a portion of the John Brown Warrant to Conrad Whitaker in a deed recorded on May 20, 1857 in Lycoming County Deed Book 38, page 301 (the "Whitaker Deed"). The Whitaker Deed provides the following legal description of the tract it conveyed:

> Beginning at a post thence West three hundred and forty seven perches to a post; thence North along other land of said John McCawley one hundred and ninety perches to a post; thence East along South line of Warrantee Alexander Wilcox three hundred and forty seven perches to a post; thence South along land of __________ one hundred and ninety perches to a post the place of Beginning containing two hundred and twelve acres Strict Measure the Same being a Middle Portion of tract surveyed in the Warrantee name of John Brown….

The tract conveyed by the Whitaker Deed begins at the southeast corner of the land conveyed under the Meyer Deed. Pursuant to the legal descriptions the two properties do not overlap. The net result of the Whitaker Deed is that it conveyed approximately 230 acres of the John Brown Warrant by its legal description.

On October 1, 1857, John McCawley purported to convey a portion of the John Brown Warrant to F.W. Meier in a deed recorded on January 22, 1858 in Lycoming County Deed Book 38, page 776 (the "F.W. Meier Deed"). The F.W. Meier Deed provides the following legal description of the tract it conveyed:

> Beginning at a Hemlock original corner of tract John Brown and John Barry; thence North one hundred and eighty six perches to a Linn Stump an original corner of tracts John Brown and Alexander Wilcox; thence East along a line of last named tract ninety seven and a half perches to a post corner of land lately conveyed by said John McCawley and wife to Conrad M. Whitaker; thence South by lands now or late of said Whitaker one hundred and eighty six perches to a post ; thence West ninety seven and a half perches to Hemlock the place of Beginning containing one hundred and seven and a half acres (more or less) and allowance of six percent for roads etc. the said lot hereby conveyed being taken off of the West End of said tract warranted in the name of John

> Brown and conveyed to the said McCawley and his wife by Edward R. Mayer and his wife.

The F.W. Meier Deed commences at the southwest corner of the John Brown Warrant and purports to convey land that was previously encompassed in the Whitaker Deed.

On May 13, 1871, John F. Meyer and his wife Mary M. Meyer conveyed the surface and subsurface of the Subject Property to Thomas E. Proctor in a deed recorded in Lycoming County Deed Book 64, page 413 (the "Proctor Deed"). The Proctor Deed contained a legal description of the Subject Property that mirrored that contained in the Meyer Deed:

> Beginning at a Beech original north East corner of tract in the warrantee name of John Brown. Thence south one hundred and ninety perches to Beech original south East corner of said tract. Thence west one hundred and seventy three and one half perches to a post thence north one hundred and ninety perches to post Thence east one hundred and seventy three and one half perches to Beech the place of Beginning containing one hundred acres and allowance of six percent be the same more or less.

On October 2, 1894, Thomas E. Proctor and his wife Emma H. Proctor subsequently conveyed title to the surface of the Subject Property, among other properties, to Elk Tanning Company in a Warranty Deed recorded at Lycoming County Deed Book 144, Page 398 (the "Elk Tanning Deed"). Once again, the Elk Tanning Deed contained a legal description of the Subject Property similar to that set out in the Meyer Deed and a legal description nearly identical to that set out in the Proctor Deed:

> Beginning at a Beech original north East corner of tract in the warrantee name of John Brown: thence south one hundred and ninety perches to Beech original south east corner of said tract: thence west one hundred and seventy three and one half perches to a post: thence north one hundred and ninety perches to post: thence east one hundred and seventy three and one half perches to Beech the place of beginning containing one hundred acres and allowance of six percent be the same more or less.

The Elk Tanning Deed excepted and reserved to Thomas E. Proctor, his heirs and assigns "all the natural gas, coal, coal-oil, petroleum, marble and all minerals of every kind and character…" (the "Proctor Subsurface Estate"). The Proctor Trusts have succeeded to Thomas E. Proctor's interest, as reserved in the Elk Tanning Deed.

The Wallis Run Defendants are the owners of the lands encompassed in the Whitaker and F.W. Meier Deeds. Wallis Run entered into an oil and gas lease with Chesapeake Appalachia, LLC, whose interest was conveyed to Anadarko. Anadarko then conveyed its interests in the property to Alta as of June 1, 2016.

Anadarko began drilling activities, and Anadarko and Alta have produced and are producing natural gas from the Subject Property. The well identified as "A2H" traverses the Subject Property, and (as of April 26, 2018) a total of $358,908.07 in royalties have been paid to the Wallis Run Defendants, and an additional $205,726.43 in royalties have been held in escrow pending the result of this lawsuit.

**Contentions as to Liability:**

This case presents a straightforward issue of deed construction: the "metes and bounds" description of tract conveyed in the 1857 Meyer Deed at issue undisputedly describes an area of 206 acres, but the Deed goes on to characterize the tract as containing "one hundred acres." Pennsylvania resolves this internal inconsistency with a straight-forward rule of deed construction: the legal description as a matter of law controls over an inconsistent statement of the acreage. *Hoover v. Jackson*, 524 A.2d 1367, 1368 (Pa. Super. 1987); *Dawson v. Coulter*, 106 A. 187, 188 (Pa. 1919); *see also Bosler v. Sun Oil Co.*, 290 A. 718, 719 (Pa. 1937) ("The description of the property by courses and distances is the controlling factor in cases of this kind. Quantity is not decisive in determining title."); *Keech v. Delaware County Trust Co.*, 147 A. 96, 98 (Pa. 1929) ("As a general rule (to which this case is no exception), quantity, courses and distances must give way to boundary lines determined by clearly established monuments, natural or artificial, existing in or on the ground.").

To overcome this default rule, Defendants bear the heavy burden of showing, by clear and convincing evidence, that the legal description in the Meyer Deed was a mistake, and that the stated acreage should control. In order to accomplish this, Defendants must come forward with contemporaneous evidence of John McCawley's intent when he issued the Meyer Deed in 1857.

To establish a scrivener's error, Defendants must offer evidence "that is clear, precise, convincing, and of the most satisfactory character." *In re Trust of Mihordin*, 162 A.3d 1166, 1172 (Pa. Super. 2017). In *Duncan Trust*, 232 A.2d

717, 722 (Pa. 1966), the Pennsylvania Supreme Court considered whether a party "clearly, precisely, and convincingly" established that a scrivener's error had occurred in the preparation of a second amendment to a deed of trust. The only evidence offered was the testimony of the scrivener of the second amendment, who had not discussed the amendment with the settlor. *Id.* The Supreme Court held:

> It is impossible for us to find that the testimony clearly, precisely, and convincingly establishes the existence of a scrivener's error or mistake and it is impossible for anyone *now* to know what Settlor's intention was. The Settlor is dead, and thus cannot enlighten us. The only testimony concerning the mistake is that of the scrivener, twenty-three years after the event; ***who, at no relevant time, discussed the provisions of the amendment directly with the Settlor***.... It is apparent from an examination of the record that Mr. Whitworth's memory had failed him with respect to many facets of the transaction surrounding the execution of the amendment. Even if his memory had served him well, his testimony would not be convincing, since he, by his own words, had absolutely no first –hand knowledge of the Settlor's intent.

*Id.* (second emphasis added).

Here, Defendants cannot produce any evidence that the legal description is erroneous, let alone evidence "that is clear, precise, convincing, and of the most satisfactory character." Indeed, no such evidence currently exists, given the passage of time since the conveyance in 1857. Defendants have no contemporaneous witnesses who can testify regarding the "mistake." And any post-conveyance conduct is irrelevant and cannot satisfy Defendants' evidentiary burden. *See, e.g., Wysinski v. Mazzotta*, 472 A.2d 680, 683 (Pa. Super. 1984)

(holding that a post-conveyance survey "was wholly inadequate, if not irrelevant, to show mistake in the description contained in the 1888 deed."). As such, Defendants cannot establish a scrivener's error or mistake in the Meyer Deed on the basis of instruments executed or recorded after the Meyer Deed. Therefore, fact that John McCawley ultimately may have conveyed more than the entire acreage in the John Brown Warrant does not justify rewriting the boundaries of the initial conveyance in the Meyer Deed, from which the Proctor Trusts trace their ownership interest in the Subsurface Estate.

**Reservation:**

The foregoing summary of facts and contentions as to liability are based upon the Trusts' current expectations as to the form and content of the trial. Should Defendants make arguments that go beyond those made in the parties' summary judgment submissions, the Trusts reserve the right to adduce additional facts and make additional contentions relating to liability.

**C. Statement of Undisputed Facts:**

1. The property at issue in this case (the "Disputed Property") is subsurface property which was part of the John Brown Warrant, and is located in Cascade Township, Lycoming County.

2. Plaintiffs contend that the Disputed Property contains 206 acres, and Defendants contend that the Disputed Property contains 100 acres.

3. The original patent for the John Brown Warrant described it as containing 407 3/4 called acres.

4. In a 1792 survey, the John Brown Warrant is depicted as a rectangle whose eastern and western boundaries run north and south for a distance of 186 perches each, and whose northern and southern boundaries run east and west for a distance of 372 perches each.

5. The metes and bounds description of the John Brown Warrant, when plotted, described a tract containing 432.45 acres.

6. Prior to March 30, 1857, John McCawley had title to the surface and subsurface estate of the entire John Brown Warrant.

7. On March 30, 1857, John McCawley and his wife Elizabeth conveyed the surface and subsurface estate of the Disputed Property to John Meyer in a deed recorded on May 15, 1857 in Lycoming County Deed Book 38, page 295 (the "Meyer Deed").

8. The Meyer Deed included the following description of the property it conveyed, the Disputed Property at issue here:

> All that certain tract or messuage of land containing one hundred acres and allowance of six per cent for roads &c Situate in Cascade Township Lycoming County Penna bounded and described as follows Beginning at a Beech original north East corner of tract in the warrantee name of John Brown then South one hundred and ninety to Beech original South East corner of said tract then west one hundred and seventy three and one half perches to a post then north one hundred and ninety to a post, then east one hundred and seventy three and one half perches to the Beech the place of Beginning.

9. The Meyer Deed contained a numerical acreage call of 100 acres. The metes and bounds description in the Meyer Deed describes a tract containing 206 acres when plotted.

10. On March 30, 1857, John McCawley conveyed a part of the John Brown Warrant to Conrad Whitaker in a deed recorded on May 20, 1857 in Lycoming County Deed Book 38, page 301 (the "Whitaker Deed").

11. The Whitaker Deed provides the following description of the tract it conveyed:

> All that certain messuage tenement or tract of unseated land Situate in Cascade Township Lycoming County Pennsylvania and bounded and described as follows. Beginning at a post thence West three hundred and forty seven perches to a post; thence North along other land of said John McCawley one hundred and ninety perches to a post; thence East along South line of Warrantee Alexander Wilcox three hundred and forty seven perches to a post; thence South along land of __________ one hundred and ninety perches to a post the place of Beginning containing two hundred and twelve acres Strict Measure the Same being a Middle Portion of tract surveyed in the Warrantee name of John Brown….

12. The Whitaker Deed contains a numerical acreage call of 212 acres. The metes and bounds description within the Whitaker Deed, when plotted, describes a tract containing 412 acres.

13. On October 1, 1857, John McCawley conveyed a part of the John Brown Warrant to F.W. Meier in a deed recorded on January 22, 1858 in Lycoming County Deed Book 38, page 776 (the "F.W. Meier Deed").

14. The F.W. Meier Deed provides the following description of the tract it conveyed:

> All that certain messuage or tract of unseated land Situate in the Township of Cascade in the County of Lycoming and State of Penna aforesaid bounded and described as follows: Beginning at a Hemlock original corner of tract John Brown and John Barry; thence North one hundred and eighty six perches to a Linn Stump an original corner of tracts John Brown and Alexander Wilcox; thence East along a line of last named tract ninety seven and a half perches to a post corner of land lately conveyed by said John McCawley and wife to Conrad M. Whitaker; thence South by lands now or late of said Whitaker one hundred and eighty six perches to a post ; thence West ninety seven and a half perches to Hemlock the place of Beginning containing one hundred and seven and a half acres (more or less) and allowance of six percent for roads & the said lot hereby conveyed being taken off of the West End of said tract warranted in the name of John Brown and conveyed to the said McCawley and his wife by Edward R. Mayer and his wife.

15. The F.W. Meier Deed contains a numerical acreage call of 107.5 acres. The metes and bounds description within the F.W. Meier deed, when plotted, describes a tract containing 113 acres.

16. The numerical stated acreage calls within the Meyer, Whitaker and F.W. Meier Deeds, when added together, total 419.5 acres.

17. The Meyer and Whitaker Deeds' stated numerical acreage calls are less than the acreage yielded by the plotting of their metes and bounds descriptions.

18. On May 13, 1871, John F. Meyer and his wife Mary M. Meyer conveyed the surface and subsurface of the Subject Property to Thomas E. Proctor in a deed recorded in Lycoming County Deed Book 64, page 413 (the "Proctor Deed").

19. The Proctor Deed provides the following description of the tract it conveyed:

> [A]ll that certain piece parcel or tract of land situate lying and being in the Township of Cascade in the County of Lycoming and state of Pennsylvania bounded and described as follows, to wit, Beginning at a Beech original north East corner of tract in the warrantee name of John Brown. Thence south one hundred and ninety perches to Beech original south East corner of said tract. Thence west one hundred and seventy three and one half perches to a post thence north one hundred and ninety perches to post Thence east one hundred and seventy three and one half perches to Beech the place of Beginning containing one hundred acres and allowance of six percent be the same more or less.

20. On October 2, 1894, Thomas E. Proctor and his wife Emma H. Proctor subsequently conveyed title to the surface of the Subject Property, among other properties, to Elk Tanning Company in a Warranty Deed recorded at Lycoming County Deed Book 144, Page 398 (the "Elk Tanning Deed").

21. The Elk Tanning Deed provides, as material here, the following description of one of the tracts it conveyed:

> All that certain piece, parcel or tract of land situate, lying and being in the Township of Cascade in the County of Lycoming and State of Pennsylvania bound and described as follows, to wit: Beginning at a Beech

> original north East corner of tract in the warrantee name of John Brown: thence south one hundred and ninety perches to Beech original south east corner of said tract: thence west one hundred and seventy three and one half perches to a post: thence north one hundred and ninety perches to post: thence east one hundred and seventy three and one half perches to Beech the place of beginning containing one hundred acres and allowance of six percent be the same more or less.

22. The Elk Tanning Deed excepted and reserved to Thomas E. Proctor, his heirs and assigns "all the natural gas, coal, coal-oil, petroleum, marble and all minerals of every kind and character…."

**[The Trusts, Anadarko and Alta agree on this fact, but Wallis Run refuses to stipulate, even though there is no reasonable dispute as to this fact.**

23. The Trusts have succeeded to Thomas E. Proctor's interest, as reserved in the Elk Tanning Deed.**]**

24. Wallis Run has acquired the property described in the Whitaker Deed and F.W. Meier Deed.

25. Anadarko and its successor Alta succeeded to an interest in the property conveyed by the Whitaker and F.W. Meier deeds, and claim an interest in the Disputed Property pursuant to an oil and gas lease with Wallis Run Gas and Oil, Inc.

26. Until an effective date of June 1, 2016, Anadarko has produced natural gas on the Disputed Property.

27. As of June 1, 2016, Alta has been producing natural gas on the Disputed Property.

## D. Description of Damages:

The Trusts have incurred damages because Anadarko and Alta have trespassed upon the Trusts' Subsurface Estate and have converted natural gas from the Subject Property that in fact belongs to the Trusts. As a result, Anadarko, Alta and the Wallis Run Defendants have been unjustly enriched at the Trusts' expense. Because Anadarko and Alta produced the oil and gas without the Trusts' authorization, the Trusts are entitled to the net profits earned from the extraction and sale of gas from the Property. *See, e.g., Sabella v. Appalachian Dev. Corp.,* 103 A.3d 83, 99 (Pa. Super. 2014). This information is in the possession of Anadarko and Alta.

Alternatively, at a minimum, the Trusts are entitled to any past payments made to Wallis Run under any lease, and all future payments that would be owed under any such lease. As of April 26, 2019, a total of $358,908.07 in royalties have been paid to the Wallis Run Defendants, and an additional $205,726.43 in royalties have been held in escrow. All of these sums should be ordered paid to the Trusts as damages.

## E. Identification of Witnesses and Specialties and Qualifications of Expert Witnesses:

**Charles Rice Kendall**, c/o undersigned counsel.

**Andrew J. Grafton,** Jim Bourbeau Land Service, Inc., 11106 State Highway 18, Conneaut Lake, Pennsylvania 16316. Mr. Grafton is a GIS Manager who specializes in GIS Data and Mapping. He received a Geography Degree with

a Minor in GIS from Clarion University of Pennsylvania. He has over ten years of experience in GIS Data and mapping, including in the oil and gas industry. A particular focus of his career has been mapping in Lycoming County and the surrounding counties in connection with historical warrants and legal descriptions in deeds. Mr. Grafton has significant experience locating and mapping properties from deed descriptions and references to the warrant maps onto modern day maps.

**One or more representatives of Anadarko or Alta,** to adduce facts relating to their net profits and, if necessary, to confirm the royalties paid or held in suspense with respect to the Subject Property.

**Reservations:**

If the Trusts are required to introduce evidence to support the conclusion that they are the heirs of Thomas E. Proctor, the Trusts may need to call additional representatives of the Trusts as witnesses, to establish the Proctor family genealogy, the establishment of and transfer of assets into the Thomas E. Proctor Heirs Trust, and the creation and disposition of the Margaret O.F. Proctor Trust.

If the Trusts are required to introduce evidence going to the legal effect of a 1930 tax sale of an adjoining parcel (not at issue in this lawsuit) – an issue raised for the first time this afternoon by counsel for Wallis Run – the Trusts may need to call additional witnesses to establish the authenticity and admissibility of relevant documents.

The Trusts further reserve the right to call any witness listed in any other party's pretrial statement, to call witnesses for rebuttal, and to supplement this witness list based upon the contents of Defendants' pretrial statements.

## F. Summary of Testimony of Expert Witnesses:

Mr. Grafton is expected to testify as to the manner in which metes and bounds descriptions contained in the deeds at issue plot onto the surface of the Earth, and to offer his views on the manner in which the Meyer Deed at issue described its metes and bounds (and namely, that they were based upon an actual survey). A copy of Mr. Grafton's expert report, which summarizes his testimony, was submitted to the Court as ECF No. 56-2.

## G. Special Comments about Pleadings and Discovery:

Certain discovery requests served upon Anadarko remain to be supplemented in a verified response suitable for introduction at trial (although Anadarko's initial responses indicated that it was in the process of gathering the requested information and that it would supplement). Some of the requested information is directed at the volume and value of the oil and gas extracted from the Subject Property and, therefore, directly impacts the damages calculations. Counsel for Plaintiffs have requested that the discovery be supplemented on or before May 8, 2019; to date, counsel for Anadarko has informally provided certain of the information that remains to be supplemented.

## H. Summary of Legal Issues Involved and Legal Authorities Relied Upon:

The Trusts incorporate by reference the Memorandum in Support of Plaintiffs' Motion for Summary Judgment (ECF No. 55), Plaintiffs' Brief in Opposition to Defendants Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc.'s Motion for Summary Judgment (ECF No. 67), and Plaintiffs'

Consolidated Reply Brief in Support of Motion for Partial Summary Judgment and Brief in Opposition to Defendant Anadarko's Motion for Summary Judgment (ECF No. 75).

**I. Stipulations Desired:**

The Trusts seek a stipulation that they are the successors to Thomas E. Proctor's interest in the Subject Property. (The Trusts, Anadarko and Alta agree on this fact, but Wallis Run has refused to agree, without any reasonable factual basis. Absent such a stipulation, the Trusts expect that at least one full day's testimony, and dozens of exhibits, will need to be introduced to establish 125 years of the Proctor family's genealogy and the creation of the Trusts.)

The Trusts also believe that the potential amount of compensatory damages (either net profits or royalties accrued) should be suitable for stipulation in the event of a verdict in the Trusts' favor.

**J. Estimated Number of Trial Days:**

The Trusts request that the Court bifurcate the pending trial, trying first Defendants' quiet title and declaratory judgment counterclaims (which are tried to the Court). Following the Court's ruling on those matters, the Trusts expect that the parties can resolve any remaining claims among themselves or can, at a minimum, present a jury trial limited to the computation of damages. The Trusts anticipate that a bench trial directed solely to the deed construction issues presented in the counterclaims would take **one day**.

The parties anticipate that a jury trial as to all issues would take **two days**, inclusive of jury selection.

However, if the Trusts are required to enter into evidence proof that they are the successors of Thomas E. Proctor, the Trusts believe that **an additional trial day** is likely to be necessary (given the number of heirs and the need to show patterns of inheritance over a 125-year period).

Further, for the first time this afternoon, Wallis Run has suggested that it seeks to rely on a 1930 tax sale, involving an adjoining part of the John Brown Warrant that is not at issue here, in support of its positions at trial (even though it has made a contrary admission in its Answer). The Trusts believe that this is irrelevant to the issues at hand. If, however, the legal effect of a 1930 tax sale is to be resolved in this case, the Trusts anticipate that **an additional three trial days** will be required.

## K. Any Other Matter Pertinent to the Case:

As noted above, the Trusts suggest that the Court bifurcate the pending trial, and first try Defendants' counterclaims to the Court.

The Trusts request a jury questionnaire, to ascertain (*inter alia*) whether potential jury members have an interest in natural gas-bearing properties, have entered into oil or gas leases, have received royalties on account of natural gas production, or have any other interest in oil and gas properties, wells, or leases.

**L. Append Prenumbered Schedule of Exhibits with Brief Identification of Each on the Clerk's Exhibit Form:**

An exhibit list is attached hereto. Counsel have agreed that they do not have to list the exhibits they intend to use for cross-examination.

The Trusts reserve the right to utilize any exhibit identified in Defendants' exhibit lists. The Trusts further reserve the right to amend this list should additional issues require proof at trial (including, without limitation, the Trusts' status as successors to Thomas E. Proctor's interest or the legal effect of a 1930 tax sale).

**M. Any Special Verdict Questions:**

***If necessary:***

1. Which of the following defines the property conveyed in the March 30, 1857 deed from John McCawley and his wife Elizabeth to John Meyer: (a) the "metes and bounds" description of the property boundaries, or (b) the acreage number stated in the deed?

2. Have Defendants proven, with clear, precise and convincing evidence, that John or Elizabeth McCawley were mistaken as to the property they were conveying in the March 30, 1857 deed to John Meyer?

3. If your answer to question 1 is "(a)," or if your response to question 2 is "no," what sum is needed to compensate the Proctor Trusts for the natural gas taken from the property in dispute?

**O. Designation of Deposition Contents:**

No depositions were taken in this case, and therefore no certification pursuant to Local Rule 30.10 is required.

**P. Requests for Findings of Fact and Law for Non-Jury Trial:**

**Proposed Findings of Fact:**

1. The property at issue in this case (the "Subject Property") is part of the John Brown Warrant, and is located in Cascade Township, Lycoming County.

2. Prior to March 30, 1857, John McCawley had title to the surface and subsurface estate of the entire John Brown Warrant.

3. On March 30, 1857, John McCawley and his wife Elizabeth conveyed the surface and subsurface estate of the Subject Property to John Meyer in a deed recorded on May 15, 1857 in Lycoming County Deed Book 38, page 295 (the "Meyer Deed").

4. The Meyer Deed included the following legal description of the property it conveyed, the Subject Property at issue here:

> All that certain tract or messuage of land containing one hundred acres and allowance of six per cent for roads &c Situate in Cascade Township Lycoming County Penna bounded and described as follows Beginning at a Beech original north East corner of tract in the warrantee name of John Brown then South one hundred and ninety to Beech original South East corner of said tract then west one hundred and seventy three and one half perches to a post then north one hundred and ninety to a post, then east one hundred and seventy three and one half perches to the Beech the place of Beginning.

5. The legal description in the Meyer Deed defines a tract containing 206 acres.

6. The legal description in the Meyer Deed reflects that a survey was conducted on the ground at the time of or prior to the 1857 conveyance.

There is no overlap between the property conveyed under the Meyer Deed and any other conveyance from John McCawley of the John Brown Warrant.

7. There is no evidence that McCawley did ***not*** intend to convey the specifically-described land in the Meyer Deed to John Meyer.

8. Defendants have no contemporaneous witnesses can testify regarding whether the legal description contained in the Meyer Deed was a mistake.

9. The Meyer Deed conveyed 206 acres of the John Brown Warrant to John Meyer.

10. On May 13, 1871, John F. Meyer and his wife Mary M. Meyer conveyed the surface and subsurface of the Subject Property to Thomas E. Proctor in a deed recorded in Lycoming County Deed Book 64, page 413 (the "Proctor Deed").

11. The Proctor Deed provides the following legal description of the tract it conveyed:

> [A]ll that certain piece parcel or tract of land situate lying and being in the Township of Cascade in the County of Lycoming and state of Pennsylvania bounded and described as follows, to wit, Beginning at a Beech original north East corner of tract in the warrantee name of John Brown. Thence south one hundred and ninety perches to Beech original south East corner of said tract. Thence west one hundred and seventy three and

> one half perches to a post thence north one hundred and ninety perches to post Thence east one hundred and seventy three and one half perches to Beech the place of Beginning containing one hundred acres and allowance of six percent be the same more or less.

12. On October 2, 1894, Thomas E. Proctor and his wife Emma H. Proctor subsequently conveyed title to the surface of the Subject Property, among other properties, to Elk Tanning Company in a Warranty Deed recorded at Lycoming County Deed Book 144, Page 398 (the "Elk Tanning Deed").

13. The Elk Tanning Deed provides, as material here, the following legal description of one of the tracts it conveyed:

> All that certain piece, parcel or tract of land situate, lying and being in the Township of Cascade in the County of Lycoming and State of Pennsylvania bound and described as follows, to wit: Beginning at a Beech original north East corner of tract in the warrantee name of John Brown: thence south one hundred and ninety perches to Beech original south east corner of said tract: thence west one hundred and seventy three and one half perches to a post: thence north one hundred and ninety perches to post: thence east one hundred and seventy three and one half perches to Beech the place of beginning containing one hundred acres and allowance of six percent be the same more or less.

14. The Elk Tanning Deed excepted and reserved to Thomas E. Proctor, his heirs and assigns "all the natural gas, coal, coal-oil, petroleum, marble and all minerals of every kind and character…."

15. The Thomas E. Proctor Heirs Trust and the Margaret O.F. Proctor Trust have succeeded to Thomas E. Proctor's interest, as reserved in the Elk Tanning Deed.

16. Anadarko began drilling activities, and Anadarko and Alta have produced and are producing natural gas from the Subject Property.

17. The well identified as "A2H" traverses the Subject Property

18. As of April 26, 2018, a total of $358,908.07 in royalties have been paid to the Wallis Run Defendants, and an additional $205,726.43 in royalties have been held in escrow pending the result of this lawsuit.

**Proposed Conclusions of Law:**

**A. The Meyer Deed conveyed 206 acres to John F. Meyer.**

1. Courts "discern the parties' intent by looking to the language of the deed." *Murphy v. Karnek*, 160 A.3d 850, 860 (Pa. Super. 2017).

2. "The meaning of a deed—that is, what it covers is a question of law for the court," and "[w]here the boundary lines of a grant are fixed by the grant itself, the question as to what these lines are is purely one of law." *Starling*, 162 A.3d at 340 (quoting *Miles Land Co. v. Hudson Coal Co.*, 91 A. 1061, 1064 (Pa. 1914)).

3. The Meyer Deed conveys the tract defined by its metes and bounds, notwithstanding a contrary misstatement as to the number of acres those metes and bounds encircle. *See Starling v. Lake Meade Prop. Owners Ass'n*, 162 A.3d 327, 341 (Pa. 2017) ("[t]he nature and quantity of the interest conveyed by a deed 'must be ascertained from the instrument itself.'") (quoting *In re Property of W.R. Covert*, 409 Pa. 290, 186 A.2d 20, 23 (Pa. 1962)).

4. Under Pennsylvania law, the legal description set out in the deed, not any reference to acreage, controls. *Hoover v. Jackson*, 524 A.2d 1367, 1368 (Pa. Super. 1987).

5. In *Hoover*, the Superior Court considered "the weight to be given to the amount of acreage recited in a deed when it is at variance with the actual acreage enclosed within the specific boundaries defined in the deed description." *Hoover*, 524 A.2d at 1368. The plaintiff contended the stated acreage of 125 acres should trump the description of the property set out in the deed, which defined a tract that in fact contained 152.3 acres. *Id.* at 1371.

6. The Superior Court rejected this contention, holding:

> "Evidence of the acreage of land, especially where, as in this case, the number of acres is followed by the words 'more or less' has little weight as against specific boundaries and is in its nature an uncertain method of description and often a mere estimate. Where, however, . . . a doubt exists as to the actual location of the boundary and the writing contains no words to definitely fix the line by either metes and bounds or monuments on the ground, evidence of acreage becomes a material factor in the determination of the intention of the parties . . . ." In the instant case, the courses and distances, as well as the lines of adjoiner, stated in the Findley deed were sufficiently specific so that they could be located on the ground. The trial court did not err when it relied upon the deed description in preference to the amount of acreage recited in the deed.

*Id.* at 1371-1372 (quoting *Dawson v. Coulter*, 106 A. 187, 188 (Pa. 1919));

7. Therefore, the rule in Pennsylvania is that where a metes and bounds description is provided, it controls over any contrary stated acreage. *Id.*; *see also*

*Bosler v. Sun Oil Co.*, 290 A. 718, 719 (Pa. 1937) ("The description of the property by courses and distances is the controlling factor in cases of this kind. Quantity is not decisive in determining title."); *Keech v. Delaware County Trust Co.*, 147 A. 96, 98 (Pa. 1929) ("As a general rule (to which this case is no exception), quantity, courses and distances must give way to boundary lines determined by clearly established monuments, natural or artificial, existing in or on the ground."); *Raida v. Kusner*, No. 390 WDA 2013, 2014 WL 10919601, at *2 (Pa. Super. May 13, 2014) (holding that plaintiff's "reliance on the language describing Kusner's parcel as 'containing 10 acres, more or less' is unavailing"); *Phillips v. Crist*, 33 Pa. Super. 445, 450 (Pa. Super. 1907) ("But it is well decided that quantity is not decisive in determining title. Description of land by quantity does not amount to a covenant that the land shall equal the quantity mentioned in the deed. The grantee has a right to all the land within the boundaries…") (internal citation omitted).

8. Here, the Meyer Deed sufficiently describes the specific boundaries of the land being conveyed. As such, the legal description in the Meyer Deed controls, and the reference to acreage does not. *Hoover*, 524 A.2d at 1368.

### B. Parol evidence cannot alter the clear terms of the legal description in the Meyer Deed.

9. Parol evidence cannot alter the clear terms of the legal description contained in the Meyer Deed. As the Superior Court held in *Wysinski v. Mazzotta*:

> Appellants' argument that there is a latent ambiguity in the description for lot 456 that becomes apparent when the description is applied to the ground must fail. There can be no latent ambiguity where, as here, there was land

> owned by the grantor which satisfied the description contained in the deed of conveyance. In such cases, parol evidence cannot vary the terms of the written instrument of conveyance.

472 A.2d 680, 683 (Pa. Super. 1984); *see also Kimmel v. Svonavec*, 85 A.2d 146, 150 (Pa. 1952) ("If a subject matter exists which satisfies the terms of the instrument of conveyance, there is no reason for allowing parol evidence.").

10. Here, there is no contention that McCawley did not own the land described in the Meyer Deed. Thus, Defendants may not use parol evidence to vary the clear legal description in the Deed. *Wysinski*, 472 A.2d at 683. This is particularly true where, as here, the legal description "appeared constantly in deed after deed in the chain of title…." *Id.*

11. Post-conveyance conduct is insufficient to alter the terms of a deed. *Id.* (where a deed clearly expressed the property boundaries, a post-conveyance survey "was wholly inadequate, if not irrelevant, to show mistake in the description contained in the 1888 deed.").

12. As such, Defendants cannot establish a scrivener's error or mistake in the Meyer Deed on the basis of instruments executed or recorded after the Meyer Deed.

13. Therefore, fact that John McCawley ultimately may have conveyed more than the entire acreage in the John Brown Warrant is irrelevant to determining what property was conveyed in the Meyer Deed.

### C. There is insufficient evidence to establish that the legal description was a scrivener's error or mistake.

14. To establish a scrivener's error, Defendants must offer evidence "that is clear, precise, convincing, and of the most satisfactory character." *In re Trust of Mihordin*, 162 A.3d 1166, 1172 (Pa. Super. 2017).

15. In *Duncan Trust*, 232 A.2d 717, 722 (Pa. 1966), the Pennsylvania Supreme Court considered whether a party "clearly, precisely, and convincingly" established that a scrivener's error had occurred in the preparation of a second amendment to a deed of trust.

16. The only evidence offered was the testimony of the scrivener of the second amendment, who had not discussed the amendment with the settlor. *Id.* The Supreme Court held:

> It is impossible for us to find that the testimony clearly, precisely, and convincingly establishes the existence of a scrivener's error or mistake and it is impossible for anyone *now* to know what Settlor's intention was. The Settlor is dead, and thus cannot enlighten us. The only testimony concerning the mistake is that of the scrivener, twenty-three years after the event; who, at no relevant time, discussed the provisions of the amendment directly with the Settlor…. It is apparent from an examination of the record that Mr. Whitworth's memory had failed him with respect to many facets of the transaction surrounding the execution of the amendment. Even if his memory had served him well, his testimony would not be convincing, since he, by his own words, had absolutely no first –hand knowledge of the Settlor's intent.

*Id.* (emphasis in original).

17. Here, Defendants have not produced evidence "that is clear, precise, convincing, and of the most satisfactory character" to establish that the legal description is a scrivener's error.

18. Defendants have no contemporaneous witnesses or evidence to establish that the legal description was a "mistake." Absent such evidence, Defendants cannot "clearly, precisely, and convincingly" establish a scrivener's error. *See Duncan Trust*, 232 A.2d at 722.

**D. Conclusion**

19. The Trusts have title to 206 acres of land of the John Brown Warrant, as described by the metes and bounds set out in the Meyer Deed.

**Reservation:**

The Trusts reserve the right to propose additional or revised proposed findings and conclusions based upon the evidence adduced at trial.

Dated: May 1, 2019

Respectfully submitted,

/s/ *Paul K. Stockman*

Paul K. Stockman (Pa. ID No. 66951)
KAZMAREK MOWREY CLOUD LASETER LLP
One PPG Place, Suite 3100
Pittsburgh, PA 15222
pstockman@kmcllaw.com

Laura A. Lange (Pa. ID No. 310733)
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
llange@mcguirewoods.com