IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES RICE KENDALL and ANN P. HOCHBERG, as Trustees for The Thomas E. Proctor Heirs Trust, and BANK OF AMERICA, N.A., and JOHN J. SLOCUM, JR. as Trustees for The Margaret O.F. Proctor Trust,<br><br>Plaintiffs,<br><br>v.<br><br>ANADARKO E&P ONSHORE LLC, WALLIS RUN HUNTING CLUB, INC., WALLIS RUN GAS AND OIL, INC.,<br><br>Defendants. | Civil Action No. 16-1182<br><br>Judge Malachy E. Mannion |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE***

**I.     Introduction and Summary**

      This matter, a dispute over the extent of the parties' respective ownership of certain oil, gas, and mineral interests (the "Subsurface Estate") beneath a tract of land in Lycoming County (the "Subject Property"), involves a question of deed construction that requires the straightforward application of well-settled principles of Pennsylvania law.  In March 1857, John McCawley conveyed to John Meyer a tract of land whose metes and bounds description encompasses 206 acres, although a numerical acreage of 100 acres was listed (the "Meyer Deed").  The question left for trial is ascertaining McCawley's contemporaneous intent when he executed the 1857 Meyer Deed.  There is no contemporaneous parol evidence reflecting

1

McCawley's intention, and that intention can and should be ascertained solely from the face of the instruments themselves.

Nonetheless, it appears that Defendants seek to submit a variety of evidence and testimony that goes far beyond the face of those documents and the inferences that can legitimately arise from the language of the relevant instruments:

- Defendants' exhibit lists are replete with (and Defendants' experts purport to rely on) evidence relating to conduct occurring after the 1857 conveyance – in some cases, more than a century after the transaction at issue. However, the law in Pennsylvania is clear: where parol evidence is permitted to ascertain the intent of the grantor, only contemporaneous records and testimony is relevant and admissible. The evidence Defendants seek to submit does not meet that qualification and, simply put, is irrelevant to showing McCawley's intent in executing the Meyer Deed.
- More broadly, Defendants' case appears to consist almost exclusively of the opinion testimony of purported legal "experts." Their witnesses, Messrs. Holland, Rudoy and Hoffmeyer, are attorneys, and their proffered testimony (according to their expert reports) consists wholly of inadmissible legal opinions. Defendants are asking this Court discard its duty to analyze and apply the law, and instruct the jury accordingly, in the apparent hope that the jury will simply adopt their experts' legal conclusions. This attempt to cloak a legal opinion under the façade of expert testimony is improper.

- Moreover, these witnesses purport to testify as to the intent of John McCawley in 1857, a matter on which they unquestionably lack personal knowledge, and which in fact involves pure speculation. They fail to set out any grounds that qualify them to opine on the intent of an individual in a transaction that occurred more than 150 years ago, when the jury is as able as these gentlemen to draw inferences from the historical record.

Accordingly, Defendants should be precluded from offering evidence of subsequent landowners' post-1857 transactions, and from offering any legal opinions or speculation from Messrs. Holland, Rudoy and Hoffmeyer.

## II. Argument

The purpose of a motion *in limine* is to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). Rule 103(d) of the Federal Rules of Evidence expressly encourages the presentation of pretrial motions *in limine* in order to prevent the fact-finder from being exposed to inadmissible evidence. Fed. R. Evid. 103(d). Further, Rule 104 provides in relevant part that "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." Fed. R. Evid. 104(a).

### A. Post-Conveyance Conduct Is Inadmissible as Evidence of the Meaning of the 1857 Meyer Deed.

Irrelevant evidence is, of course, not admissible. *See* Fed. R. Evid. 402. And evidence is only relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" *and* "the fact is of consequence in determining the action." Fed. R. Evid. 401.

This bedrock principle precludes the jury's and Court's consideration of post-1857 transactions as circumstantial evidence of John McCawley's purported intent in 1857. This Court's "primary object" in construing a deed is "to ascertain and effectuate what ***the parties*** intended," that intent "must be ascertained from the instrument itself" and the courts "seek to ascertain not what the parties may have intended by the language but what is the meaning of the words." *Murphy v. Karnek*, 160 A.3d 850, 858-59 (Pa. Super. 2017) (emphasis added; internal quotation omitted).

Here, Defendants seek to introduce extrinsic evidence – in the form of subsequent land transactions – in order to interpret the Meyer Deed. However, where an instrument is ambiguous, the court "may consider ***only*** such parol evidence as bears upon ***the grantor's contemporaneous intention*** in preparing" the deed. *See Starling v. Lake Meade Prop. Owners Ass'n*, 162 A.3d 327, 341 (Pa. 2017) (emphasis added; internal alterations omitted). At best, then, Defendants can only introduce ***contemporaneous*** evidence relating to John McCawley's intent in drafting the 1857 Meyer Deed. Any evidence relating to conduct that occurred

4

after execution of the Meyer Deed, by persons other than McCawley or Meyer, is irrelevant and inadmissible.

In *Starling*, the appellants sought to introduce evidence of the parties' and successors' conduct after a 1968 deed in order to interpret a subdivision plan and deed, but the Supreme Court explained that "certainly no extrinsic evidence after the 1968 Deed has any bearing upon [the grantor's] 'apparent object or purpose ... when [the Plan was recorded].'" *Id.* at 341 n.23. (quoting *Highland v. Commonwealth*, 161 A.2d 390, 402 (1960)). As such, the Supreme Court rejected any reliance upon (i) evidence of who paid taxes on the disputed property; (ii) a 1974 survey of the property; or (iii) a 2007 admission by the appellee, because such evidence "cannot…inform [the grantor's] intent at the time of Recordation." *Id.* The Court concluded that such evidence "is (and by definition, must be) ***legally irrelevant*** to the resolution of any factual dispute regarding the contemporaneous intention reflected in a conveyance that preceded the evidence by years." *Id.* (emphasis added).

This is especially the case given that Defendants are alleging that the 1857 Meyer Deed embodies a mistake:

> A person who seeks to rectify a deed on the ground of mistake must establish in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made conformable continued ***concurrently in the minds of all the parties down to the time of its execution***; and also must be able to show exactly and precisely the form to which the deed ought to be brought.

*Armstrong County Bldg. & Loan Ass'n v. Guffey,* 200 A. 160, 164 (Pa. Super. 1938) (emphasis added; internal quotation omitted).

In this case, conduct post-dating McCawley's conveyance of the 1857 Meyer Deed is irrelevant – especially subsequent conveyances of the surface and dealings of surface owners following the severance of the land. What matters here – where the subsurface interests were severed from the surface estate in 1894 – is not what subsequent surface owners may have done or believed, or what accommodations those subsequent owners may have reached among themselves (to which the Trusts' predecessors were not party), but rather, what took place "***at the time of the execution of the instrument***." *Starling,* 162 A.3d at 341 (emphasis in original). In other words, what matters here is what McCawley sold to Meyer in 1857, what Meyer sold to Thomas Proctor in 1871, and what Proctor excepted and reserved in 1894. All of those instruments describe the property at issue in fundamentally-identical terms, setting out metes and bounds that enclose a 206-acre tract. It does not matter what subsequent surface owners, outside the Trusts' chain of title, may have done after 1894 to resolve matters among themselves, and any such evidence should be excluded at trial.

    **B.    Defendants' Experts Improperly Proffer Only Legal Conclusions and Speculation as to the Intent of Someone Who Is Long Dead.**

More broadly, the bulk of Defendants' case appears to consist of "expert" testimony about the law, or attorneys' *post hoc* surmises as to what John McCawley intended more than 160 years ago. In particular:

- Wallis Run seeks to offer the testimony of Fred A. Holland, an attorney with the law firm of Murphy Butterfield & Holland, P.C. Wallis Run expects that Mr. Holland will "testify that Wallis Run Gas and Oil, Inc. and Wallis Run Hunting Club, Inc. have superior title to gas and oil rights beneath Lycoming County Tax Parcel No. 06-212-101." ECF No. 39-1, at 4. In his "expert report," Mr. Holland reviews the title history and analyzes Pennsylvania case law. *See id.* at 3. He also speculates at to the intent of the grantors in the Deed, John McCawley and his wife, contending that "[t]he McCawleys could not have intended to convey more than they owned." *Id.*
- Anadarko seeks to offer the testimony of Bruce Rudoy, an attorney with the law firm of Babst, Calland, Clements and Zomnir, P.C. In his "expert report," Mr. Rudoy reviews the deeds at issue and analyzes Pennsylvania caselaw. *See* ECF No. 47, at 6. He opines that the plotted acreages of the relevant deeds contain a "scrivener's error." *Id.* at 7. He also relies upon subsequent transactions and surveys to conclude that the plotted metes and bounds of the Meyer deed have been disregarded, which he believes affords relief under the legal concept of adverse possession and the affirmative defense of laches. *Id.* at 7-8. Mr. Rudoy explicitly bases his opinion on his "knowledge of Pennsylvania case law." *Id.* at 10.
- Anadarko also seeks to offer the testimony of William Hoffmeyer, an attorney with the law firm of Hoffmeyer & Semmelman, LLC. In

Mr. Hoffmeyer's "expert report," he sets out the "Legal Research" he conducted and his identified "principles of law" he "determined from the legal research" that he performed. ECF No. 46, at 5.

Mr. Hoffmeyer reaches his conclusion after "reviewing the case law concerning the interpretation of deeds, when there, in fact, is an obvious discrepancy or ambiguity between the amount of acreage and the description." *Id.* at 7.

Indeed, Anadarko's pretrial statement tellingly incorporates the Hoffmeyer and Rudoy expert reports as its "summary of legal issues involved and legal authorities relied upon." *See* ECF No. 90, at 8.

### 1. The Proffered Expert Testimony Should Be Excluded Because It Consists of Improper Legal Opinion.

Under settled Third Circuit precedent, "an expert witness is prohibited from rendering a legal opinion," because "it would usurp the District Court's pivotal role in explaining the law to the jury." *Berckeley Investment Group, Ltd. v. Colkitt,* 455 F.3d 195, 217 (3d Cir. 2006) (citing *First National State Bank v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981)); *see also United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991) ("it is not permissible for a witness to testify as to the governing law.").[1]

---

[1] District courts in this Circuit uniformly agree. *See, e.g., Pennsylvania Game Comm'n v. Thomas E. Proctor Heirs Tr. & the Margaret Proctor Tr.*, No. 1:12-CV-01567, 2019 U.S. Dist. LEXIS 28522, at *16 (M.D. Pa. Feb. 21, 2019) ("Testimony about the governing law and testimony that amounts to legal conclusions are not helpful to the court or the factfinder."); *Jordan v. Temple Health Sys., Inc.*, No. CV 16-5561, 2018 WL 3649019, at *2 (E.D. Pa. Aug. 1,

Notably, the Advisory Committee's notes on Rule 704 confirm that Rule 702 prohibits "opinions which would merely tell the jury what result to reach." Fed. R. Evid. 704 advisory committee's note; *see also Jordan*, 2018 WL 3649019, at *1. "Expert testimony that testifies about what the law is or directs the finder of fact how to apply law to facts" thus does not comply with Rule 702. *Thomas v. United States,* 106 Fed. Cl. 467, 476, n. 4 (2012) (excluding affidavit of real estate attorney as a purely legal opinion that would not assist the trier of fact).

Defendants' proffered experts' conclusory legal arguments do not qualify as expert analysis. Indeed, "the District Court must ensure that an expert does not testify as to the governing law of the case" because, in doing so, "the Court would essentially be abdicating its duties" as the legal expert. *Romero*, 52 F.Supp.3d at

---

2018) (proffered expert opinions were inadmissible, because "they relate directly to the legal duties existing under the ADA, and unduly infringe on the judge's lawgiving and jury's fact-finding."); *Gangwal v. Folster*, No. 1:14-cv-02002, 2017 U.S. Dist. LEXIS 53800, *44 (M.D. Pa. Apr. 6, 2017) (refusing to consider the proffered expert's legal conclusions); *Romero v. Allstate Ins. Co.*, 52 F.Supp.3d 715, 723 (E.D. Pa. 2014) (expert testimony that purports to opine on legal issues intrudes on the "Court's role as the legal expert" and is improper and inadmissible); *Airlines Reporting Corp. v. Belfon*, No. 2003/106, 2010 WL 3664065, at *26 (D.V.I. Sept. 16, 2010) ("when an expert purports to testify as to the ultimate *legal* issue, that testimony is not admissible…."); *United States v. Monaghan*, 648 F. Supp. 2d 658, 661 (E.D. Pa. 2009) ("testimony concerning the law itself ... is inappropriate expert testimony"); *Transportes Aereos Pegaso v. Bell Helicopter Textron, Inc.*, 623 F. Supp. 2d 518, 533 (D. Del. 2009); *Highway Materials, Inc. v. Whitemarsh Twp.*, 2004 WL 2220974, at *20 (E.D. Pa. Oct. 4, 2004) ("an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts"); *VIM, Inc. v. Somerset Hotel Ass'n*, 19 F. Supp. 2d 422, 427 n.4 (W.D. Pa. 1998), *aff'd*, 187 F.3d 627 (3d Cir. 1999) ("an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts").

722-23 (internal quotation marks omitted). Thus, the "district court must limit expert testimony so as to not allow experts to opine on 'what the law required' or 'testify as to the governing law.'" *Holman Enterprises v. Fidelity and Guar. Ins. Co.,* 563 F.Supp.2d 467, 472 (3d Cir. 2008). "The rule prohibiting exhibits experts from providing their legal opinions or conclusions is so well established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle. In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *Casper v. SMG*, 389 F.Supp.2d 618, 621 (D.N.J. 2005) (internal quotation marks and citations omitted). "While [a party] is free when the time comes to make such arguments and offer such conclusions in legal memoranda, he may not do so through the expert testimony of a [lawyer or] law professor." *Id.* at 622.

Here, each of Defendants' proffered experts seek to testify regarding the governing law simply to tell the fact-finder the result that should be reached. Messrs. Holland, Rudoy and Hoffmeyer are attorneys, and their "opinions" result from their interpretation of Pennsylvania case law and their application of that law to the facts. They offer their legal conclusions as to the meaning of the title documents in this case, and provide their legal opinions of what those documents mean. This is not the role of an expert witness; rather, it is the role occupied by the fact-finder and the Court. Put otherwise, Messrs. Holland, Rudoy and Hoffmeyer seek to usurp the Court's role in purporting to prescribe how the law should be applied. *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 2003 U.S. Dist. LEXIS 27621, at *10 (M.D. Pa. July 8, 2003) ("'Expert' testimony regarding legal

issues, legal standards, and ultimate legal conclusions is inadmissible because it usurps the roles of the court and jury.").

Because the proffered legal opinion testimony of Holland, Rudoy and Hoffmeyer is not proper expert witness testimony and it will not assist the trier of fact, Defendants should be precluded from offering this testimony at trial.

### 2. The Proffered Expert Testimony Is Speculative and Unreliable.

Not only does the proffered testimony consist of improper legal opinions; it also is speculative and unreliable. Rule 702 requires that the proponent of the expert testimony demonstrate that the opinion is based upon a reliable methodology "rather than on 'subjective belief or unsupported speculation.'" *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (internal quotations omitted); *see also Jordan*, 2018 WL 3649019, at *2 ("the expert's proponent bears the burden of establishing the admissibility of his expert's testimony by a preponderance of the evidence.").

Here, the experts offer baseless speculation as to the intention of John McCawley in 1857. *See, e.g.,* ECF No. 39-1, at 3 (Holland: "The McCawleys could not have intended to convey more than they owned"); ECF No. 46, at 5 (Hoffmeyer: "It is my opinion, to a reasonable degree of professional certainty, that when you analyze the three deeds out of McCawley, it was the obvious intent to convey no more than was designated in the Brown Warrant. If there had been a specific intent to convey the acreage that was specifically set forth in the deeds from McCawley, McCawley would never have conveyed three tracts out of the

11

John Brown Warrant, but, in my opinion, to a reasonable degree of professional certainty, would have only conveyed two tracts since to convey any more than two tracts using the actual descriptions, would have exceed the amount of land available in the Brown Warrant."); ECF No. 47, at 6 (Rudoy asserting that following the legal descriptions in the deeds "could not have been the intent of the conveyances").

Neither Defendants nor their experts have any evidence of McCawley's intent when he issued the deed to Meyer or the subsequent deeds relating to the property. Nor can they go back in time and ascertain the circumstances of the transaction or gain knowledge from contemporaneous witnesses. Without any such evidence, the expert opinions rest on speculation. Expert testimony that rests on speculation is unreliable and improper. *See, e.g., 151 E. Leaming Ave. Condo Ass'n v. QBE Specialty Ins. Co.*, No. 14-175, 2015 WL 3795648, at *4 (D.N.J. June 18, 2015) (striking expert report because it consisted of "subjective beliefs and unsupported speculation").

In short, Defendants' counsel is free to argue whatever reasonable inferences they believe are appropriate, based upon the contemporaneous documents, but it is inappropriate for Defendants to cloak those arguments with the authority of "expert" witnesses, who purport to opine as to the application of governing law and who purport to limn the intention of long-dead actors.

**Conclusion**

For the foregoing reasons, the Trusts respectfully request that this Court enter an Order (i) precluding Defendants from offering at trial testimony and exhibits regarding conduct that post-dates the execution of the Meyer Deed for the purpose of interpreting the 1857 Meyer Deed and (ii) precluding Defendants from offering testimony from Mr. Holland, Mr. Rudoy and Mr. Hoffmeyer at trial.

Dated: May 8, 2019

Respectfully submitted,

/s/ *Paul K. Stockman*
Paul K. Stockman (Pa. ID No. 66951)
KAZMAREK MOWREY CLOUD LASETER LLP
One PPG Place, Suite 3100
Pittsburgh, PA 15222
pstockman@kmcllaw.com

Laura A. Lange (Pa. ID No. 310733)
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
llange@mcguirewoods.com