# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES RICE KENDALL and  :
ANN P. HOCHBERG, as Trustees  :
for The Thomas E. Proctor Heirs  :
Trust, and BANK OF AMERICA,  :
N.A., and JOHN J. SLOCUM, JR., as  :
Trustees for The Margaret O.F.  :
Proctor Trust,  :
    Plaintiffs,  :
  vs.  :
          :
ANADARKO E&P ONSHORE LLC,  :
WALLIS RUN HUNTING CLUB,  :
INC., and WALLIS RUN GAS and  :
OIL, INC.,  :
          :
    Defendants.  :

Civil Action

No. 3:16-cv-01182-MEM

Judge Malachy E. Mannion

Complaint filed: 06/17/16

***Electronically Filed***

---

## DEFENDANTS ANADARKO E&P ONSHORE LLC, WALLIS RUN HUNTING CLUB, INC. and WALLIS RUN GAS and OIL, INC.'S JOINT MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE*

Thomas C. Marshall, Esquire
Pa. I.D. No. 59326
Daryl A. Yount, Esquire
Pa. I.D. No. 325043
McNERNEY, PAGE, VANDERLIN
 & HALL
433 Market Street
Williamsport, PA 17703
Phone: (570) 326-6555
Attorneys for Defendants
Wallis Run Hunting Club, Inc. and
Wallis Run Gas and Oil, Inc.

John A. Snyder, Esquire
Pa. I.D. No. 66295
Suzette v. Sims, Esquire
Pa. I.D. No. 210355
McQUAIDE BLASKO, INC.
811 University Drive
State College, PA 16801
Phone: (814) 238-4926

Attorneys for Defendant Anadarko
E&P Onshore LLC

Dated: May 31, 2019

# TABLE OF CONTENTS

**Page(s)**

*Table of Authorities* .......................................................................... ii

I.    INTRODUCTION AND SUMMARY ................................................ 1

II.    ARGUMENT ................................................................................. 3

    A.    Standard of Review .................................................................. 3

    B.    The Proffered Expert Testimony and Subsequent Chain  of Title is Relevant to Demonstrate the Most Reasonable Interpretation of the McCawley Deeds ............................................................. 4

        (1)    Pennsylvania Courts Follow Contract Interpretation Principles to Ascertain the Most Reasonable Interpretation of a Deed .................................................. 4

        (2)    Land Conveyed by McCawley Deeds Limited to Outer Boundaries of John Brown Warrant, as a Matter of Law ................................................................................. 11

        (3)    Roles of the Court and the Factfinder Depend on Whether Deed is Ambiguous or Subject to Accident or Mistake ........................................................................ 12

        (4)    A Grant is Reasonable if the Real World "Subject Matter" of the Grant is Consistent Therewith ................ 13

        (5)    In the Event of an Ambiguity and/or Mistake in Deeds, Expert Testimony is Admissible to Explain the Most Reasonable Interpretation ............................................. 14

III.    CONCLUSION ................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

<u>Atlantic Richfield Co. v. Razumic</u>, 390 A.2d 736 (Pa. 1978)..................................................7

<u>Berckeley Inv. Group, Ltd. v. Colkitt</u>, 455 F.3d 195 (3d Cir. 2006) ......................................17

<u>Chamberlain v. Wyo. Cnty.</u>, 2019 U.S. Dist. LEXIS 25826, 2019 WL 719610, Civil No. 3:16-1408
  (M.D. Pa., Feb. 19, 2019) .............................................................................................3, 4

<u>Cummings v. Antes</u>, 19 Pa. 287 (1852) .....................................................................................9

<u>Deppen v. Bogar</u>, 7 Pa. Super. 434 (1898) ........................................................................16, 17

<u>Diener Brick Co. v. Mastro Masonry Contr.</u>, 885 A.2d 1034 (Pa. Super. 2005)......................7

<u>Ecenbarger v. Lesoine</u>, 438 A.2d, 969 (Pa. Super. 1981).................................................9, 10

<u>Equitable Gas Co. v. Limegrover</u>, 54 Pa. Super. 25 (1913)..........................................5, 6, 7

<u>Hartley v. Crawford</u>, 81 Pa. 478 (1875)..................................................................................13

<u>Harvey v. Vandegrift</u>, 89 Pa. 346 (1879)..........................................................................12, 13

<u>Hershey v. Poorbaugh</u>, 145 Pa. Super. 482, 21 A.2d 434 (1941) ...........................................11

<u>Huss v. Morris</u>, 63 Pa. 367  (1870) .........................................................................................12

<u>Int'l Mkt. Brands v. Martin Int'l Corp.</u>, 882 F. Supp. 2d. 809 (W.D. Pa. 2012) ....................18

<u>J.W.S. Delavau v. E. Am. Transp. & Warehousing</u>, 810 A.2d 672 (Pa. Super. 2002) ............7

<u>Jamison v. Jamison</u>, 3 Whart. 457 (Pa. 1838)...........................................................................9

<u>Kutsenkow v. Kutsenkow</u>, 414 Pa. 610 (1964).......................................................................12

<u>Lacy v. Green</u>, 84 Pa. 514 (1877) .........................................................................................7, 8

<u>Lawson v. Simonsen</u>, 417 A.2d 155 (Pa. 1980).....................................................................10

<u>Maguire v. Osborne</u>, 121 A.2d 147 (Pa. 1956).........................................................................7

<u>Meigs v. Lewis</u>, 164 Pa. 597, 30 A. 505 (Pa. 1894) ..........................................................6, 7, 8

<u>Nichols v. Nichols</u>, 19 A. 422 (Pa. 1890) ................................................................................10

<u>Nichols v. Nichols</u>, 24 A. 194 (Pa. 1892) ............................................................................9, 10

<u>Pennock v. Coe</u>, 64 U.S. 117 (U.S. 1859)................................................................................11

<u>Pennsylvania v. Thomas E. Proctor Heirs Trust & the Margaret Proctor Trust</u>, 2019 U.S. Dist.
  LEXIS 28522, Civ. No. 1:12-CV-01567 (M.D. Pa., Feb. 21, 2019) ....................................17

<u>Phila. Electric Co. v. City of Phila.</u>, 303 Pa. 422, 154 A. 492 (Pa. 1931)...............................11

<u>Pocono Manor Ass'n v. Allen</u>, 12 A.2d 32 (Pa. 1940) ..............................................................5

<u>Reilly v. Crown Petroleum Co.</u>, 61 A. 915 (Pa. 1905) ............................................................15

<u>Southall v. Humbert</u>, 454 Pa. Super. 360, 685 A.2d 574 (Pa. Super. 1996) ...........................11

<u>Starling v. Lake Meade Property Owners Ass'n</u>, 162 A.3d 327 (Pa. 2017) .............................4, 5, 7, 12

<u>Steuart v. McChesney</u>, 444 A.2d 659 (Pa. 1982).....................................................................14

<u>Taylor v. Bemiss</u>, 3 S. Ct. 441 (U.S. 1884) ............................................................................18

<u>Thompson v. DeLong</u>, 71 Pa. Super. 282 (1919) ...............................................................15, 16

<u>Tyler v. Moore</u>, 42 Pa. 374 (1862)............................................................................................9

<u>United States Steel Corp. v. Hoge</u>, 468 A.2d 1380 (Pa. 1973)..................................................9

<u>Wager v. Wager</u>, 1 Serg. & Rawle 374 (Pa. 1815) ..................................................................9

<u>Whitby v. Duffy</u>, 19 A. 1065 (Pa. 1890)....................................................................................9

<u>Wier on behalf of Wier v. Heckler</u>, 734 F.2d 955 (3d Cir. 1984)............................................18

<u>Will v. Piper</u>, 134 A.2d 41 (Pa. Super. 1957) .....................................................................15, 16

**Other Authorities**

Expert Legal Testimony 97 Harv. L. Rev. 797 (1984) ............................................................ 18

**Rules**

Fed. R. Evid. 401 ................................................................................................................... 4

## I.       INTRODUCTION AND SUMMARY

This is a dispute over the ownership of subsurface oil and gas rights under acreage formerly comprising the John Brown Warrant (the "Warrant") in Cascade Township, Lycoming County, Pennsylvania.  The Warrant was surveyed to contain 407 acres in 1792.

Plaintiffs filed a Motion *in Limine*, seeking to preclude Defendants from offering evidence of "post-1857 transactions, and from offering any legal opinions" from Defendants Anadarko E&P Onshore LLC Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc.'s (hereinafter referred to collectively as "Defendants") proffered property attorney experts.   One of the predominate objects of deed construction is to ascertain the most reasonable construction – one that avoids an absurd result, such as nullifying the intentions of a grantor.    This analysis, particularly where there is conflicting language, begs the admission of parol evidence explaining what the parties would have probably/naturally provided for.

As such it is respectfully submitted that:  (1) the tripartite Deeds conveying the John Brown Warrant should be read together *in pari materia*; (2) the jury should have the benefit of evidence of subsequent downstream corrections to erroneous courses and distances descriptions set forth in the internally inconsistent Deeds, to shed light on the construction given the Deeds in question by those in privity of title

with the original parties; and (3) expert testimony explaining the legal tools used by practitioners to resolve the most reasonable construction of ambiguous deeds.

In 1857-1858, John McCawley ("McCawley"), conveyed the entire John Brown Warrant, by three deeds (collectively, the "McCawley Deeds"). The eastern-most Deed, from McCawley to John Meyer ("Meyer Deed"), dated March 30, 1857, and recorded May 15, 1857, is one of two facially ambiguous deeds, giving rise to the instant dispute. The Meyer Deed states a numerical acreage of 100 acres but an inconsistent courses and distances description amounting to 206 acres. The "middle" Deed from McCawley to Conrad Whitaker (the "Whitaker Deed"), also executed on March 30, 1857 and recorded on May 20, 1857, states a numerical acreage of 212 acres, but an inconsistent courses and distances description amounting to 412 acres. The western-most Deed from McCawley to F.W. Meier (the "Meier Deed"), executed on October 1, 1857, and recorded January 22, 1858, states a numerical acreage of 107.5 acres, and a courses and distances description amounting to 113 acres.

Given these facial conflicts between the courses and distances and numeric acreage calls in the tripartite Deeds, the task at hand is less straightforward than Plaintiffs lead this Court to believe, while seeking an outcome that would expropriate the western tract, nullify *in toto* the effect of the Meier Deed, and operate as a conveyance of more land than McCawley owned.

The Pennsylvania Supreme Court recently recognized that, when interpreting deeds, the rules of contractual interpretation apply. Where an ambiguity arises, the ***most reasonable*** interpretation – the one that avoids an absurd result – should prevail in ascertaining the intentions of a grantor; Courts often look to what the parties would "probably" and "naturally" have provided for.

The acreage calls are consistent with the real world subject matter of the McCawley grants, the 1792 survey, the recognition that McCawley could convey no more land than the Warrant contained, and constitute the only basis for interpretation that would not nullify embodied in the Meier Deed. As such, Defendants believe the Court should issue a binding instruction in Defendants' favor. Alternatively, Defendants seeks to aid the trier of fact in fulfilling its duty to apply the law, as instructed by the Court, through expert testimony in the nature of trade customs in reasonable construction when faced with ambiguity of this species.

## II.    ARGUMENT

### A. <u>Standard of Review</u>

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." <u>Chamberlain v. Wyo. Cnty.</u>, 2019 U.S. Dist. LEXIS 25826, 2019 WL 719610, Civil No. 3:16-1408, at *2 (M.D. Pa., Feb. 19, 2019) (Mannion, J.). "On a motion *in*

*limine*, evidence should only be excluded 'when the evidence is clearly inadmissible on all potential grounds.'" Id.

**B.      The Proffered Expert Testimony and Subsequent Chain of Title is Relevant to Demonstrate the Most Reasonable Interpretation of the McCawley Deeds**

Defendants agree that evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" ***and*** "the fact is of consequence in determining the action." Fed. R. Evid. 401.  However, Defendants disagree with Plaintiffs' assertion that this precludes the admission of expert testimony in this case.  Pennsylvania Courts have considered course of performance and course of dealing in construing conveyances, including conduct following a grant and have admitted expert testimony to clarify appropriate means of resolving boundary disputes.

**(1) Pennsylvania Courts Follow Contract Interpretation Principles to Ascertain the Most Reasonable Interpretation of a Deed.**

The Pennsylvania Supreme Court recently explained that "[t]he same principles that apply to the interpretation of a contract apply to the interpretation of a deed."  Starling v. Lake Meade Property Owners Ass'n, 162 A.3d 327, 341 (Pa. 2017).  While the Starling Court stated that deed interpretation begins with the plain language, it also observed that "the language of the deed shall be interpreted ***in the light of the subject matter, the apparent object or purpose of the parties*** and the conditions existing when it was executed." Id. (emphasis added).  In scrutinizing the

4

grant in question, the <u>Starling</u> Court actively strove to avoid an "absurd result." <u>See</u> <u>Id.</u>, at 345 (citing <u>Pocono Manor Ass'n v. Allen</u>, 12 A.2d 32, 35 (Pa. 1940) for the proposition that "[b]efore a court will interpret a provision in a . . . contract in such a way as to lead to an absurdity or make the . . . contract ineffective to accomplish its purpose, it will endeavor to find an interpretation which will effect the reasonable result intended.").

Seeking the most reasonable construction of a deed is not novel. In <u>Equitable Gas Co. v. Limegrover</u>, 54 Pa. Super. 25 (1913) property owners' predecessors in title had deeded a gas company a pipeline easement for a term of years, along with necessary appurtenances, expressly authorizing the gas company to erect and maintain telephone poles. After the original easement term expired, successor landowners granted the gas company a perpetual easement to maintain its pipe, but said nothing of the telephone poles. Three years following the grant, the landowners demanded that the gas company remove its telephone poles and threatened to remove them if the company did not pay for the privilege of maintaining them. The Superior Court affirmed the trial court's injunction against the landowners. The <u>Equitable Gas</u> Superior Court sought a "reasonable construction":

> [T]he ***reasonable construction of the language*** is that the concessions granted by Johnston were renewed by the defendant....

We regard it as reasonably clear under the language of the grant in the light of the Johnston deed that the privileges which the plaintiff enjoyed under the latter conveyance were to be continued by force of the new deed. ***The defendants contend that the case is to be disposed of by a consideration of the terms of their grant and that it makes no reference to a telephone or telegraph line. This would be a convincing reason but for the connection of their deed with the Johnston deed. Reading the two together we cannot avoid the conclusion that by the terms of the deed the plaintiff acquired the same right as to the telephone and telegraph lines which it has under the prior grant***. The thing granted was a right of way for that which was "laid down" under the right given by Johnston, which had expired by limitation, the right of way referred to being the easement acquired by the plaintiff under the Johnston deed. ***If the defendants' deed does not demand this construction*** <u>***then its meaning is doubtful and the principle should apply that its terms are to be considered in the light thrown on them by***</u> *the situation of the parties,* <u>***the circumstances and relations of the property in regard to which they have negotiated and the necessities for which they would probably provide***</u>, as illustrated in <u>Meigs v. Lewis</u>, 164 Pa. 597, 30 A. 505 [(Pa. 1894)]; <u>Moore v. Ins. Co.</u>, 199 Pa. 49, 48 A. 869 [(Pa. 1901)]; <u>Thatcher v. West Chester St. Ry. Co.</u>, 35 Pa. Super. 615 [(1908)].

<u>Equitable Gas</u>, 54 Pa. Super., at 255-256 (emphasis added).

In <u>Equitable Gas</u>, the Superior Court observed two alternatives: the deed must be read *in pari materia* with the prior grant by land owners' predecessor-in-title ***or*** its meaning was doubtful, which required inquiry be given to external matters, specifically including the necessities for which the parties "would probably provide."

The Court resolved, "[i]t is a well-established principle that the conduct of the parties is to be considered in construing an ambiguous contract and the silence of the defendants for so long a time with knowledge of the daily use of the line gives

complexion to the meaning of the parties." Id., at 256-257. Thus, the Court embraced consideration of the course of dealing[1] *and* course of performance[2] in ascertaining the probable intention to the grantors regarding the extent of rights conveyed, despite the absence of any reference to the telephone poles at issue in the landowners' deed. This is consistent with the Starling Court's application of contract interpretation principles to deeds, as course of dealing and course of performance serve as interpretive devices for contracts in Pennsylvania.

In Meigs, *supra*, the Supreme Court reversed a lower court's injunction centering on a grantor's reservation of a right to build "over and above" an alley "in a like manner as the same is now done", citing Lacy v. Green, 84 Pa. 514 (1877) for the proposition that among the "elements in the interpretation of an ambiguous contract" are "[t]he situation in which the parties stand, ***the necessities for which***

---

[1] "Course of dealing" is a "sequence of ***previous conduct*** between the parties which is fairly regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." See Diener Brick Co. v. Mastro Masonry Contr., 885 A.2d 1034, 1040 (Pa. Super. 2005) (citing J.W.S. Delavau v. E. Am. Transp. & Warehousing, 810 A.2d 672, 683-684 (Pa. Super. 2002)) (emphasis added). In this case, "course of dealing" would include any evidence of McCawley's previous conduct vis-à-vis the John Brown Warrant and the three conveyances by which he alienated the same to three grantees in 1857 and 1858.

[2] "Course of performance" is a "sequence of conduct between the parties ***subsequent to the formation of the contract*** during performance of the terms of the contract." Diener Brick Co., *supra*, 885 A.2d, at 1040. Pennsylvania Courts have permitted evidence of course of performance for the limited purposes of aiding "interpretation … where the writing is ambiguous." See Atlantic Richfield Co. v. Razumic, 390 A.2d 736, 741 n. 6 (Pa. 1978) (citing Maguire v. Osborne, 121 A.2d 147 (Pa. 1956)). In Maguire, the Pennsylvania Supreme Court further elaborated that "when a contract is capable of two different interpretations, that which the parties themselves have always put upon it, and acted upon, especially as here for a long series of years, a court will follow, because it is the true intent and meaning of the parties." Id., 121 A.2d, at 152.

***they would naturally provide, the conveniences they would probably seek to***

***secure***, and the circumstances and relations of the property in regard to which they

have negotiated….” Id., 30 A., at 505 (emphasis added).  The appellee in Meigs

argued the grantor could not build above a platform to the height of other portions

of the existing building under the reservation.  The Court opined that “[t]he absurd

results of such a construction naturally suggest that it is unsound and not in harmony

with the intentions of the parties.”  Id., at 506 (emphasis added).  Stated otherwise,

Courts may utilize common sense when ascertaining the most reasonable

construction, by looking at the transaction and the subject matter thereof, as a whole,

and embracing the probable and natural provisions parties would likely utilize.

Moore, a contract action hinging on a termination provision, based on

cessation of occupancy of insured premises for a certain period of time (subsequent

course of performance), observed “that evidence to ***explain the subject-matter of a***

***written contract is _always_ receivable”.*** Moore, 48 A., at 870 (emphasis added).

In an even earlier case, decided just a few years after the McCawley

conveyances, the Pennsylvania Supreme Court remarked that “[t]he object of all

constructions is to ascertain the intent of the parties, ***and it must have been their***

***intent to have some meaning in every part***. ***It never could be a man's intent to***

***contradict himself, therefore we should lean to such a construction as reconciles***

***the different parts, and reject a construction which leads to a contradiction***.” Tyler

v. Moore, 42 Pa. 374, 387 (1862) (citing Wager v. Wager, 1 Serg. & Rawle 374, 375 (Pa. 1815), which states that "[o]ne of the most important rules in the construction of deeds, is so to construe them, that no part shall be rejected.") (emphasis added). This rule is enduring. See, *e.g.*, United States Steel Corp. v. Hoge, 468 A.2d 1380, 1384 (Pa. 1973); Whitby v. Duffy, 19 A. 1065 (Pa. 1890);[3] Jamison v. Jamison, 3 Whart. 457, 470 (Pa. 1838) ("Another rule is, that the construction be such as that the whole deed, and every part of it, may take effect, ***and as much effect as may be to that purpose for which it is made***.") (emphasis added).

It is also "well-settled that when several instruments *in pari materia* are executed by the same parties at or about the same time, they are to be treated as one transaction…'." See Ecenbarger v. Lesoine, 438 A.2d, 969, 973 (Pa. Super. 1981) (quoting Nichols v. Nichols, 24 A. 194 (Pa. 1892), in turn citing Cummings v. Antes, 19 Pa. 287 (1852)). In Nichols, it was contended that three deeds were part of the same overarching transaction. The Court noted that the case was before it before and it had "reached the conclusion that '[t]he whole combined, all the deeds, and all the declarations, might well convince a jury of the correctness of the plaintiff's theory…." Nichols, *supra*, 24 A., at 195[4] (quoting Nichols v. Nichols, 19 A. 422 (Pa.

---

[3] In Whitby, the Court Court regarded a "clumsily-worded" deed "for what it really is". Whitby likewise sought a reasonable interpretation.

[4] "Nichols II".

1890)).[5]  In <u>Nichols II</u>, the Court stated ""we cannot separate what the parties have joined and look for their understanding and intentions in one instrument ***when they have employed three to express them***." <u>Nichols II</u>, 24 A., at 195 (emphasis added).

In <u>Ecenbarger</u>, *supra*, in determining whether an easement existed along the property line dividing two properties devolving from a common grantor and where the deeds had been "swapped" following a scrivener's error, the Superior Court similarly read the deeds *in pari materia*.

Defendants' proffered experts' testimony is relevant to inform the jury of the basis and methodology employed by legal practitioners in ascertaining the most reasonable construction of an internally inconsistent deed, *i.e.*, how they customarily decipher what the parties would most probably and naturally have provided for under such circumstances.   In this anlaysis, Defendants respectfully submit that the subsequent course of performance by downstream vendees is relevant, because it reflects how parties in privity-of-title, tracing back to McCawley, circumscribed those conveyances. Unless contrary to the plain meaning of an instrument, an interpretation given it by the parties is favored.  <u>See</u>, *e.g.*, <u>Lawson v. Simonsen</u>, 417 A.2d 155, 158 (Pa. 1980).   Here, subsequent surface conveyances corrected the courses and distances descriptions to conform to the more accurate acreage calls,

---

[5] "<u>Nichols I</u>".

demonstrating that those in privity interpreted the McCawley Deeds as do Defendants.

### (2) Land Conveyed by McCawley Deeds Limited to Outer Boundaries of John Brown Warrant, as a Matter of Law.

Given the issues in controversy and particularly that the John Brown Warrant was conveyed in three parts in a relatively brief time-span, it must be observed that McCawley could convey only as much land as he had. See, *e.g.*, Pennock v. Coe, 64 U.S. 117, 128 (U.S. 1859) ("It may, at once, therefore, be admitted, whenever a party undertakes, by deed … to grant property, real or personal, *in praesenti*, which does not belong to him or has no existence, the deed or mortgage, as the case may be, is inoperative and void, and this either in a court of law or equity."); Phila. Electric Co. v. City of Phila., 303 Pa. 422, 428, 154 A. 492, 494 (Pa. 1931) ("a conveyance of land by one who has no title thereto…standing alone…would not confer title."); and Southall v. Humbert, 454 Pa. Super. 360, 374, 685 A.2d 574, 581 (Pa. Super. 1996) (citing Hershey v. Poorbaugh, 145 Pa. Super. 482, 21 A.2d 434, 435-436 (1941) for the proposition that "a grantor can only convey that which he owns.")

As such, McCawley's tripartite conveyances, alienating the entire John Brown Warrant, could convey no more land than he held title to – the Warrant containing 407 acres under the 1792 survey.

### (3) Roles of the Court and the Factfinder Depend on Whether Deed is Ambiguous or Subject to Accident or Mistake.

"The meaning of a deed—that is, what it covers—is a question of law for the court; what the boundaries of a given piece of land are is a question of construction for the court also; where they are is a question of fact for the jury. Where the boundary lines of a grant are fixed by the grant itself, the question as to what these lines are is purely one of law." Starling., *supra*, 162 A.3d, at 340.

Where the subject-matter of a grant is "insufficiently described", *i.e.*, ambiguous, "parol evidence may be given to show precisely what was intended to be conveyed." See Harvey v. Vandegrift, 89 Pa. 346, 351 (1879) ("in general, when there is any doubt as to the extent of the subject-matter … demised or sold, it is a matter of extrinsic evidence to show what is included under the description as parcel of it.") "[I]n such case it is well decided that ***the question of the extent of the grant must go to the jury***." Id. (emphasis added). It is also "the well-settled law of this state that the mistake of a scrivener in preparing a deed or other writing, may be shown by parol evidence." Huss v. Morris, 63 Pa. 367, 372 (1870). A deed may be reformed when a mutual mistake in a description is made, even where one of the parties denies the existence of such a mistake. See Kutsenkow v. Kutsenkow, 414 Pa. 610, 612 (1964).

Harvey likewise recognized that "[t]he authorities are equally clear that the rule which allows extrinsic evidence to explain the extent of the subject sold, has no

application **when a subject-matter exists which satisfies the terms of the instrument of the conveyance**." Harvey, 89 Pa., at 351-352(emphasis added). In Harvey, where fishing rights were granted "twenty-eight perches down the river below the place of beginning", the Court found "no ambiguity" because "the extent of the grant is clearly defined." Id., at 352. The Court concluded that "there is a subject-matter which fully satisfies the terms of the grant." Id., at 352-353.

### (4) A Grant is Reasonable if the Real World "Subject Matter" of the Grant is Consistent Therewith.

Where "subject matter" exists, *i.e.*, land, which satisfies the terms of the instrument, the grant conforms to that subject matter, to the exclusion of the rules applicable in the face of ambiguity. See Harvey., 89 Pa., at 352. This latter rule applies when, for example, a piece of land of a particular size is described in an instrument and a piece of land of substantially identical size actually exists. See. *e.g.*, Hartley v. Crawford, 81 Pa. 478, 486 (1875) ("Can any one doubt that the twenty perches thus reserved were the same excess of twenty perches mentioned in all the documents relating to his title? They were to be of the *said* tract or island. What tract had been mentioned or said? Clearly none but the tract or island of four acres and twenty perches.").

Similarly, in the above-captioned matter, the outer boundaries and total acreage of the John Brown Warrant conveyed by McCawley's tripartite conveyances thereof in 1857-1858 are established and, as noted above, McCawley could legally

13

convey no more than the roughly 400 acres of land situated within the Warrant. The acreage calls in all three McCawley Deeds are relatively consistent with the 1792 survey *and* the real world subject matter, *i.e.*, the approximately 400 acres of land comprising the Warrant. The acreage calls likewise allow the Meier Deed to be given effect, rather than nullified. Defendants submit this is the *only* reasonable interpretation of these conveyances. Plaintiffs' theory would functionally nullify any grant under the Meier Deed, thus undermining McCawley's intentions as grantor.

**(5)** **In the Event of an Ambiguity and/or Mistake in Deeds, Expert Testimony is Admissible to Explain the Most Reasonable Interpretation.**

To the extent the Court does not issue a binding instruction in favor of Defendants, this matter concerns the extent of the grants by each of the McCawley Deeds, culminating in a conveyance, within close temporal proximity, of the entire John Brown Warrant, constrained by the outer boundaries of the Warrant, as surveyed.

A patent ambiguity[6] plagues the Meyer and Whitaker Deeds, inasmuch as they set forth courses and distances descriptions that are inconsistent with their internal acreage calls, the 1792 survey, and which, if applied, would convey *more property than actually existed in the John Brown Warrant* (indeed, this would be the case

---

[6] "A patent ambiguity is that which appears on the face of the instrument, and arises from the defective, obscure, or insensible language used." <u>Steuart v. McChesney</u>, 444 A.2d 659, 663 (Pa. 1982).

for just these two conveyances or the Whitaker Deed, alone).  If followed, this would

expand the Meyer and Whitaker tracts westward, to the exclusion of McCawley's

conveyance to Meier, rendering it nugatory and ineffective; an assuredly absurd

result (McCawley would have had to intend to not convey any land to Meier, despite

making the Meier Deed).

Because there are myriad means of ascertaining the subject matter and

boundaries of these tripartite grants within the overall John Brown Warrant, this is a

situation where expert testimony is appropriate.   Inasmuch as the location of

boundaries is a question for the jury, the Superior Court has explained that "where

expert witnesses differ as to the proper method of locating a boundary line, the case

is for the jury." See Will v. Piper, 134 A.2d 41, 45 (Pa. Super. 1957) (citing

Thompson v. DeLong, 71 Pa. Super. 282 (1919) and Reilly v. Crown Petroleum Co.,

61 A. 915 (Pa. 1905)).

Thompson was a dispute over encroachment beyond the midpoint of a party

wall.  One party objected to builder testimony on the boundary location.  The Court

opined that different methodologies are subject to the jury's evidence-weighing

function, allowing the testimony over objection:

> The defendant strenuously objected that this witness was not qualified
> sufficiently to give testimony as to the location of the center line of the
> wall. He testified that he was a practical builder of thirty years'
> experience, employed as an expert by the city for a long number of
> years and presumably, able to fix the location of the center of the wall.
> ***Defendant's objection seems to be to the method he employed in***

*ascertaining the location of the line, that it was not the one that was employed by expert surveyors. We do not think there is any merit in the objection.* ….

*It was for the jury to decide which was the proper method to employ. It is not unusual for experts upon different sides of a case to condemn the methods employed by others. As to their rival claims the jury must decide.* **One witness may measure a distance with the ordinary yard stick and another may use a steel tape and the latter may cast doubt upon the accuracy of the results of the first witness but this will not render the first incompetent. The court could not upon motion strike out the testimony of the first witness. His testimony may be discredited but its effect is for the jury. …**

Thompson, 71 Pa. Super., at 284-285 (emphasis added).

In Will, *supra*, the Superior Court cited decisions explaining that "[t]he method of locating lines by courses and distances may result in manifest error, and when it does this method should not be employed." Will, 134 A.2d, at 44 (citing Deppen v. Bogar, 7 Pa. Super. 434 (1898)).

The Deppen Court reasoned:

*What is most material and most certain in a description will prevail over that which is less material and less certain*. The object is to ascertain the intent of the parties, and the rule to find the intent is to give the most effect to those things about which men are least liable to mistake, *and nothing is more common in locating the boundaries of land than to lengthen or shorten lines in order to conform to the calls*….

*"Quantity, is a circumstance of slight, often of no weight in a question of title, but it may have a marked effect where the question is one of boundary. If there be two lines, one corresponding with the quantity of land in the deed, and the other largely in excess the inference would have weight in determining the true line, especially when*

***strongly assisted by other evidence***:" Kennedy v. Lubold, 88 Pa. 246, 247.

Deppen, 7 Pa. Super., at 445 (emphasis added).

This Court has discretion to determine whether expert testimony will assist the trier of fact. See Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195 (3d Cir. 2006). The Berckeley standard does not prohibit Defendants' experts from testifying to the chain of title flowing from the McCawley Deeds, which is factual. It likewise does not prohibit them from testifying to the various methodologies existing under Pennsylvania law, to examine those interpretive tools, and to describe how they, as learned practitioners, utilize them to ascertain a reasonable construction of a deed, understanding that the instructions on the binding law remain within the province of the Court.

Magistrate Judge Susan E. Schwab recently opined, in other litigation involving the Proctors, that "[a]n expert, based on his experience, can testify about industry customs and practices but cannot give his opinion as to the legal duties arising from industry custom or whether a party complied with the law." Pennsylvania v. Thomas E. Proctor Heirs Trust & the Margaret Proctor Trust, 2019 U.S. Dist. LEXIS 28522, Civ. No. 1:12-CV-01567 (M.D. Pa., Feb. 21, 2019).

The Harvard University Law Review has similarly observed: "Expert testimony in harmony with the judge's view of the law may be completely appropriate. ***Allowing legal testimony before the jury only when the testimony is***

***consistent with the judge's view of the law will eliminate the concern that such*** ***testimony may usurp the role of the judge or jury***. <u>***As long as an expert does not***</u> <u>***present a legal conclusion that merely tells the jury what result to reach, expert***</u> <u>***legal testimony does not impinge upon the jury's function of applying the law to***</u> <u>***the facts of the case***</u>." Note, Expert Legal Testimony 97 Harv. L. Rev. 797 (1984) (emphasis added); <u>see also</u> <u>Wier on behalf of Wier v. Heckler</u>, 734 F.2d 955, 964 n. 8 (3d Cir. 1984) (citing Note for proposition that expert testimony ordinarily thought to "usurp" the province of a tribunal "may be permissible under some circumstances."); <u>Int'l Mkt. Brands v. Martin Int'l Corp.</u>, 882 F. Supp. 2d. 809, 814- 815 (W.D. Pa. 2012) (citing Note, observing that helpfulness to lay jurors is the touchstone for admissibility, and allowing trademark attorney to opine and testify on jurisprudential factors "which help to develop the ultimate finding," but not the "ultimate legal conclusions").  Indeed, in an early case, the Supreme Court of the United States demonstrated that attorney expert testimony may be proffered, but rejected by the Court to the extent it disagrees.  <u>See</u> <u>Taylor v. Bemiss</u>, 3 S. Ct. 441, 444 (U.S. 1884).

A limiting instruction could clarify that the Court is responsible for instructing the jury on the applicable law, that the jury is responsible to apply that law to the facts, and that the proffered experts' testimony is limited to how practicing property attorneys customarily seek out the reasonable interpretation of conveyance

instruments under circumstances such as those here presented, thus helping the jury develop the ultimate finding, but that the experts cannot instruct the jury how *it* must ultimately construe the Deeds here at issue. Such instruction would further ensure that the experts do not usurp the roles of the Court or the jury.

## III.   CONCLUSION

For all of the reasons expressed above, it is believed that Defendants Anadarko E&P Onshore LLC Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc. proffer the ***only*** reasonable interpretation of the McCawley Deeds, harmonizing all three nearly contemporaneous conveyances with the 1792 Warrant survey, the acreage calls set forth in the face of the Deeds, and the actual "subject matter" land situated within the John Brown Warrant.  However, to the extent the Court believes this case is for the jury, it is respectfully submitted that expert testimony on how property law practitioners customarily ascertain the most reasonable interpretation of a Deed under circumstances such as those presented and downstream conveyances would be helpful to the jury.  Downstream conveyances are relevant to demonstrate how those in privity of title with the original parties circumscribe the grants effectuated by the tripartite 1857 and 1858 McCawley Deeds, in light of their contradictory language.  It is respectfully requested that this Honorable Court, at a minimum, deny Plaintiffs' Motion and issue an appropriate

limiting instruction clarifying the role of Defendants' experts or, alternatively, enter

a binding instruction in favor of Defendants.

Respectfully submitted,


McNERNEY, PAGE, VANDERLIN          McQUAIDE BLASKO, INC.
   & HALL

By: s/Daryl A. Yount                              By: s/John A. Snyder
     Thomas C. Marshall, Esquire             John A. Snyder, Esquire
     Pa. I.D. No. 59326                               Pa. I.D. No. 66295
     Daryl A. Yount, Esquire                       Suzette v. Sims, Esquire
     Pa. I.D. No. 325043                             Pa. I.D. No. 210355
     433 Market Street                               811 University Drive
     Williamsport, PA  17703                      State College, PA 16801
     Phone:  (570) 326-6555                        Phone:  (814) 238-4926

     Attorneys for Defendants                      Attorneys for Defendant Anadarko
     Wallis Run Hunting Club, Inc. and        E&P Onshore LLC
     Wallis Run Gas and Oil, Inc.

Dated:  May 31, 2019                              Dated: May 31, 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES RICE KENDALL and
ANN P. HOCHBERG, as Trustees for
The Thomas E. Proctor Heirs Trust,
and BANK OF AMERICA, N.A., and
JOHN J. SLOCUM, JR., as Trustees
for The Margaret O.F. Proctor Trust,

      Plaintiffs,

      vs.

ANADARKO E&P ONSHORE LLC,
WALLIS RUN HUNTING CLUB,
INC., and WALLIS RUN GAS and
OIL, INC.,

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 3:16-cv-01182-MEM

Judge Malachy E. Mannion

Complaint filed: 06/17/16

*Electronically Filed*

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and correct copy of Defendants Anadarko E&P Onshore LLC Wallis Run Hunting Club, Inc. and Wallis Run Gas and Oil, Inc.'s Joint Memorandum in Opposition to Plaintiff's Motion *in Limine* in the above-captioned matter was served this 31st day of May, 2019, to the attorneys/parties of record via ECF as follows:

<table>
<tr>
<td>
Laura A. Lange, Esquire<br>
Paul K. Stockman, Esquire<br>
McGuire Woods LLP<br>
625 Liberty Avenue, 23rd Floor<br>
EQT Plaza<br>
Pittsburgh, PA 15222<br>
(412) 667-7941<br>
llange@mcguirewoods.com<br>
pstockman@mcguirewoods.com<br>
(For Plaintiffs)
</td>
<td>
John A. Snyder, Esquire<br>
Suzette V. Sims, Esquire<br>
McQUAIDE BLASKO, INC.<br>
81 University Drive<br>
State College, PA 16801<br>
Phone: (814) 238-4926<br>
Fax: (814) 234-5620<br>
jasnyder@mqblaw.com<br>
svsims@mqblaw.com<br>
Attorneys for Defendant<br>
Anadarko E&P Onshore LLC
</td>
</tr>
</table>

21

Respectfully submitted,

McNERNEY,  PAGE, VANDERLIN & HALL


By:   /s/ Daryl A. Yount
         Thomas C. Marshall, Esquire
         I.D. No. 59326
         Daryl A. Yount, Esquire
         I.D. No. 325043
         Attorneys for Defendants Wallis Run
         Hunting Club, Inc. and Wallis Run
         Gas and Oil, Inc.
433 Market Street
Williamsport, PA  17701
Telephone:   570-326-6555
Email: tmarshall@mpvhlaw.com
       dyount@mpvhlaw.com

Dated: May 31, 2019